**PAUL S. GROSSWALD**
**NJ Attorney ID #: 040312001**
13 Irving Place, Ste. 1
Summit, NJ 07901
(917) 753-7007
Attorney for Plaintiff,
    **Michelle Ramirez**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHELLE RAMIREZ, a New Jersey resident; | DOCKET NO. 2:14-cv-01708 (ES)(MAH) |
| Plaintiff, | |
| - against – | Civil Action |
| WORLD MISSION SOCIETY, CHURCH OF GOD, A NJ NONPROFIT CORPORATION, a New Jersey nonprofit corporation; WORLD MISSION SOCIETY CHURCH OF GOD, a.k.a. General Assembly, a South Korean corporation; GIL JAH CHANG, a.k.a. Gil Jah Zhang, a South Korean resident; JOO CHEOL KIM, a South Korean resident; DONG IL LEE, a.k.a. Daniel Lee, a New Jersey resident; BONG HEE LEE a.k.a. Bong Hee Kim, a.k.a. Betty Lee, a.k.a. Betty Kim, a New Jersey resident; TARA BYRNE, a.k.a. Tara Whalen, a New Jersey resident, RICHARD WHALEN, a New Jersey resident, VICTOR LOZADA, a New Jersey resident, BIG SHINE WORLDWIDE, INC., a New Jersey corporation; ALBRIGHT ELECTRIC LLC, a New Jersey limited liability company; and LINCOLN GRILL & CAFÉ LIMITED LIABILITY COMPANY, a New Jersey limited liability company, | **FIRST AMENDED COMPLAINT**  <br><br> **JURY TRIAL DEMANDED** |
| Defendants. | |

      Plaintiff Michelle Ramirez (the "Plaintiff"), by and through her attorney, Paul S.

Grosswald, by way of Complaint against the above-named Defendants, hereby alleges the

following:

## LOCAL RULE 10.1 STATEMENT

1.      The mailing addresses of the parties in this case are as follows:

**Plaintiff**

MICHELLE RAMIREZ
195 Sunnyside Avenue
Brooklyn, NY 11207

**Defendants**

WORLD MISSION SOCIETY, CHURCH OF GOD, A NJ NONPROFIT
CORPORATION
305 Godwin Avenue
Ridgewood, NJ 07450

WORLD MISSION SOCIETY CHURCH OF GOD, a.k.a. General Assembly
5-1 Sunae 1(il)-dong
Bundang-gu, Seongnamsi
Gyeonggi-do, South Korea
c/o
305 Godwin Avenue
Ridgewood, NJ  07450

GIL JAH CHANG, a.k.a. Gil Jah Zhang
5-1 Sunae 1(il)-dong
Bundang-gu, Seongnamsi
Gyeonggi-do, South Korea
c/o
305 Godwin Avenue
Ridgewood, NJ  07450

JOO CHEOL KIM
5-1 Sunae 1(il)-dong
Bundang-gu, Seongnamsi
Gyeonggi-do, South Korea
c/o
305 Godwin Avenue
Ridgewood, NJ  07450

DONG IL LEE, a.k.a. Daniel Lee
160 Palisade Avenue
Bogota, NJ  07603

BONG HEE LEE a.k.a. Bong Hee Kim, a.k.a. Betty Lee, a.k.a. Betty Kim
160 Palisade Avenue
Bogota, NJ  07603

TARA BYRNE, a.k.a. Tara Whalen
56 Rea Avenue
Hawthorne, NJ  07506

RICHARD WHALEN
56 Rea Avenue
Hawthorne, NJ  07506

VICTOR LOZADA
45 Outlook Ave
Hawthorne, NJ  07506

BIG SHINE WORLDWIDE, INC.
11 Harristown Road
Glen Rock, NJ 07452

ALBRIGHT ELECTRIC LLC
11 Harristown Road
Glen Rock, NJ 07452

LINCOLN GRILL & CAFÉ LIMITED LIABILITY COMPANY
115 Lincoln Avenue
Fair Lawn, NJ 07410

## INTRODUCTION

2.      The Defendants in this case are members of or corporations related to the World Mission Society Church of God, which purports to be a non-profit charitable church, but is actually a profit-making global enterprise (the "World Mission Enterprise" or "World Mission").

3.      World Mission recruited Plaintiff to become a member of the global enterprise without her knowledge or informed consent.

4.      World Mission fraudulently extracted donations of money, valuable goods, time, and energy from Plaintiff under the pretense that such donations were being made for

nonprofit, charitable, or tax-exempt purposes, when in fact such donations were used for profit-driven, non-charitable, non-tax exempt purposes.

5.   Plaintiff is seeking damages for fraud, intentional infliction of emotional distress, and related causes of action.

**PARTIES**

**Plaintiff**

6.   Plaintiff is Michelle Ramirez, an individual residing in New York.

**Corporate Defendants**

7.   Defendant World Mission Society Church of God, a NJ Nonprofit Corporation ("World Mission New Jersey") is a nonprofit corporation with its registered office and principal place of business in Bergen County, New Jersey.

8.   Defendant World Mission Society Church of God, a.k.a. General Assembly, a South Korean corporation ("World Mission South Korea") is a corporation with its principal place of business in South Korea.

9.   Defendant Big Shine Worldwide, Inc. ("Big Shine") is a corporation which sells electronic goods and services, with its principal place of business in Bergen County, New Jersey.

10.   Defendant Albright Electric, LLC ("Albright") is a limited liability company which provides contractors to perform electrical work, with its principal place of business in Bergen County, New Jersey.

11.   Lincoln Grill & Café Limited Liability Company ("Lincoln Grill") is a limited liability company which operates a restaurant, with its principal place of business in Bergen County, New Jersey.

**Natural Person Defendants**

12.  Defendant Gil Jah Chang, a.k.a. "Gil Jah Zhang" ("Chang") is the leader of World Mission South Korea and a resident of South Korea.

13.  Defendant Joo Cheol Kim ("Kim") is the General Pastor for World Mission South Korea, the President of World Mission New Jersey, a trustee for World Mission New Jersey, and a resident of South Korea.

14.  Defendant Dong Il Lee, a.k.a. "Daniel Lee" ("Dong Lee") is the Pastor of World Mission New Jersey, the Vice-President of World Mission New Jersey, a trustee of World Mission New Jersey, the husband of Defendant Bong Lee, and a resident of Bergen County, New Jersey.  Dong Lee is an owner, either formally or informally, of Big Shine, Albright, and Lincoln Grill.

15.  Defendant Bong Hee Lee, a.k.a. "Bong Hee Kim" ("Bong Lee") is the secretary for World Mission New Jersey, the accountant for World Mission New Jersey, a trustee of World Mission New Jersey, the wife of Defendant Dong Lee, and a resident of Bergen County, New Jersey.  Bong Lee is an owner, either formally or informally, of Big Shine and Lincoln Grill.

16.  Defendant Tara Byrne, a.k.a. "Tara Whalen" ("Byrne") is a Missionary for World Mission New Jersey, the wife of Defendant Richard Whalen, and a resident of Passaic County, New Jersey.  Byrne is an owner, either formally or informally, of Albright.

17.  Defendant Richard Whalen ("Whalen") is a Missionary for World Mission New Jersey, the husband of Defendant Byrne, and a resident of Passaic County, New Jersey.  Whalen is an owner, either formally or informally, of Albright.

5

18.     Defendant Victor Lozada ("Lozada") is a Missionary for World Mission New Jersey, and a resident of Passaic County, New Jersey.

19.     Chang and Kim work together as the two leaders of the entire World Mission Enterprise.

20.     Chang and Kim are not accountable to anyone within the World Mission Enterprise other than themselves.

21.     Chang and Kim hold positions of authority and responsibility within World Mission South Korea, and are each responsible for setting forth and enforcing the policies and procedures of World Mission South Korea which gave rise to the torts alleged herein.

22.     The Pastor holds the highest position in World Mission New Jersey.

23.     The Missionaries hold the second-highest positions in World Mission New Jersey.

24.     Dong Lee, Bong Lee, Byrne, Whalen, and Lozada each hold positions of authority and responsibility within World Mission New Jersey, and are each responsible for setting forth and enforcing the policies and procedures of World Mission New Jersey which gave rise to the torts alleged herein.

25.     Notwithstanding the positions of authority and responsibility held by Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, World Mission New Jersey is actually under the control and domination of World Mission South Korea, Chang, and Kim.

## JURISDICTION AND VENUE

### Subject Matter Jurisdiction

26.     Plaintiff is a citizen of New York.

27.     None of the Defendants are citizens of New York.

28.     There is complete diversity of citizenship between Plaintiff and Defendants.

29.     The amount in controversy exceeds $75,000.

30.     Therefore, this Court has jurisdiction over all of Plaintiff's claims pursuant to 28 U.S.C. §
        1332.

**Personal jurisdiction / Corporate Defendants**

31.     This Court has personal jurisdiction over World Mission New Jersey because World
        Mission New Jersey has its principal place of business in New Jersey.

32.     This Court has personal jurisdiction over World Mission South Korea because World
        Mission South Korea directed tortious conduct into New Jersey, and is the alter ego of
        World Mission New Jersey, which has its principal place of business in New Jersey.

33.     This Court has personal jurisdiction over Big Shine because Big Shine has its principal
        place of business in New Jersey.

34.     This Court has personal jurisdiction over Albright because Albright has its principal place
        of business in New Jersey.

35.     This Court has personal jurisdiction over Lincoln Grill because Lincoln Grill has its
        principal place of business in New Jersey.

**Personal jurisdiction / Natural Person Defendants**

36.     This Court has personal jurisdiction over Chang because she directed tortious conduct
        into New Jersey, and because she is the alter ego of World Mission New Jersey, which
        has its principal place of business in New Jersey.

37.     This Court has personal jurisdiction over Kim because he directed tortious conduct into
        New Jersey, and because he is the President of, a trustee of, and the alter ego of World
        Mission New Jersey, which has its principal place of business in New Jersey.

38.     This Court has personal jurisdiction over Dong Lee because he is a resident of New
        Jersey.

39. This Court has personal jurisdiction over Bong Lee because she is a resident of New Jersey.

40. This Court has personal jurisdiction over Byrne because she is a resident of New Jersey.

41. This Court has personal jurisdiction over Whalen because he is a resident of New Jersey.

42. This Court has personal jurisdiction over Lozada because he is a resident of New Jersey.

**Venue**

43. A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of New Jersey.

44. Moreover, the following Defendants reside in the District of New Jersey: World Mission New Jersey, Big Shine, Albright, Lincoln Grill, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

45. The remaining Defendants - World Mission South Korea, Chang, and Kim - reside outside the United States and may be sued in any judicial district within the United States, pursuant to 28 U.S.C. § 1391(c)(3).

46. Therefore, venue is proper in this Court under 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**I.**      **BACKGROUND FACTS REGARDING THE WORLD MISSION ENTERPRISE**

     **A.**      **The World Mission Enterprise**

47. The World Mission Enterprise began as a single "church" established in South Korea in 1964 by Ahn Sahng Hong.

48. Ahn Sahng Hong died in 1985.

49. The World Mission Enterprise was subsequently taken over by Chang, Ahn Sahng Hong's "spiritual" wife, who refers to herself as "God the Mother."

50.     In 1985, Kim was appointed as the General Pastor for the World Mission Enterprise.

51.     Since around that time, Chang and Kim have run the World Mission Enterprise together.

52.     Chang and Kim control and operate the entire World Mission Enterprise through World Mission South Korea.

53.     World Mission South Korea is the global headquarters for the World Mission Enterprise.

54.     The World Mission Enterprise consists of a global network of approximately 1400 local World Mission entities spread around the world.

55.     One of those local entities is World Mission New Jersey.

56.     World Mission South Korea seeks to create the appearance that World Mission New Jersey is independent of World Mission South Korea.

57.     To create such an appearance, World Mission New Jersey has incorporated to give itself a separate corporate identity.

58.     Nevertheless, World Mission New Jersey is operated and controlled by World Mission South Korea.

59.     World Mission New Jersey has no ability to operate independently of World Mission South Korea.

60.     Dong Lee was made the Pastor of World Mission New Jersey by World Mission South Korea.

61.     If Dong Lee attempted to operate World Mission New Jersey independently of World Mission South Korea, he would be removed from his post by World Mission South Korea.

62.     World Mission South Korea regularly sends instructions to World Mission New Jersey.

63.     World Mission New Jersey regularly sends its attendance and donation records to World Mission South Korea.

64.     With limited exception, World Mission South Korea approves all official literature, policies and practices used and employed by World Mission New Jersey.

65.     On information and belief, almost all of the money raised by World Mission New Jersey is forwarded to World Mission South Korea.

66.     World Mission New Jersey is the alter ego of World Mission South Korea.

67.     World Mission South Korea is the alter ego of World Mission New Jersey.

68.     World Mission New Jersey is also the alter ego of several profit-making companies, including Big Shine, Albright, Lincoln Grill, and others to be identified during the course of this litigation (the "Profit-Making Companies").

69.     Each of the Profit-Making Companies is the alter ego of World Mission New Jersey.

70.     In fact, Big Shine and Albright share the same office space in Glen Rock, New Jersey.

**B.      Status of the World Mission Enterprise, and Its Constituents, as a "Religion," "Church" or "Charity"**

71.     World Mission South Korea claims to be a "church."

72.     World Mission New Jersey claims to be a "church."

73.     Defendants try to avoid being held accountable for their actions by portraying their secular torts as "religious" so that they can take advantage of laws that give special protections to religions.

74.     World Mission New Jersey has obtained religious tax exemption from the IRS.

75.     World Mission New Jersey obtained its religious tax exemption from the IRS by fraudulent means.

76. World Mission New Jersey made a number of material false representations in its application for tax exemption to the IRS.

77. For instance, World Mission New Jersey failed to disclose to the IRS that it has a close connection with World Mission South Korea, as it was required to disclose on its application for tax exemption.

78. World Mission New Jersey also failed to disclose to the IRS that it sends money to World Mission South Korea, as it was required to disclose on its application for tax exemption.

79. On information and belief, World Mission New Jersey has used its tax exemption fraudulently by using its tax exemption number to purchase inventory and supplies for the Profit-Making Companies.

80. On information and belief, the Profit-Making Companies then funnel the profits back into World Mission New Jersey, to avoid taxation.

81. Therefore, World Mission New Jersey is not entitled to maintain its religious tax exemption, and is not entitled to use its current tax-exempt status as evidence of its religious nature.

82. Moreover, the Defendants are not entitled to raise any defense that is based on "religious freedom," the "free exercise of religion," or the status of World Mission South Korea or World Mission New Jersey as a "religion" or "church."

83. Even if World Mission South Korea or World Mission New Jersey are deemed to be a "religion" or a "church," the conduct alleged herein does not constitute religious expression, in that the goal of the Defendants' conduct was not to advance their religion, but rather to advance the enterprise and to defraud and injure Plaintiff.

84. Even if the conduct alleged herein constitutes religious expression, the Defendants may be held liable because their conduct tends to inflict serious, life-threatening harm on their victims.

85. Victims of the Defendants often become suicidal, depressed, anxious, psychotic, or alienated from their families as a result of the Defendants' conduct.

86. Therefore, the State of New Jersey has a legitimate interest in stopping such conduct.

87. Allowing Plaintiff to hold the Defendants liable is rationally related to the State of New Jersey's legitimate interest.

88. The torts alleged herein arise out of laws of general applicability, not laws that specifically target religion or that specifically target World Mission.

89. Even if the torts alleged herein do arise out of laws that specifically target religion or that specifically target World Mission, the State of New Jersey has a compelling interest in stopping the Defendants' conduct.

90. Allowing Plaintiff to hold the Defendants liable is the least restrictive means for the State of New Jersey to satisfy its compelling interest.

91. Moreover, World Mission South Korea is not a nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes.

92. Even if World Mission South Korea is a nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes, it was not engaged in the performance of the charitable objectives it was organized to advance at any time relevant to the allegations herein.

93. World Mission New Jersey is not a nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes.

94. Even if World Mission New Jersey is a nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes, it was not engaged in the performance of the charitable objectives it was organized to advance at any time relevant to the allegations herein.

### C. The Profit-Driven Nature of World Mission

95. Despite the pretense that World Mission South Korea and World Mission New Jersey are "churches" which exist for non-profit purposes, they are actually each part of a business enterprise which is run for a profit.

96. On information and belief, the World Mission Enterprise exists for the primary purpose of creating wealth for Chang and Kim.

97. World Mission New Jersey purportedly subsists off of the donations of its members.

98. However, in addition to collecting donations from its members, World Mission New Jersey also dominates and controls the Profit-Making Companies.

99. On information and belief, World Mission New Jersey has used its tax exemption number to purchase supplies and inventory for the Profit-Making Companies.

100. World Mission New Jersey staffs the Profit-Making Companies exclusively with its own members.

101. The World Mission New Jersey members who staff the Profit-Making Companies are abused and exploited, and subjected into a state of *de facto* slavery.

102. The Profit-Making Companies frequently pay their employees less than a living wage.

103. The Profit-Making Companies frequently pay their employees off the books, so payroll taxes are avoided. As a result, the employees do not get social security credit.

104. In fact, Lozada has been an off-the-books employee of Big Shine.

105.   The Profit-Making Companies generally provide no health or retirement benefits.

106.   The Profit-Making Companies generally work the employees long hours, every day, without days off, without personal days, vacation days, or sick days, except on Saturdays and other World Mission holidays when the employees are expected to spend all day at World Mission New Jersey.

107.   The Profit-Making Companies generally do not pay overtime rates for hours worked beyond 40 hours a week.

108.   The Profit-Making Companies, in conjunction with World Mission New Jersey, use and threaten to use discipline and intimidation on any employee or member who complains or who threatens to report these abuses to the authorities.

109.   With respect to Big Shine, the abuse of the employees, as alleged herein, is perpetrated by or at the direction of Chang, Kim, Dong Lee, and Bong Lee.

110.   With respect to Albright, the abuse of the employees, as alleged herein, is perpetrated by or at the direction of Dong Lee, Byrne, and Whalen.

111.   With respect to Lincoln Grill, the abuse of the employees, as alleged herein, is perpetrated by or at the direction of Dong Lee and Bong Lee.

112.   On information and belief, most of the profits generated by the Profit-Making Companies as a result of this scheme are transferred back to World Mission New Jersey, in order to avoid taxation.

113.   On information and belief, World Mission New Jersey sends those profits, or most of them, to World Mission South Korea.

114.   Many of the transactions conducted by the Profit-Making Companies are conducted in cash, so as to avoid detection by tax authorities.

115.    The transfer of money from the Profit-Making Companies to World Mission New Jersey and from World Mission New Jersey to World Mission South Korea is also often done in cash, so as to avoid detection by tax authorities.

116.    In fact, cash earned by Lincoln Grill has been transported to World Mission New Jersey in a shoebox, and kept in a safe in Dong Lee's office.

117.    From time to time, Dong Lee places cash in sealed envelopes which he gives to members of World Mission New Jersey, who are instructed to personally travel to World Mission South Korea to deliver the envelopes.  The members making such deliveries generally do not know what they are delivering, or why.

118.    With respect to Big Shine, the transfers of money described herein are perpetrated by or at the direction of Chang, Kim, Dong Lee, and Bong Lee.

119.    With respect to Albright, the transfers of money described herein are perpetrated by or at the direction of Dong Lee, Byrne, and Whalen.

120.    With respect to Lincoln Grill, the transfers of money described herein are perpetrated by or at the direction of Dong Lee and Bong Lee.

121.    To further prevent this scheme from being detected, the Profit-Making Companies are documented to be owned not by World Mission New Jersey, but rather by individual members of World Mission New Jersey.

122.    Such documentation is designed to create the appearance that World Mission New Jersey is not actually controlling the Profit-Making Companies.

123.    Yet, in some cases the individual member of World Mission New Jersey whose name is listed as the legal owner of a Profit-Making Company is not aware of even the most fundamental details of the entity that such person supposedly owns.

124.   In some cases, the individual member of World Mission New Jersey whose name is listed as the legal owner of a Profit-Making Company has had their name placed on corporate documents and banking documents without their knowledge or consent.

125.   Generally, the fraudulent documentation, as alleged herein, is perpetrated by or under the direction of Dong Lee and Bong Lee.

126.   All of the Defendants have conspired and agreed to conceal the torts alleged herein.

127.   All of the Defendants have conspired and agreed not to disclose the torts alleged herein to the general public, or to World Mission New Jersey's members or donors who might withhold their membership or donations if they knew the truth about the true nature of the World Mission Enterprise.

128.   All of the Defendants have repeatedly and continuously committed torts in furtherance of the enterprise described herein.

**C.      Activities of World Mission New Jersey**

129.   World Mission New Jersey engages in three primary activities:   services, studies, and recruiting.

130.   "Services" are purportedly "religious" services held in a "sanctuary" filled with World Mission New Jersey members.   The services are held numerous times throughout the week and three times on Saturday.   Services are led by Dong Lee, or an agent assigned by Dong Lee.

131.   "Studies" are classroom sessions, led by a teacher who has been selected and trained by World Mission New Jersey.   Every new recruit is required to go through a number of basic studies.   More advanced studies are given to the more experienced members.

132.   "Recruiting" is the process by which World Mission New Jersey obtains new members.

133.   Members of World Mission New Jersey are subjected to a great deal of pressure to recruit new members, including their friends and families.

134.   On some occasions, World Mission New Jersey has imposed recruiting quotas on its members.

135.   World Mission New Jersey generally engages in recruiting every day of the week, at various times of day, sometimes as late as 1 a.m.

136.   Generally, on every Sunday afternoon, Dong Lee and his agents gather members of World Mission New Jersey and put them into groups, assigning each group to a recruiting location.  The groups generally go to populated areas, such as Target and Walmart, or shopping malls.

137.   At other times, World Mission New Jersey sends recruiters to college campuses.

138.   World Mission New Jersey also sends recruiters into residential neighborhoods to go door-to-door.

139.   The recruiters are trained by Dong Lee and Dong Lee's agents to use aggressive, intrusive, and deceptive tactics to induce unsuspecting people to join World Mission New Jersey.

140.   Because World Mission New Jersey is part of a profit-making enterprise, it generally only recruits employed people who are able to meet the donation requirements.

141.   World Mission New Jersey trains its members to conceal the true nature of the World Mission Enterprise, including its policies, practices, and beliefs, from new recruits and prospective recruits.

    **D.**    **The World Mission Enterprise Uses Ostracization and Intimidation to Prevent Its Members From Exposing Its True Nature and Bad Behavior**

142.   World Mission New Jersey uses a number of psychological control tactics, as described below, to prevent its members from exposing its true nature and bad behavior.

143.   These psychological control tactics are designed by Chang and Kim in the first instance, and subsequently implemented and enforced within World Mission New Jersey by Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

144.   For instance, World Mission New Jersey members are not permitted to express any doubts or criticisms about World Mission or its leaders.

145.   Members who express such doubts will be called into a meeting with higher ranking members.

146.   The higher ranking members will talk to the doubting member to try to overcome the doubts.

147.   The higher ranking members will try to convince the doubting member to suppress or ignore the doubts.

148.   If the doubts persist, then the doubting member will be severely ostracized by the rest of the group.

149.   The doubting member will be physically separated from other members of the group.

150.   At World Mission New Jersey services and study sessions, the doubting member will be required to sit surrounded by higher ranking members.

151.   World Mission New Jersey tells doubting members who have family members in World Mission that if their doubts persist, the doubting member will no longer be able to remain in contact with their loved ones.

152.   World Mission New Jersey threatens doubting members with being kicked out of World Mission.

153. In fact, World Mission New Jersey often kicks out doubting members.

154. Once a person is kicked out of World Mission New Jersey, or any other World Mission entity, it becomes difficult or impossible for that person to maintain a relationship with their loved ones who are still devoted members of World Mission.

155. Neither World Mission New Jersey nor any other World Mission entity permits its members to maintain relationships with former members of any World Mission entity.

156. World Mission New Jersey has a long history of instructing or requiring members of World Mission to divorce their spouses when their spouses begin expressing doubts about World Mission.

157. World Mission New Jersey has a long history of instructing or requiring members of World Mission to cut off communication with their families and friends when the families or friends begin expressing doubts about World Mission.

158. As a result of such tactics, many families have been broken up or destroyed.

159. There are countless people who have lost contact with their parents, children, spouses, or other family and friends, as a result of World Mission New Jersey's tactics.

**E.**     **The "Righteous Lie Doctrine"**

160. All of the Defendants adhere to the "Righteous Lie Doctrine," which is a policy and practice of telling "Righteous Lies."

161. A "Righteous Lie" is a lie that is told to protect the World Mission Enterprise, or any of its constituent entities or leaders, or to advance the agenda of same.

162. Defendants believe that it is not immoral to lie in such circumstances because the ends justify the means.

163.  Defendants generally do not disclose to people outside the World Mission Enterprise that they adhere to a policy and practice of telling "Righteous Lies."

164.  Defendants generally do not disclose to people inside the World Mission Enterprise that they adhere to a policy and practice of telling "Righteous Lies," unless and until the person inside the World Mission Enterprise has demonstrated a sufficient amount of loyalty such that they can be trusted to tell "Righteous Lies."

165.  The Righteous Lie Doctrine was created by Chang and Kim in the first instance (although not necessarily called that), and subsequently implemented and enforced within World Mission New Jersey by Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

### G.  Willful Withholding of Information

166.  World Mission New Jersey willfully withholds information about itself from new members.

167.  If World Mission New Jersey were to disclose all of the relevant information about itself during its first contact with a prospective new member, it would be almost impossible for World Mission New Jersey to recruit new members.

168.  That is because when the complete set of material, truthful information about World Mission New Jersey is presented to almost any person who is not already a member, the person receiving the information will usually become afraid of the organization or skeptical about the organization, or they might even break out laughing.

169.  Therefore, the only way that World Mission New Jersey could successfully recruit new members is by withholding information about itself from prospective new members.

170.  To do this, World Mission New Jersey dispenses information to new members only in small doses.

171.   After dispensing a small dose of information to a new member, World Mission New Jersey waits to see if the new member complies with World Mission New Jersey's demands.

172.   If the new member complies with World Mission New Jersey's demands, it then dispenses the next dose of information.

173.   If the new member fails to comply with World Mission New Jersey's demands, World Mission New Jersey will attempt to gain compliance before dispensing the next dose of information.

174.   If World Mission New Jersey is unable to gain compliance from the new member, it will eventually kick the new member out of the organization, rather than dispensing the next dose of information.

175.   This approach to dispensing information is designed to reduce and overcome the new members' natural resistance to the information they are being presented with.

176.   For instance, new members are required to attend twelve studies as part of their introduction to World Mission New Jersey.

177.   World Mission New Jersey does not reveal that it believes that Chang is "God" until the final study.

178.   Obviously, if World Mission New Jersey told prospective new members during the initial contact that once they join World Mission New Jersey they will be expected to believe that Chang is God, almost no one would join World Mission New Jersey.

**II.    PLAINTIFF'S INVOLVEMENT WITH WORLD MISSION NEW JERSEY**

   **A.    Plaintiff's Recruitment Into the World Mission Enterprise**

179.    Plaintiff was approached by recruiters for World Mission New Jersey in the summer of 2006, inside Jersey Gardens Mall in Elizabeth, New Jersey.

180.    One of those recruiters was Dong Lee.

181.    The other recruiter was Yvanne Rivera ("Rivera").

182.    Dong Lee and Rivera tried to persuade Plaintiff to attend World Mission New Jersey.

183.    Neither Dong Lee nor Rivera disclosed to Plaintiff the church's primary beliefs, policies or practices.

184.    Plaintiff initially declined to attend World Mission New Jersey.

185.    Rivera kept in touch with Plaintiff over the next few months.

186.    Plaintiff was having troubles in her life, and Rivera was very comforting.

187.    Rivera repeatedly tried to persuade Plaintiff to attend World Mission New Jersey.

188.    Plaintiff repeatedly refused.

189.    Plaintiff subsequently experienced a personal trauma when she was sexually assaulted by someone unrelated to World Mission.

190.    Plaintiff became emotionally vulnerable as a result of the trauma she experienced.

191.    Rivera continued to contact Plaintiff while Plaintiff was emotionally vulnerable.

192.    Rivera continued pressuring Plaintiff to attend World Mission New Jersey.

193.    After three months of constant social pressure, Plaintiff was unduly influenced to attend World Mission New Jersey.

194.    On her first day attending World Mission New Jersey, Plaintiff was not permitted to drive there herself.

195.    Rather, Rivera picked up Plaintiff and drove her there.

196.    This caused Plaintiff to end up at the church without access to her own vehicle.

197. From that night forward, everything that World Mission New Jersey did to, for, and with Plaintiff was done pursuant to policies and practices that had been designed by Chang and Kim in the first instance, and subsequently implemented and enforced within World Mission New Jersey by Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

198. Upon arriving at World Mission New Jersey, Plaintiff was asked to provide personal information about herself that World Mission New Jersey could use to manipulate her.

199. Then Plaintiff was brought into a small room with a dry erase board and a small table with a few chairs.

200. Plaintiff sat there with Rivera as Byrne presented her with her first "study lesson."

201. None of the other church members were present in the room.

202. Plaintiff subsequently learned that new recruits are kept separated from the more experienced members during their first few study lessons.

203. During the study, Plaintiff was subjected to "love bombing," or lavish demonstrations of attention and affection, which were designed to lower her resistance to being recruited.

204. Byrne began pressuring Plaintiff to join the organization and return for more studies.

205. Byrne told Plaintiff that she had to be "baptized" into the church.

206. Byrne told Plaintiff that if she did not get "baptized" right away, terrible things might happen to her.

207. Plaintiff said she would come back another day, but did not want to do it right then.

208. Byrne told Plaintiff that something terrible could happen to her before she has a chance to return, so she needed to get "baptized" now.

209. When Plaintiff attended World Mission New Jersey that first day she did not intend to be "baptized."

210.   Nevertheless, after a few hours of love bombing and intense social pressure by Byrne, Plaintiff was unduly influenced into getting "baptized."

211.   Byrne did not provide Plaintiff with an opportunity to contact her family or invite her loved ones to attend her "baptism."

212.   After being "baptized," a member of the organization entered Plaintiff's name, address, and phone number into a huge book.

213.   The member also entered Rivera's name in the book.

214.   Plaintiff later learned that Rivera was being given "credit" for having recruited her.

215.   Rivera had not previously disclosed to Plaintiff that she had been given a mission to recruit new members, such as Plaintiff.

216.   Rivera had not previously disclosed that she was being given credit for bringing in "fruit," or a new recruit.

217.   Rivera had been trained and rehearsed by World Mission New Jersey to recruit new members.

218.   Rivera had been taught what to say to potential new recruits, and how to say it, by World Mission New Jersey.

219.   Nevertheless, Rivera had led Plaintiff to believe that Rivera was interested in being friends with Plaintiff, and that their interactions were spontaneous and unrehearsed.

220.   After Plaintiff was "baptized," World Mission New Jersey demanded that Plaintiff come back for additional study lessons later that week.

221.   At the time, Plaintiff was not looking to join an organization that would impose a significant time commitment on her.

222.   Again, after being subjected to intense love-bombing and social pressure, Plaintiff was unduly influenced and agreed to return a few days later.

223.   Plaintiff began attending World Mission New Jersey once or twice a week to complete a "Basic Studies" course that World Mission New Jersey had assigned to her.

224.   Plaintiff also began attending World Mission New Jersey services for part of the day on Saturdays.

### B.   The Increasing Time Commitment

225.   Shortly after joining World Mission New Jersey, Plaintiff began to feel pressure from World Mission New Jersey to spend her entire Saturday at World Mission New Jersey.

226.   Plaintiff came to learn that most of the members spent their entire Saturday with World Mission New Jersey, starting from about 9 am (and on special holidays as early as 5 am) to 10 pm.

227.   During that time, the members would attend up to three services.

228.   In between the services, the members would engage in other activities pertaining to World Mission New Jersey.

229.   Once Plaintiff was no longer a beginner in World Mission New Jersey, she began to experience enormous social pressure within the organization to attend for the full day on Saturday.

230.   Plaintiff also eventually learned that some of the study sessions at World Mission New Jersey were as long as six hours.

231.   World Mission New Jersey used fear, guilt, and shame to manipulate Plaintiff into spending excessive amounts of time with World Mission New Jersey.

232.   As a result of such pressure, Plaintiff was unduly influenced into increasing her attendance.

233.   The time commitment that World Mission New Jersey demanded from Plaintiff kept increasing.

234.   After a while, Saturdays were not enough for World Mission New Jersey.  Plaintiff was pressured to attend World Mission New Jersey on Sundays, as well.

235.   Before long, Plaintiff was unduly influenced into attending World Mission New Jersey all day Saturday and Sunday, every weekend, as well as a few days a week after work or school.

236.   Defendants deliberately deprived Plaintiff of sleep, in order to weaken her mind and make her more susceptible to World Mission New Jersey's demands.

237.   For instance, World Mission New Jersey holds a number of "Feasts" during the year.

238.   During the Feasts, members are required to attend services at 5:00 am and then again at 7:30 pm for up to ten days at a time.

239.   World Mission New Jersey also dominated Plaintiff's time by giving her things to do while she was away from World Mission New Jersey, to keep her mind occupied with World Mission.

240.   For instance, World Mission New Jersey would give Plaintiff reading assignments for when she was away from World Mission New Jersey.

241.   Those reading assignments consisted of works published by World Mission.

242.   Moreover, World Mission New Jersey instructed Plaintiff to adopt a unique method of reading which was extremely time-consuming and mind-numbing.

243.  Specifically, World Mission New Jersey instructed Plaintiff to look up any Biblical references that were cited in World Mission's literature every time she came across such a citation, rather than simply reading the material straight through.

244.  World Mission New Jersey would also assign homework to Plaintiff.

245.  World Mission New Jersey required Plaintiff to fill any gaps in her personal time with activities that were assigned by World Mission New Jersey or related to World Mission New Jersey.

246.  As a result, Plaintiff would be occupied with World Mission New Jersey activities during lunch breaks or any other free time.

**C.    Plaintiff Was Conscripted to Recruit New Members**

247.  World Mission New Jersey eventually told Plaintiff that she needed to recruit other members, or "bear fruit."

248.  When World Mission New Jersey initially recruited Plaintiff, World Mission New Jersey did not disclose that Plaintiff would eventually be expected to recruit other members.

249.  To try to recruit people, Plaintiff and her "sisters" from World Mission New Jersey would go to a populated area and approach strangers, trying to get them interested in World Mission New Jersey.

250.  People would usually look at Plaintiff as if she was crazy.

251.  On many occasions, security personnel had to ask them to leave because people were complaining about their aggressive and intrusive tactics.

252.  Plaintiff found the experience of trying to recruit new members humiliating and degrading.

253.  Nevertheless, World Mission New Jersey told Plaintiff that she is supposed to enjoy the experience of trying to recruit other members.

254.  Because she was not enjoying the experience of trying to recruit other members, Plaintiff began to start thinking there was something wrong with her.

255.  That caused Plaintiff to think that she needed World Mission New Jersey's help in fixing what was wrong with her.

256.  This led to a vicious cycle whereby Plaintiff would be degraded, and the more degraded she became, the more dependent on World Mission New Jersey she became.

257.  This vicious cycle did not occur by accident.  Rather, it was designed by Chang and Kim in the first instance, and subsequently implemented within World Mission New Jersey by Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

**D.      Plaintiff Moves In With Other Members**

258.  When Plaintiff was recruited into World Mission New Jersey, she was living at home with her mother and stepfather and brother.

259.  World Mission New Jersey taught Plaintiff that the devil will use her family to get to her.

260.  That caused Plaintiff to become fearful of her family.

261.  After a few months of being subjected to World Mission New Jersey's influence, Plaintiff began to feel as if the other members of the World Mission community were her "real" family.

262.  Plaintiff began having conflicts with her family in part because of all the time she was spending at World Mission New Jersey.

263.  Because of the conflicts, Plaintiff's family kicked Plaintiff out of the house.

264.  When Plaintiff reported to World Mission New Jersey that her family had kicked her out of the house, World Mission New Jersey said that it meant that Plaintiff was "doing something right."

265.  World Mission New Jersey told Plaintiff that she was being "persecuted."

266.  After being kicked out of her family's home, Plaintiff moved in with her boyfriend.

267.  World Mission New Jersey was concerned that Plaintiff's boyfriend would distract Plaintiff from devoting all of her attention to World Mission New Jersey.

268.  World Mission New Jersey began to make Plaintiff feel guilty and ashamed about living with her boyfriend.

269.  World Mission New Jersey did not disclose to Plaintiff that the reason it was attempting to make Plaintiff feel guilty and ashamed about living with her boyfriend was because it was attempting to persuade Plaintiff to move in with other World Mission New Jersey members.

270.  Nevertheless, after being subjected to intense social pressure, Plaintiff was unduly influenced into moving in to a small apartment with other, more experienced, members of World Mission New Jersey.

271.  Plaintiff subsequently learned that it is a common practice of World Mission New Jersey to induce new members to move in with other members after the new member has completed the first few studies.

272.  At the time Plaintiff was recruited into the organization, World Mission New Jersey did not disclose to Plaintiff that it intended to have her move in with other members of the organization.

273. Once Plaintiff moved in with other members of World Mission New Jersey, then World Mission New Jersey was able to monitor her movements and activities every day.

274. The other members that Plaintiff moved in with were required to report on Plaintiff's movements and activities to senior members of World Mission New Jersey.

275. Prior to Plaintiff moving in with other World Mission New Jersey members, World Mission New Jersey did not disclose to Plaintiff that her movements and activities would be reported to senior members of World Mission New Jersey.

276. Moreover, while Plaintiff was living with other World Mission New Jersey members, World Mission New Jersey did not disclose to Plaintiff that her movements and activities were being reported to senior members of World Mission New Jersey.

277. Once Plaintiff moved in with other World Mission New Jersey members, she was required to attend World Mission New Jersey or participate in World Mission New Jersey activities almost every day.

278. Prior to Plaintiff moving in with other World Mission New Jersey members, World Mission New Jersey did not disclose to Plaintiff that her time commitment to World Mission New Jersey would be expected to increase.

279. Plaintiff was instructed to go straight to World Mission New Jersey after work or school, or else go straight home after work or school to change clothes quickly and then go straight to World Mission New Jersey.

280. Alternatively, Plaintiff would be instructed to go out recruiting new members of World Mission New Jersey straight after work or school.

281. Plaintiff would generally not be sent home until between 11:00 pm and midnight each day.

282. World Mission New Jersey members who failed to appear at World Mission New Jersey or participate in World Mission New Jersey activities would be publicly rebuked by senior members.

283. To ease the burden on Plaintiff and other members, World Mission New Jersey promised Plaintiff and other members that Mondays would be "Laundry Day."

284. "Laundry Day" meant that Monday was the one day of the week when World Mission New Jersey members could run personal errands rather than attend World Mission New Jersey, and they would not be rebuked.

285. Nevertheless, after Plaintiff became a more experienced member of World Mission New Jersey, the organization began requiring Plaintiff to attend to World Mission New Jersey business even on Laundry Day.

### E.    Plaintiff Was Required to "Sacrifice" to the World Mission Enterprise

286. World Mission New Jersey convinced Plaintiff that she was not entitled to maintain any of her own possessions.

287. Rather, World Mission New Jersey claimed that everything Plaintiff owned belonged to Chang, or the World Mission Enterprise.

288. World Mission New Jersey also claimed that because the world was ending soon, Plaintiff would not need to have any savings.

289. Dong Lee insisted that Plaintiff was required to donate and sacrifice as a condition of remaining a member in good standing of World Mission New Jersey.

290. Dong Lee did not disclose the level of donations and sacrifice that would be required at the time that he first met Plaintiff at Jersey Gardens Mall.

291.  World Mission New Jersey subsequently revealed that it required Plaintiff to give ten percent of all pre-tax money she received to World Mission New Jersey.

292.  In the spring of 2007, Plaintiff began attending college.

293.  Plaintiff had originally intended on attending Hofstra University on Long Island.

294.  World Mission New Jersey required Plaintiff to attend World Mission New Jersey every day after school.

295.  Hofstra University was too far away from World Mission New Jersey's location in Ridgewood for Plaintiff to be able to attend World Mission New Jersey after school every day.

296.  Therefore, to accommodate World Mission New Jersey, Plaintiff switched to Union County College.

297.  During that semester, World Mission New Jersey organized a group trip to visit Chang at World Mission South Korea.

298.  After being subjected to intense social pressure, Plaintiff was unduly influenced into joining the group trip to South Korea.

299.  World Mission New Jersey instilled fear in Plaintiff and made her believe that terrible things would happen to her if she did not meet Chang in South Korea.

300.  World Mission New Jersey required Plaintiff to pay for the trip herself.

301.  As a result, Plaintiff had no money left to pay for college.

302.  Therefore, Plaintiff dropped out of college in mid-semester.

303.  When Plaintiff returned from South Korea, she was no longer in school and had to get a job.

304. She found it difficult to keep a job, because World Mission New Jersey required Plaintiff to take many days off from work to attend its Feasts, and other activities.

305. Then, in early 2009, Plaintiff won 950 thousand dollars in a lawsuit arising out of the sexual assault that occurred in 2006.

306. Once World Mission New Jersey learned that Plaintiff had acquired a large sum of money, members of World Mission New Jersey began swarming on her and pressuring her to hand more and more of the money over to World Mission New Jersey.

307. World Mission New Jersey required Plaintiff to immediately hand over ten percent of that money, or 95 thousand dollars, to World Mission New Jersey.

308. Plaintiff used her lawsuit money to buy a new car before handing over the 95 thousand dollars.

309. When Bong Lee saw Plaintiff's new car in World Mission New Jersey's parking lot, Bong Lee rebuked Plaintiff and made her feel guilty and ashamed for buying the car first.

310. Subsequently, Plaintiff was unduly influenced by World Mission New Jersey to spend over five thousand dollars on supplies for the Bazaar, an event held by World Mission New Jersey.

311. Plaintiff was unduly influenced by World Mission New Jersey into spending thousands of dollars on brand new vending and change machines for World Mission New Jersey.

312. In the summer of 2009, World Mission New Jersey arranged for Plaintiff to take a trip to the D.R. (Dominican Republic) with Dong Lee and other World Mission New Jersey members.

313. Plaintiff was told she would be in the D.R. for two weeks.

314.  While in the D.R., Plaintiff was unduly influenced by Dong Lee to stay in the D.R. longer.

315.  Dong Lee wanted Plaintiff to establish a new branch of World Mission New Jersey in the D.R.

316.  Dong Lee assigned Plaintiff the task of managing the D.R. branch under his direction.

317.  At all relevant times, the D.R. branch of World Mission was run by World Mission New Jersey.

318.  At all relevant times, Dong Lee was in charge of the D.R. branch, and he visited it on multiple occasions.

319.  At all times that Plaintiff was managing the D.R. branch, Dong Lee was her boss.

320.  While she was running the D.R. branch of World Mission New Jersey, Plaintiff was required to pay for all of the expenses of the D.R. branch with her own money.

321.  For instance, Plaintiff paid a year's worth of rent.

322.  Plaintiff bought appliances, including a refrigerator, for the D.R. location.

323.  Plaintiff also paid for rental cars and food for herself and other World Mission New Jersey members.

324.  Plaintiff spent over 30 thousand dollars on running the D.R. branch of World Mission New Jersey.

325.  While running the D.R. branch of World Mission New Jersey, Plaintiff was also required to continue donating to World Mission New Jersey, and her donations totaled over $100,000.

326.  After a year in the D.R., Plaintiff had no money left.

327.  At that time, Dong Lee called and demanded more money.

328.   When Plaintiff explained that she had no money left, Dong Lee became very disappointed with her.

**F.     World Mission New Jersey Used Fear to Coerce Plaintiff and Unduly Influence Her**

329.   While Plaintiff was a member of the World Mission Enterprise, World Mission New Jersey systematically and deliberately indoctrinated Plaintiff with irrational fears.

330.   For instance, World Mission New Jersey indoctrinated Plaintiff to believe that terrible things would happen to her if she used the Internet to conduct research on World Mission New Jersey.

331.   The reason World Mission New Jersey did that was to prevent Plaintiff from learning truthful information about World Mission that would have persuaded her to leave World Mission.

332.   Moreover, World Mission New Jersey told Plaintiff that the world was going to end by 2012.

333.   World Mission New Jersey frequently showed Plaintiff propaganda videos produced by World Mission.

334.   The propaganda videos were designed to indoctrinate Plaintiff with irrational fears.

335.   The propaganda videos usually touted the supposedly exceptional qualities of Chang.

336.   Some of the videos would describe various kinds of disasters, accompanied by the message that anyone who fails to comply with the demands of the World Mission Enterprise or Chang, or any of her agents (such as Kim or Dong Lee) will suffer the same fate as the people who perished in the disasters.

337.   As a result, Plaintiff was in a constant state of fear while she was a member of World Mission New Jersey.

338.   World Mission New Jersey created the fear in Plaintiff, and then exploited that fear to manipulate Plaintiff into doing the bidding of World Mission New Jersey.

339.   World Mission New Jersey also taught Plaintiff to suppress any doubts she might have about the World Mission Enterprise, World Mission New Jersey, or any aspect thereof.

340.   As a result, for many years, Plaintiff lost the ability to extricate herself from World Mission New Jersey.

### G.   Family Alienation

341.   Plaintiff had initially been led to believe that World Mission New Jersey encouraged family members, friends, and significant others to participate in World Mission New Jersey together.

342.   Nevertheless, Plaintiff's family became increasingly concerned about the amount of time that Plaintiff was spending at World Mission New Jersey.

343.   This led to conflicts between Plaintiff and her family.

344.   Moreover, World Mission New Jersey teaches that the devil tries to attack people through their family.

345.   World Mission New Jersey also teaches that the only way to protect oneself from the devil is to be a member of World Mission.

346.   World Mission New Jersey teaches its members that they should not spend time with people who are not members of World Mission.

347.   When Plaintiff went to the D.R. to work for World Mission New Jersey, she saw her father, who lives in the D.R.

348.   At first, Plaintiff had a good relationship with her father.

349.    Plaintiff's father even attended some events at the D.R. location of World Mission New Jersey to be with Plaintiff.

350.    However, Plaintiff's father eventually stopped attending events at the D.R. location of World Mission New Jersey.

351.    World Mission New Jersey taught Plaintiff that terrible things could happen to her if she continued having contact with her father after he rejected World Mission.

352.    Plaintiff's father would try to look for Plaintiff, but World Mission New Jersey would not allow Plaintiff to make time for him.

353.    It got to the point where Plaintiff and her father barely spoke.

354.    Plaintiff's father would often call Plaintiff's mother crying to try to find out why Plaintiff was ignoring him.

355.    World Mission New Jersey repeatedly pressured Plaintiff to choose between World Mission New Jersey or her family.

356.    World Mission New Jersey caused Plaintiff to miss the funerals for both of her grandmothers.

357.    World Mission New Jersey repeatedly caused Plaintiff to miss family birthdays.

358.    World Mission New Jersey repeatedly caused Plaintiff to miss Christmas and other holidays with her family.

359.    Plaintiff also learned that World Mission New Jersey discourages its members from taking vacations.

360.    As a result of all of this, Plaintiff became alienated from many of her family members.

361.    Many of Plaintiff's family members who had previously been close to Plaintiff still do not speak to Plaintiff to this day, as a result of the alienation caused by World Mission New Jersey.

      **H.**    **Arranged Marriages**

362.    World Mission New Jersey subjects its members to arranged marriages.

363.    Dong Lee frequently will use his authority over a World Mission New Jersey member to unduly influence the member into entering a marriage with a person the member does not want to marry.

364.    Dong Lee frequently will use his authority over a World Mission New Jersey member to unduly influence the member into entering a marriage for a purpose that suits Dong Lee or World Mission but which is not in the best interests of the people getting married.

365.    In the first year of her membership with World Mission New Jersey, Plaintiff had a boyfriend who also became a member of World Mission New Jersey.

366.    Plaintiff's boyfriend "fell off," meaning he stopped attending or donating to World Mission New Jersey.

367.    Dong Lee told Plaintiff that she should ask her boyfriend to marry her, in order to bring him back into compliance with World Mission New Jersey's expectations.

368.    Plaintiff's boyfriend said no, because that is not a good reason to marry someone.

369.    World Mission New Jersey prohibits its members from having romantic relationships with each other unless they are married.

370.    As a result, Plaintiff ended her relationship with her boyfriend.

371.   When World Mission New Jersey initially recruited Plaintiff, World Mission New Jersey did not disclose that World Mission New Jersey had a policy and practice of arranging marriages.

372.   When World Mission New Jersey initially recruited Plaintiff, World Mission New Jersey did not disclose that Plaintiff would eventually be expected to enter into an arranged marriage.

373.   When World Mission New Jersey initially recruited Plaintiff, World Mission New Jersey did not disclose that World Mission New Jersey prohibits its members from having romantic relationships with each other unless they are married.

374.   Nevertheless, in 2011, Dong Lee began to insist that Plaintiff, who is American, be married to a Korean member of World Mission New Jersey.

375.   Dong Lee claimed it was a privilege for an American to be married to a Korean.

376.   On information and belief, Dong Lee wanted Plaintiff to marry the Korean man in order to assist the Korean man in immigrating to the United States, so that he could work for World Mission New Jersey.

377.   Plaintiff did not want to marry the Korean man that Dong Lee had picked out for her.

378.   Plaintiff wanted to marry someone else instead.

379.   Dong Lee became agitated with Plaintiff when Plaintiff decided to marry the person of her own choice, rather than the person that Dong Lee had selected.

### I.   **Plaintiff's Exit From World Mission**

380.   Although Dong Lee was upset with Plaintiff for not complying with the arranged marriage, Plaintiff was able to maintain her good standing in World Mission New Jersey because she still had some money at the time.

381.    However, when Plaintiff ran out of money, her status within World Mission New Jersey changed dramatically.

382.    Defendant Dong Lee no longer paid attention to her.

383.    World Mission New Jersey no longer asked Plaintiff to teach or lead studies or arrange the flowers for services, as she had consistently been asked to do in the past.

384.    World Mission New Jersey began to isolate Plaintiff from other World Mission New Jersey members in order to make sure that she would not "contaminate" them.

385.    Plaintiff was no longer allowed to be alone with any other World Mission New Jersey members.

386.    Plaintiff eventually stopped attending World Mission New Jersey in the spring of 2012.

387.    After leaving World Mission New Jersey, Plaintiff continued to suffer extreme emotional distress.

388.    For instance, for months after leaving World Mission New Jersey, Plaintiff had nightmares about the world coming to an end.

389.    She also began experiencing intense feelings of guilt, and started to believe that every problem she had in her life was the result of her decision to leave World Mission New Jersey.

390.    Plaintiff did not come to understand how she had been defrauded, manipulated, and exploited until after she left World Mission New Jersey in the spring of 2012.

**III.**    **DEFENDANTS' INTENT**

391.    Except where otherwise stated in this Complaint, all of Plaintiff's damages, as alleged herein, resulted from actions and omissions by Chang, Kim, Dong Lee, Bong Lee, Byrne,

Whalen, and Lozada which evidence a reckless disregard for the duties imposed by their respective positions.

392.   Except where otherwise stated in this Complaint, all of the acts and omissions of the Defendants, as alleged herein, were willful or wanton.

393.   Except where otherwise stated in this Complaint, all of the acts and omissions of the Defendants, as alleged herein, were actuated by actual malice.

394.   Except where otherwise stated in this Complaint, all of the acts and omissions of the Defendants, as alleged herein, were accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

## CLAIMS FOR RELIEF

## CAUSE OF ACTION #1[1]

## INTENTIONAL FRAUD

**(Arising Out of False Representations)**

**(Against World Mission South Korea, World Mission New Jersey, Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

395.   Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

396.   Beginning from the time that Plaintiff was recruited into World Mission New Jersey in 2006, and continuing until Plaintiff's membership in World Mission New Jersey ended in 2012, the Defendants repeatedly and on an ongoing basis made false representations in order to intentionally mislead Plaintiff into believing that World Mission New Jersey existed for non-profit, charitable, or tax-exempt purposes, and that donations made to

---

[1] To the extent that the causes of action in this Complaint are contradictory, they are pled in the alternative.

World Mission New Jersey would be used exclusively for non-profit, charitable, or tax-exempt purposes. Those false representations included, but were not limited to, the following:

1) The corporate name of World Mission New Jersey contained the word "nonprofit" ("World Mission Society Church of God, a NJ Nonprofit Corporation"), falsely implying that World Mission New Jersey existed for non-profit, charitable, or tax-exempt purposes.

2) Donation receipts issued by World Mission New Jersey provided a tax identification number as well as additional language required by the IRS for tax-exempt donations, falsely implying that donations to World Mission New Jersey would be used exclusively for non-profit, charitable, or tax-exempt purposes.

3) The Defendants repeatedly and falsely claimed that significant amounts of money donated to World Mission New Jersey would be used to provide food to victims of natural disasters.

4) The Defendants repeatedly and falsely claimed that the leaders of World Mission New Jersey were unpaid volunteers who were not paid by World Mission New Jersey, even though many of them are either paid by World Mission New Jersey or by the Profit-Making Companies which are controlled by World Mission New Jersey.

5) The Defendants repeatedly and falsely claimed that World Mission New Jersey and related World Mission entities do not engage in profit-making enterprises.

397. Beginning from the time that Plaintiff was recruited into World Mission New Jersey in 2006, and continuing until Plaintiff's membership in World Mission New Jersey ended in

2012, the Defendants repeatedly and on an ongoing basis made false representations in order to intentionally mislead Plaintiff into believing that World Mission New Jersey was a pro-family organization that welcomed families into its membership and that encouraged families to remain strong and intact. Those false representations included, but were not limited to, the following:

1) The Defendants repeatedly and falsely claimed that World Mission New Jersey encouraged family interaction.

2) The Defendants repeatedly and falsely claimed that World Mission New Jersey strove to bring families together.

3) The Defendants repeatedly sponsored "Family Unity" events in order to create the false impression that World Mission New Jersey promoted family unity.

398. The false representations alleged herein are material, in that if the false representations had not been made, Plaintiff would not have joined World Mission New Jersey, continued as a member of World Mission New Jersey, or donated money, valuable goods, time, and energy to World Mission New Jersey.

399. At all times when material false representations were made, as alleged herein, the Defendants knew such representations were false or dishonest, deceptive and misleading.

400. The Defendants made material false representations, as alleged herein, with the intent to defraud and deceive Plaintiff into donating money, valuable goods, time, and energy to World Mission New Jersey that she would not have otherwise donated, and which Defendants knew she would not have otherwise donated.

401. The Defendants made material false representations, as alleged herein, with the intent that Plaintiff would rely on such false representations when deciding to join World Mission

New Jersey, remain a member of World Mission New Jersey, and donate money, valuable goods, time, and energy to World Mission New Jersey.

402.   Plaintiff justifiably relied on the Defendants' false representations when deciding to join World Mission New Jersey, remain a member of World Mission New Jersey, and donate money, valuable goods, time, and energy to World Mission New Jersey.

403.   As a direct and proximate result of Plaintiff's reliance on the false representations alleged herein, Plaintiff was damaged, in that she donated money, valuable goods, time, and energy to World Mission New Jersey that she would not have otherwise donated.

404.   As a direct and proximate result of Plaintiff's reliance on the false representations alleged herein, Plaintiff was damaged, in that she experienced severe emotional pain and mental anguish, including depression, nervousness, grief, anxiety, worry, shock, humiliation, indignity, fright, mortification, embarrassment, apprehension, and terror.

405.   As a direct and proximate result of Plaintiff's reliance on the false representations alleged herein, Plaintiff was damaged, in that she has incurred, or will incur, counseling and incidental expenses for the care and treatment of these injuries.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below.

## CAUSE OF ACTION #2

## INTENTIONAL FRAUD

### (Arising Out of Non-Disclosures)

**(Against World Mission South Korea, World Mission New Jersey, Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

406.   Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

407.   The Defendants failed to disclose at the time of Plaintiff's recruitment in 2006:

1)    that their agenda was to turn Plaintiff into a recruiter for World Mission New Jersey;

2)    that Plaintiff would be given a recruiting quota which she would be expected to meet as a condition of remaining a member of World Mission New Jersey;

3)    that if Plaintiff became a member of World Mission New Jersey she would be subjected to an increasing time commitment which would eventually cause all of her free time to be consumed by World Mission New Jersey;

4)    that the schedule imposed by World Mission New Jersey would cause Plaintiff to be deprived of sleep;

5)    that World Mission New Jersey frequently discourages its members from taking vacations;

6)    that if Plaintiff became a member of World Mission New Jersey she would eventually be expected to move in with other members;

7)    that if Plaintiff moved in with other members, the Defendants would be able to monitor her movements and activities on a daily basis;

8)    that if Plaintiff became a member of World Mission New Jersey the Defendants would not permit Plaintiff to express any doubts or criticisms about the Defendants;

9)    that if Plaintiff became a member of World Mission New Jersey the Defendants would use intimidation or coercion tactics, as alleged herein, to prevent Plaintiff from expressing any doubts or criticisms about the Defendants;

10)   that if Plaintiff became a member of World Mission New Jersey the Defendants would use intimidation or coercion tactics, as alleged herein, to retaliate against Plaintiff if she expressed any doubts or criticisms about the Defendants;

11)   that the Defendants adhered to a policy and practice of kicking out members who expressed doubts or criticisms about the Defendants;

12)   that members of World Mission New Jersey are not permitted to maintain contact with former members of World Mission;

13)   that the Defendants adhere to a policy and practice of telling "Righteous Lies";

14)   that World Mission New Jersey withholds information from prospective new members, and dispenses information in small, controlled doses;

15)   that members of World Mission New Jersey are trained to conceal the profiteering nature of World Mission from new recruits and prospective recruits;

16)   that World Mission New Jersey teaches and expects its members to believe that the devil will attack the members by working through their loved ones;

17)   that World Mission New Jersey facilitates arranged marriages, and that Plaintiff would be expected to enter into an arranged marriage;

18)   that World Mission New Jersey prohibits its members from being involved in romantic relationships outside of marriage;

19)   that World Mission New Jersey teaches and expects its members to believe that the members are not entitled to their own possessions, and that everything they have belongs to Chang, or World Mission;

20)   that Plaintiff's good standing in World Mission New Jersey would be contingent on her continuing to give exorbitant amounts of money to World Mission New

Jersey or continuing to spend exorbitant amounts of money for World Mission New Jersey's benefit;

21)    that World Mission New Jersey teaches and expects its members to believe that the world will be coming to an end soon; and

22)    that World Mission New Jersey teaches and expects its members to believe that Chang is "God."

408.  Beginning from the time that Plaintiff was recruited into World Mission New Jersey in 2006, and continuing until Plaintiff's membership in World Mission New Jersey ended in 2012, the Defendants repeatedly and on an ongoing basis failed to disclose:

1)    that money donated to World Mission New Jersey would be used for non-charitable or non-tax exempt purposes;

2)    that the primary purpose of World Mission New Jersey was to create wealth for Chang and Kim;

3)    that World Mission New Jersey obtained its tax exemption from the IRS by fraudulent means;

4)    that World Mission New Jersey fraudulently uses its tax exemption number to purchase inventory for the Profit-Making Companies;

5)    that World Mission New Jersey dominates and controls the Profit-Making Companies;

6)    that the members of World Mission New Jersey who are employed to staff the Profit-Making Companies are subjected to conditions of slavery, exploitation, and abuse;

7)     that the World Mission Enterprise and its constituents have a history of causing people to become suicidal, depressed, anxious, psychotic, or alienated from their families;

8)     that World Mission New Jersey has a long history of breaking up families and preventing family members from remaining in contact with one another;

9)     that, at the time Plaintiff was recruited, the Defendants had already received many complaints from members and former members of World Mission New Jersey who had lost contact with their parents, children, spouses, or other family and friends, as a result of World Mission's actions and omissions;

10)    that World Mission subjects its members to psychologically coercive techniques and undue influence so as to induce compliance in its members without the members' informed consent;

11)    that, at the time Plaintiff was recruited, the Defendants had already received many complaints from members and former members of World Mission New Jersey who had accused World Mission of subjecting its members to psychologically coercive techniques and undue influence so as to induce compliance in its members without the members' informed consent; and

12)    that the Defendants have actively worked to conceal the true nature of the World Mission Enterprise by waging vicious campaigns of harassment against anyone who has dared to present the truth to the public, sometimes bringing lawsuits against critics to harass them into silence.

409.   World Mission South Korea and World Mission New Jersey each had a duty to disclose the information alleged herein because each corporation was aware of the information,

and deliberately concealed said information in order to induce Plaintiff into donating money, valuable goods, time, and energy to World Mission New Jersey that she otherwise would not have donated.

410. All of the natural person Defendants had a duty to disclose the information alleged herein because each of them was aware of the information, and deliberately concealed said information in order to induce Plaintiff into donating money, valuable goods, time, and energy to World Mission New Jersey that she otherwise would not have donated.

411. Moreover, all of the natural person Defendants had a duty to disclose the information alleged herein by virtue of their positions of authority and responsibility within World Mission South Korea or World Mission New Jersey.

412. The nondisclosures alleged herein are material, in that if the nondisclosed information had been disclosed, Plaintiff would not have joined World Mission New Jersey, continued as a member of World Mission New Jersey, or donated money, valuable goods, time, and energy to World Mission New Jersey.

413. At all times when the material information was not disclosed, the Defendants knew such nondisclosures would create an impression of World Mission South Korea, World Mission New Jersey, and the World Mission Enterprise, that was false or dishonest, deceptive and misleading.

414. The Defendants failed to disclose the material information, or concealed the material information, with the intent to defraud and deceive Plaintiff into donating money, valuable goods, time, and energy to World Mission New Jersey that she would not have otherwise donated, and which Defendants knew she would not have otherwise donated.

415.   The Defendants failed to disclose the material information, or concealed the material information, with the intent that Plaintiff would rely on such nondisclosures when deciding to join World Mission New Jersey, to remain a member of World Mission New Jersey, and to donate money, valuable goods, time, and energy to World Mission New Jersey.

416.   Plaintiff justifiably relied on the Defendants' non-disclosures when deciding to join World Mission New Jersey, remain a member of World Mission New Jersey, and donate money, valuable goods, time, and energy to World Mission New Jersey.

417.   As a direct and proximate result of Plaintiff's reliance on the nondisclosures alleged herein, Plaintiff was damaged, in that she donated money, valuable goods, time, and energy to World Mission New Jersey that she would not have otherwise donated.

418.   As a direct and proximate result of Plaintiff's reliance on the nondisclosures alleged herein, Plaintiff was damaged, in that she experienced severe emotional pain and mental anguish, including depression, nervousness, grief, anxiety, worry, shock, humiliation, indignity, fright, mortification, embarrassment, apprehension, and terror.

419.   As a direct and proximate result of Plaintiff's reliance on the nondisclosures alleged herein, Plaintiff was damaged, in that she has incurred, or will incur, counseling and incidental expenses for the care and treatment of these injuries.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below.

## CAUSE OF ACTION #3

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Against World Mission South Korea, World Mission New Jersey, Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

420.  Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

421.  Taken together, the actions and omissions of the Defendants, as alleged throughout this Complaint, constitute extreme and outrageous conduct, in that their actions are so extreme so as to exceed all bounds of conduct usually tolerated in a civilized community.

422.  Specifically, the Defendants' extreme and outrageous conduct includes:

1)  the false representations made by the Defendants, as alleged in Cause of Action #1, which caused Plaintiff to donate money, valuable goods, time, and energy to World Mission New Jersey which she would not have otherwise donated, and which prevented Plaintiff from being able to make informed decisions about her involvement with World Mission New Jersey;

2)  the failure of the Defendants to disclose material facts, as alleged in Cause of Action #2, which caused Plaintiff to donate money, valuable goods, time, and energy to World Mission New Jersey which she would not have otherwise donated, and which prevented Plaintiff from being able to make informed decisions about her involvement with World Mission New Jersey;

3)  the coercive, manipulative, and deceptive manner in which the Defendants and their agents unduly influenced Plaintiff into joining World Mission New Jersey;

4)  the coercive, manipulative, and deceptive manner in which the Defendants and their agents unduly influenced Plaintiff into increasing her time commitment to World Mission New Jersey;

5)   the coercive, manipulative, and deceptive manner in which the Defendants and their agents unduly influenced Plaintiff into turning over exorbitant amounts of money to World Mission New Jersey;

6)   the coercive, manipulative, and deceptive manner in which the Defendants and their agents unduly influenced Plaintiff into spending exorbitant amounts of money for World Mission New Jersey's benefit;

7)   the efforts by the Defendants to instill irrational fears in Plaintiff;

8)   the efforts by the Defendants to weaken Plaintiff's mind by depriving her of sleep;

9)   the efforts by the Defendants to alienate Plaintiff from her family;

10)   the coercive, manipulative, and deceptive manner in which the Defendants and their agents unduly influenced Plaintiff into becoming a recruiter for the profit-making World Mission Enterprise, without paying compensation to Plaintiff;

11)   the coercive, manipulative, and deceptive manner in which the Defendants and their agents attempted to unduly influence Plaintiff into marrying a stranger;

12)   the efforts by the Defendants to make Plaintiff feel intimidated, guilty, and ashamed whenever she would have doubts about World Mission;

13)   all other extreme and outrageous actions and omissions of the Defendants described throughout this Complaint; and

14)   any other actions and omissions that caused emotional distress for Plaintiff but which she has yet to discover were caused by the Defendants.

423.   The Defendants engaged in this extreme and outrageous conduct with the intention of causing, or with reckless disregard of the probability of causing, emotional distress in Plaintiff.

424.    The Defendants' extreme and outrageous conduct was neither justified nor privileged.

425.    Plaintiff did not knowingly consent to the Defendants' extreme and outrageous conduct.

426.    As a direct and proximate result of the willful, wrongful, intentional and reckless extreme and outrageous acts and omissions of the Defendants, Plaintiff was caused to suffer severe emotional distress, which was so extreme that no reasonable person could be expected to endure it.

427.    As a direct and proximate result of the willful, wrongful, intentional and reckless extreme and outrageous acts and omissions of the Defendants, Plaintiff was damaged, in that she experienced severe emotional pain and mental anguish, including depression, nervousness, grief, anxiety, worry, shock, humiliation, indignity, fright, mortification, embarrassment, apprehension, and terror.

428.    As a direct and proximate result of the willful, wrongful, intentional and reckless extreme and outrageous acts and omissions of the Defendants, Plaintiff was damaged, in that she has incurred, or will incur, counseling and incidental expenses for the care and treatment of these injuries.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below.

## CAUSE OF ACTION #4

## NEGLIGENT MISREPRESENTATION

**(Against World Mission South Korea, World Mission New Jersey, Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

429.    Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

430.    The Defendants negligently failed to disclose material facts, as alleged in Cause of Action #2.

431.   At all times when the Defendants failed to disclose material facts, they had no reasonable grounds for believing that they had no duty to disclose such facts.

432.   Plaintiff justifiably relied on the Defendants' non-disclosures, as alleged herein, when deciding to join World Mission New Jersey, remain a member of World Mission New Jersey, and donate money, valuable goods, time, and energy to World Mission New Jersey.

433.   As a direct and proximate result of Plaintiff's reliance on these nondisclosures, Plaintiff was damaged, in that she donated money, valuable goods, time, and energy to World Mission New Jersey that she would not have otherwise donated.

434.   As a direct and proximate result of Plaintiff's reliance on these nondisclosures, Plaintiff was damaged, in that she experienced severe emotional pain and mental anguish, including depression, nervousness, grief, anxiety, worry, shock, humiliation, indignity, fright, mortification, embarrassment, apprehension, and terror.

435.   As a direct and proximate result of Plaintiff's reliance on these nondisclosures, Plaintiff was damaged, in that she has incurred, or will incur, counseling and incidental expenses for the care and treatment of these injuries.

436.   The Defendants' conduct, as alleged herein, was grossly negligent.

437.   Plaintiff was not a beneficiary of World Mission South Korea.

438.   Alternatively, if Plaintiff was a beneficiary of World Mission South Korea, then Plaintiff would not have been a beneficiary of World Mission South Korea, to any degree, but for the Defendants' negligent nondisclosures, as alleged herein.

439.   Plaintiff was not a beneficiary of World Mission New Jersey.

440.   Alternatively, if Plaintiff was a beneficiary of World Mission New Jersey, then Plaintiff would not have been a beneficiary of World Mission New Jersey, to any degree, but for the Defendants' negligent nondisclosures, as alleged herein.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below.

## CAUSE OF ACTION #5

## BREACH OF FIDUCIARY DUTY

### (Against Dong Lee)

441.   Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

442.   Dong Lee owed fiduciary duties to Plaintiff, arising out of the following facts:

1)   Dong Lee knowingly undertook to act for the benefit of Plaintiff, by promising spiritual guidance and establishing a clergy-parishioner relationship with Plaintiff;

2)   in order for Dong Lee to provide such guidance to Plaintiff, it was necessary for Plaintiff to place her trust in him;

3)   Dong Lee knew that material false representations were being made to Plaintiff, as alleged in Cause of Action #1;

4)   Dong Lee knew that material information was being concealed from Plaintiff or left undisclosed to Plaintiff, as alleged in Cause of Action #2;

5)   Dong Lee knew that many people had previously been harmed by those material false representations and material nondisclosures; and

6)   Dong Lee could have reasonably foreseen that Plaintiff was going to be harmed by such material false representations and material nondisclosures.

443.   Dong Lee breached his fiduciary duties to Plaintiff by making material false representations to Plaintiff, as alleged in Cause of Action #1, and by not stopping those material false representations from being made by others under his supervision.

444.   Dong Lee breached his fiduciary duties to Plaintiff by concealing material information from Plaintiff and by failing to disclose material information to Plaintiff, as alleged in Cause of Action #2, and by not stopping that material information from being concealed by others under his supervision.

445.   Dong Lee breached his fiduciary duties to Plaintiff by inflicting, or causing others under his supervision to inflict, extreme emotional distress in Plaintiff, as alleged in Cause of Action #3, and by not stopping the infliction of emotional distress in Plaintiff caused by others under his supervision.

446.   Dong Lee breached his fiduciary duties to Plaintiff in order to induce Plaintiff into donating money, valuable goods, time, and energy to World Mission New Jersey that she would not have otherwise donated.

447.   As a direct and proximate result of Dong Lee's breaches of fiduciary duties, Plaintiff was damaged, in that she donated money, valuable goods, time, and energy to World Mission New Jersey that she would not have otherwise donated.

448.   As a direct and proximate result of Dong Lee's breaches of fiduciary duties, Plaintiff was damaged, in that she experienced severe emotional pain and mental anguish, including depression, nervousness, grief, anxiety, worry, shock, humiliation, indignity, fright, mortification, embarrassment, apprehension, and terror.

449.     As a direct and proximate result of Dong Lee's breaches of fiduciary duties, Plaintiff was damaged, in that she has incurred, or will incur, counseling and incidental expenses for the care and treatment of these injuries.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below.

<u>**CAUSE OF ACTION #6**</u>

<u>**CONSTRUCTIVE FRAUD**</u>

**(Against Dong Lee)**

450.     Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

451.     Dong Lee owed fiduciary duties to Plaintiff, as alleged in Cause of Action #5.

452.     Dong Lee breached his fiduciary duties to Plaintiff, as alleged in Cause of Action #5.

453.     Dong Lee breached his fiduciary duties to Plaintiff in order to induce Plaintiff into donating money, valuable goods, time, and energy to World Mission New Jersey that she would not have otherwise donated.

454.     Dong Lee's job performance is measured by the monetary donations and time commitments that he extracts from members of World Mission New Jersey.  As such, Dong Lee received a benefit when he induced Plaintiff into donating money, valuable goods, time, and energy to World Mission New Jersey that she would not have otherwise donated.

455.     Therefore, Dong Lee's breach of fiduciary duties constitutes a constructive fraud.

456.     As a direct and proximate result of Dong Lee's constructive fraud, Plaintiff was damaged, in that she donated money, valuable goods, time, and energy to World Mission New Jersey that she would not have otherwise donated.

457.    As a direct and proximate result of Dong Lee's constructive fraud, Plaintiff was damaged, in that she experienced severe emotional pain and mental anguish, including depression, nervousness, grief, anxiety, worry, shock, humiliation, indignity, fright, mortification, embarrassment, apprehension, and terror.

458.    As a direct and proximate result of Dong Lee's constructive fraud, Plaintiff was damaged, in that she has incurred, or will incur, counseling and incidental expenses for the care and treatment of these injuries.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below.

## CAUSE OF ACTION #7

## UNJUST ENRICHMENT

**(Against World Mission South Korea and World Mission New Jersey)**

459.    Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

460.    World Mission South Korea and World Mission New Jersey each received a benefit from Plaintiff, in the form of money, valuable goods, time, and energy that Plaintiff donated to World Mission New Jersey, with the fruits of such donations being passed on to World Mission South Korea.

461.    Plaintiff received no value in exchange for the money, valuable goods, time, and energy that she donated to World Mission New Jersey.

462.    World Mission South Korea and World Mission New Jersey each received additional benefits in the form of money, valuable goods, time, and energy that was donated to World Mission New Jersey and other World Mission entities by other members who had

been recruited into World Mission New Jersey by Plaintiff, with the fruits of such donations being passed on to World Mission South Korea.

463.   Plaintiff was never compensated for the donations of money, valuable goods, time, and energy that were given to World Mission New Jersey, or any other World Mission entity, by other members who were recruited as a result of Plaintiff's efforts.

464.   It is unjust to allow World Mission South Korea and World Mission New Jersey to retain those benefits at the expense of Plaintiff, who has received no value in return.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below.

## CAUSE OF ACTION #8

## INVASION OF PRIVACY / INTRUSION UPON SECLUSION

**(Against World Mission South Korea, World Mission New Jersey, Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

465.   Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

466.   The Defendants intruded upon the seclusion of Plaintiff by undertaking the following actions:

1)   using coercive social influence to induce Plaintiff into moving in with other World Mission members;

2)   monitoring Plaintiff's movements and activities on a daily basis;

3)   reporting Plaintiff's movements and activities to World Mission leaders;

4)   failing to disclose to Plaintiff that her movements and activities were being so monitored and reported;

5)      subjecting Plaintiff to a system whereby World Mission members would be publicly rebuked if their movements and activities were not pleasing to World Mission leaders; and

6)      requiring Plaintiff to devote her personal time to World Mission, even on "laundry day," after World Mission New Jersey had promised Plaintiff that "laundry day" would be a day where she would be allowed to use her personal time however she chose.

467.    Each of those intrusions would be highly offensive to a reasonable person.

468.    Therefore, the Defendants have invaded Plaintiff's privacy.

469.    As a direct and proximate result of the Defendants' invasion of Plaintiff's privacy, Plaintiff was damaged, in that she experienced severe emotional pain and mental anguish, including depression, nervousness, grief, anxiety, worry, shock, humiliation, indignity, fright, mortification, embarrassment, apprehension, and terror.

470.    As a direct and proximate result of the Defendants' invasion of Plaintiff's privacy, Plaintiff was damaged, in that she has incurred, or will incur, counseling and incidental expenses for the care and treatment of these injuries.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below.

**CAUSE OF ACTION #9**

**VIOLATIONS OF NEW JERSEY CONSUMER FRAUD ACT /**

**N.J.S.A. § 56:8-2**

**(Fraud In Connection with Sale of Merchandise Arising Out of False Representations)**

**(Against World Mission South Korea, World Mission New Jersey, Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

471. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

472. The Consumer Fraud Act, N.J.S.A. § 56:8-2 states in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

473. The Defendants view their "religion" as a form of "merchandise." In fact, in another lawsuit, World Mission New Jersey brought product disparagement claims against a critic on the theory that the religious services offered by World Mission New Jersey constitute "products" which were disparaged when the critic criticized them. See World Mission Society Church of God v. Colón, BER-L-5274-12 (N.J. Sup. Ct., Law Div., Bergen Cnty) (filed July 11, 2012).

474. The Defendants made material false representations to Plaintiff in connection with World Mission New Jersey's fundraising (or the sale of its "merchandise"), as alleged in Cause of Action #1 above.

475. The Defendants made material false representations to Plaintiff with the intent that Plaintiff would rely on those false representations when deciding to donate money, valuable goods, time, and energy to World Mission New Jersey.

476. The Defendants' false representations violate the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2.

477. As a direct and proximate result of Defendants' violations of the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> § 56:8-2, Plaintiff suffered an ascertainable loss in the form of money, valuable goods, time, and energy that she donated to World Mission New Jersey.

478. Plaintiff is therefore entitled to relief pursuant to the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> § 56:8-19.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below.

**CAUSE OF ACTION #10**

**<u>VIOLATIONS OF NEW JERSEY CONSUMER FRAUD ACT /</u>**

**<u>N.J.S.A. § 56:8-2</u>**

**(Fraud In Connection with Sale of Merchandise Arising Out of Nondisclosures)**

**(Against World Mission South Korea, World Mission New Jersey, Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

479. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

480. The Defendants view their "religion" as a form of "merchandise," as described in Cause of Action #9.

481. The Defendants failed to disclose material information to Plaintiff in connection with World Mission New Jersey's fundraising (or the sale of its "merchandise"), as alleged in Cause of Action #2 above.

482. The Defendants failed to disclose material information, or concealed material information, with the intent that Plaintiff would rely on those nondisclosures when deciding to donate money, valuable goods, time, and energy to World Mission New Jersey.

483.   The Defendants' nondisclosures violate the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> § 56:8-2.

484.   As a direct and proximate result of Defendants' violations of the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> § 56:8-2, Plaintiff suffered an ascertainable loss in the form of money, valuable goods, time, and energy that she donated to World Mission New Jersey.

485.   Plaintiff is therefore entitled to relief pursuant to the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> § 56:8-19.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below.

## CAUSE OF ACTION #11

## VIOLATIONS OF NEW JERSEY CONSUMER FRAUD ACT /

## N.J.S.A. § 56:8-2

**(Unconscionable Commercial Practices In Connection with Sale of Merchandise)**

**(Against World Mission South Korea, World Mission New Jersey, Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

486.   Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

487.   The Defendants view their "religion" as a form of "merchandise," as described in Cause of Action #9.

488.   Taken together, the actions and omissions of the Defendants as alleged in Causes of Action #1, #2, and #3 above, constitute unconscionable commercial practices in connection with World Mission New Jersey's fundraising (or the sale of its "merchandise").

489.   The Defendants' unconscionable practices violate the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> § 56:8-2.

490.   As a direct and proximate result of Defendants' violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2, Plaintiff suffered an ascertainable loss in the form of money, valuable goods, time, and energy that she donated to World Mission New Jersey.

491.   Plaintiff is therefore entitled to relief pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-19.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below.

## CAUSE OF ACTION #12

## VIOLATIONS OF NEW JERSEY CONSUMER FRAUD ACT / N.J.S.A. § 56:8-2.7

### (Fraud In Connection with Solicitation of Funds or Contributions)

### (Against World Mission South Korea, World Mission New Jersey, Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)

492.   Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

493.   The Consumer Fraud Act, N.J.S.A. § 56:8-2.7 states in relevant part:

> It shall be an unlawful practice for any person to solicit funds or a contribution of any kind . . . where it has been falsely represented by such person or where the consumer has been falsely led to believe that such person is soliciting by or on behalf of any charitable or nonprofit organization . . . .

494.   Beginning from the time that Plaintiff was recruited into World Mission New Jersey in 2006, and continuing until Plaintiff's membership in World Mission New Jersey ended in 2012, the Defendants repeatedly and on an ongoing basis solicited funds from Plaintiff.

495.   In response to the Defendants' solicitations, Plaintiff donated funds and other valuable goods to World Mission New Jersey.

496.   The Defendants falsely represented, and Plaintiff was falsely led to believe, that such funds and other valuable goods were being donated to, and used by, a charitable or nonprofit organization for charitable, nonprofit, or tax exempt purposes.

497.   In fact, those funds and other valuable goods were donated to the World Mission Enterprise, which is not a charitable enterprise, but which is rather a profitable venture which exists for non-tax exempt purposes.

498.   Such conduct violates the Consumer Fraud Act, N.J.S.A. § 56:8-2.7

499.   Beginning from the time that Plaintiff was recruited into World Mission New Jersey in 2006, and continuing until Plaintiff's membership in World Mission New Jersey ended in 2012, the Defendants repeatedly and on an ongoing basis solicited Plaintiff to donate time and energy to World Mission New Jersey.

500.   In response to the Defendants' solicitations, Plaintiff donated a significant amount of time and energy to World Mission New Jersey.

501.   Plaintiff's time and energy were used by World Mission New Jersey to raise additional funds from other members and to recruit new members.

502.   The Defendants falsely represented, and Plaintiff was falsely led to believe, that her time and energy were being used to raise money and recruit members into a charitable or nonprofit organization, which would use any money raised for charitable, nonprofit, or tax exempt purposes.

503.   In fact, Plaintiff's time and energy were used to raise money for and to recruit members into the World Mission Enterprise, which is not a charitable enterprise, but which is rather a profitable venture which exists for non-tax exempt purposes.

504.   Such conduct violates the Consumer Fraud Act, N.J.S.A. § 56:8-2.7

505. As a direct and proximate result of Defendants' violations of the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> § 56:8-2.7, Plaintiff suffered an ascertainable loss in the form of money, valuable goods, time, and energy that she donated to World Mission New Jersey.

506. Plaintiff is entitled to relief pursuant to the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> § 56:8-19.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below.

### CAUSE OF ACTION #13

### *PRIMA FACIE* TORT

**(Against World Mission South Korea, World Mission New Jersey, Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

507. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

508. Defendants intentionally, willfully, and maliciously inflicted harm on Plaintiff.

509. In the event that no adequate common law or statutory remedy exists, Plaintiff is nevertheless entitled to recover for her injuries under the *prima facie* tort doctrine.

510. As a direct and proximate result of the Defendants' *prima facie* torts, Plaintiff was damaged, in that she donated money, valuable goods, time, and energy to World Mission New Jersey that she would not have otherwise donated.

511. As a direct and proximate result of the Defendants' *prima facie* tort, Plaintiff was damaged, in that she experienced severe emotional pain and mental anguish, including depression, nervousness, grief, anxiety, worry, shock, humiliation, indignity, fright, mortification, embarrassment, apprehension, and terror.

512. As a direct and proximate result of the Defendants' *prima facie* tort, Plaintiff was damaged, in that she has incurred, or will incur, counseling and incidental expenses for the care and treatment of these injuries.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below.

## CAUSE OF ACTION #14

## CIVIL CONSPIRACY

**(Against World Mission South Korea, World Mission New Jersey, Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

513. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

514. The Defendants each knowingly and willfully conspired among themselves to commit the wrongful, unlawful, and tortious acts alleged herein.

515. The Defendants have each committed overt acts or omissions in furtherance of the conspiracy, as alleged herein, and have each cooperated with, lent aid and encouragement to, or ratified and adopted the acts of the other Defendants, in a manner at this time unknown to Plaintiff, but known to the Defendants and to each of them.

516. The Defendants have each, at various times as alleged herein, directly ordered, authorized, or participated in the wrongful, unlawful, and tortious conduct that was directed at Plaintiff.

517. As a direct and proximate result of the Defendants' conspiratorial conduct, Plaintiff was damaged, in that she donated money, valuable goods, time, and energy to World Mission New Jersey that she otherwise would not have donated.

518. As a direct and proximate result of the Defendants' conspiratorial conduct, Plaintiff was damaged, in that she experienced severe emotional pain and mental anguish, including

depression, nervousness, grief, anxiety, worry, shock, humiliation, indignity, fright, mortification, embarrassment, apprehension, and terror.

519.   As a direct and proximate result of the Defendants' conspiratorial conduct, Plaintiff was damaged, in that she has incurred, or will incur, counseling and incidental expenses for the care and treatment of these injuries.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below, along with an Order declaring that World Mission South Korea, World Mission New Jersey, Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada are each liable as co-conspirators for the torts committed by the others.

## CAUSE OF ACTION #15

## CONCERT OF ACTION

**(Against World Mission South Korea, World Mission New Jersey, Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

520.   Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

521.   The Defendants pursued a common plan to commit the acts and omissions alleged herein.

522.   The Defendants actively participated in, aided, and encouraged the wrongful acts and omissions alleged herein.

523.   The Defendants each ratified the wrongful acts and omissions as alleged herein.

524.   The wrongful acts and omissions, as alleged herein, were done for the benefit of each of the Defendants, in that the money, valuable goods, time, and energy donated by Plaintiff inured to the benefit of World Mission South Korea, World Mission New Jersey, Chang, and Kim, and the job performances of Dong Lee, Bong Lee, Byrne, Whalen, and Lozada are all measured by such donations.

68

525. Therefore, all of the Defendants should be liable for the torts committed by the other Defendants.

526. As a direct and proximate result of the Defendants' concerted action, Plaintiff was damaged, in that she donated money, valuable goods, time, and energy to World Mission New Jersey that she otherwise would not have donated.

527. As a direct and proximate result of the Defendants' concerted action, Plaintiff was damaged, in that she experienced severe emotional pain and mental anguish, including depression, nervousness, grief, anxiety, worry, shock, humiliation, indignity, fright, mortification, embarrassment, apprehension, and terror.

528. As a direct and proximate result of the Defendants' concerted action, Plaintiff was damaged, in that she has incurred, or will incur, counseling and incidental expenses for the care and treatment of these injuries.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below, along with an Order declaring that World Mission South Korea, World Mission New Jersey, Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada are each liable as concerted actors for the torts committed by the others.

## CAUSE OF ACTION #16

## VICARIOUS LIABILITY FOR ACTS OF EMPLOYEES OR AGENTS

### (Against World Mission South Korea for Acts and Omissions Committed by Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)

529. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

530. Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada are each agents or employees of World Mission South Korea.

531.   At all times relevant herein, Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada were each acting within the scope of their agency or employment with World Mission South Korea.

532.   At all times relevant herein, Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada were each acting substantially within the authorized time and space limitations imposed on them by World Mission South Korea.

533.   The wrongful acts and omissions committed by Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were the same kind of acts and omissions that said Defendants were engaged or employed to perform by World Mission South Korea.

534.   The wrongful acts and omissions committed by Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were actuated in part by a purpose to serve World Mission South Korea.

535.   World Mission South Korea received benefits from the wrongful acts and omissions committed by Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, in the form of money, valuable goods, time, and energy donated to World Mission New Jersey by Plaintiff, which inured to the benefit of World Mission South Korea.

536.   World Mission South Korea intended for Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada to commit the acts and omissions alleged herein.

537.   World Mission South Korea knew that many other people who had been members of World Mission had suffered the same or similar injuries as Plaintiff, as alleged herein, and it intended for Plaintiff to suffer those injuries.

538.  World Mission South Korea was reckless and failed to exercise reasonable care over Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

539.  At all times relevant herein, World Mission South Korea retained control of the manner and means of the doing of the work that included the acts and omissions committed by Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein.

540.  At all times relevant herein, World Mission South Korea failed to inspect or exercise proper oversight over the work performed by Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

541.  The acts and omissions of Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were especially egregious.

542.  The upper management of World Mission South Korea authorized, participated in, and ratified the acts and omissions of Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, or demonstrated willful indifference.

543.  Therefore, World Mission South Korea is vicariously liable for the actions and omissions of Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, by operation of law under the doctrine of respondeat superior, and is responsible for all of the damages attributed to Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below, along with an Order declaring that World Mission South Korea is vicariously liable for all of the torts committed by Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

## CAUSE OF ACTION #17

## VICARIOUS LIABILITY FOR ACTS OF EMPLOYEES OR AGENTS

**(Against World Mission New Jersey for Acts and Omissions Committed by
Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

544.   Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

545.   Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada are each agents or employees of World Mission New Jersey.

546.   At all times relevant herein, Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada were each acting within the scope of their agency or employment with World Mission New Jersey.

547.   At all times relevant herein, Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada were each acting substantially within the authorized time and space limitations imposed on them by World Mission New Jersey.

548.   The wrongful acts and omissions committed by Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were the same kind of acts and omissions that said Defendants were engaged or employed to perform by World Mission New Jersey.

549.   The wrongful acts and omissions committed by Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were actuated in part by a purpose to serve World Mission New Jersey.

550.   World Mission New Jersey received benefits from the wrongful acts and omissions committed by Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, in the form of money, valuable goods, time, and energy donated to World Mission New Jersey by Plaintiff.

551.   World Mission New Jersey intended for Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada to commit the acts and omissions alleged herein.

552.   World Mission New Jersey knew that many other people who had been members of World Mission had suffered the same or similar injuries as Plaintiff, as alleged herein, and it intended for Plaintiff to suffer those injuries.

553.   World Mission New Jersey was reckless and failed to exercise reasonable care over Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

554.   At all times relevant herein, World Mission New Jersey retained control of the manner and means of the doing of the work that included the acts and omissions committed by Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein.

555.   At all times relevant herein, World Mission New Jersey failed to inspect or exercise proper oversight over the work performed by Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

556.   The acts and omissions of Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were especially egregious.

557.   The upper management of World Mission New Jersey authorized, participated in, and ratified the acts and omissions of Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, or demonstrated willful indifference.

558.   Therefore, World Mission New Jersey is vicariously liable for the actions and omissions of Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, by operation of law under the doctrine of respondeat superior, and is responsible for all of

the damages attributed to Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below, along with an Order declaring that World Mission New Jersey is vicariously liable for all of the torts committed by Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

## CAUSE OF ACTION #18

## VICARIOUS LIABILITY FOR ACTS OF EMPLOYEES OR AGENTS

### (Against Chang for Acts and Omissions Committed by Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)

559.   Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

560.   Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada are each agents or employees of Chang.

561.   At all times relevant herein, Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada were each acting within the scope of their agency or employment with Chang.

562.   At all times relevant herein, Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada were each acting substantially within the authorized time and space limitations imposed on them by Chang.

563.   The wrongful acts and omissions committed by Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were the same kind of acts and omissions that said Defendants were engaged or employed to perform by Chang.

564.   The wrongful acts and omissions committed by Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were actuated in part by a purpose to serve Chang.

565.  Chang received benefits from the wrongful acts and omissions committed by Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, in the form of money, valuable goods, time, and energy donated to World Mission New Jersey by Plaintiff, which, on information and belief, inured to the benefit of Chang.

566.  Chang intended for Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada to commit the acts and omissions alleged herein.

567.  Chang knew that many other people who had been members of World Mission had suffered the same or similar injuries as Plaintiff, as alleged herein, and she intended for Plaintiff to suffer those injuries.

568.  Chang was reckless and failed to exercise reasonable care over Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

569.  At all times relevant herein, Chang retained control of the manner and means of the doing of the work that included the acts and omissions committed by Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein.

570.  At all times relevant herein, Chang failed to inspect or exercise proper oversight over the work performed by Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

571.  The acts and omissions of Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were especially egregious.

572.  Chang authorized, participated in, and ratified the acts and omissions of Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, or demonstrated willful indifference.

573.  Therefore, Chang is vicariously liable for the actions and omissions of Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, by operation of law under the doctrine

of <u>respondeat</u> <u>superior</u>, and is responsible for all of the damages attributed to Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below, along with an Order declaring that Chang is vicariously liable for all of the torts committed by Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

**CAUSE OF ACTION #19**

**VICARIOUS LIABILITY FOR ACTS OF EMPLOYEES OR AGENTS**

**(Against Kim for Acts and Omissions Committed by
Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

574.   Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

575.   Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada are each agents or employees of Kim.

576.   At all times relevant herein, Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada were each acting within the scope of their agency or employment with Kim.

577.   At all times relevant herein, Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada were each acting substantially within the authorized time and space limitations imposed on them by Kim.

578.   The wrongful acts and omissions committed by Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were the same kind of acts and omissions that said Defendants were engaged or employed to perform by Kim.

579.   The wrongful acts and omissions committed by Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were actuated in part by a purpose to serve Kim.

580.   Kim received benefits from the wrongful acts and omissions committed by Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, in the form of money, valuable goods, time, and energy donated to World Mission New Jersey by Plaintiff, which, on information and belief, inured to the benefit of Kim.

581.   Kim intended for Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada to commit the acts and omissions alleged herein.

582.   Kim knew that many other people who had been members of World Mission had suffered the same or similar injuries as Plaintiff, as alleged herein, and he intended for Plaintiff to suffer those injuries.

583.   Kim was reckless and failed to exercise reasonable care over Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

584.   At all times relevant herein, Kim retained control of the manner and means of the doing of the work that included the acts and omissions committed by Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein.

585.   At all times relevant herein, Kim failed to inspect or exercise proper oversight over the work performed by Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

586.   The acts and omissions of Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were especially egregious.

587.   Kim authorized, participated in, and ratified the acts and omissions of Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, or demonstrated willful indifference.

588.   Therefore, Kim is vicariously liable for the actions and omissions of Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, by operation of law under the doctrine of respondeat superior, and is responsible for all of the damages attributed to Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below, along with an Order declaring that Kim is vicariously liable for all of the torts committed by Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

### CAUSE OF ACTION #20

### VICARIOUS LIABILITY FOR ACTS OF EMPLOYEES OR AGENTS

**(Against Dong Lee for Acts and Omissions Committed by
Bong Lee, Byrne, Whalen, and Lozada)**

589.   Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

590.   Defendants Bong Lee, Byrne, Whalen, and Lozada are each agents or employees of Dong Lee.

591.   At all times relevant herein, Defendants Bong Lee, Byrne, Whalen, and Lozada were each acting within the scope of their agency or employment with Dong Lee.

592.   At all times relevant herein, Defendants Bong Lee, Byrne, Whalen, and Lozada were each acting substantially within the authorized time and space limitations imposed on them by Dong Lee.

593.   The wrongful acts and omissions committed by Defendants Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were the same kind of acts and omissions that said Defendants were engaged or employed to perform by Dong Lee.

594.   The wrongful acts and omissions committed by Defendants Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were actuated in part by a purpose to serve Dong Lee.

595.   Dong Lee received benefits from the wrongful acts and omissions committed by Defendants Bong Lee, Byrne, Whalen, and Lozada, in the form of money, valuable goods, time, and energy donated to World Mission New Jersey by Plaintiff, which was used to measure Dong Lee's job performance.

596.   Dong Lee intended for Defendants Bong Lee, Byrne, Whalen, and Lozada to commit the acts and omissions alleged herein.

597.   Dong Lee knew that many other people who had been members of World Mission had suffered the same or similar injuries as Plaintiff, as alleged herein, and he intended for Plaintiff to suffer those injuries.

598.   Dong Lee was reckless and failed to exercise reasonable care over Defendants Bong Lee, Byrne, Whalen, and Lozada.

599.   At all times relevant herein, Dong Lee retained control of the manner and means of the doing of the work that included the acts and omissions committed by Defendants Bong Lee, Byrne, Whalen, and Lozada, as alleged herein.

600.   At all times relevant herein, Dong Lee failed to inspect or exercise proper oversight over the work performed by Defendants Bong Lee, Byrne, Whalen, and Lozada.

601.   The acts and omissions of Defendants Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were especially egregious.

602.   Dong Lee authorized, participated in, and ratified the acts and omissions of Defendants Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, or demonstrated willful indifference.

603.   Therefore, Dong Lee is vicariously liable for the actions and omissions of Defendants Bong Lee, Byrne, Whalen, and Lozada, by operation of law under the doctrine of <u>respondeat</u> <u>superior</u>, and is responsible for all of the damages attributed to Defendants Bong Lee, Byrne, Whalen, and Lozada, as alleged herein.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below, along with an Order declaring that Dong Lee is vicariously liable for all of the torts committed by Bong Lee, Byrne, Whalen, and Lozada.

**CAUSE OF ACTION #21**

**VICARIOUS LIABILITY FOR ACTS OF EMPLOYEES OR AGENTS**

**(Against Bong Lee for Acts and Omissions Committed by
Dong Lee, Byrne, Whalen, and Lozada)**

604.   Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

605.   Defendants Dong Lee, Byrne, Whalen, and Lozada are each agents or employees of Bong Lee.

606.   At all times relevant herein, Defendants Dong Lee, Byrne, Whalen, and Lozada were each acting within the scope of their agency or employment with Bong Lee.

607.   At all times relevant herein, Defendants Dong Lee, Byrne, Whalen, and Lozada were each acting substantially within the authorized time and space limitations imposed on them by Bong Lee.

608.   The wrongful acts and omissions committed by Defendants Dong Lee, Byrne, Whalen, and Lozada, as alleged herein, were the same kind of acts and omissions that said Defendants were engaged or employed to perform by Bong Lee.

609.   The wrongful acts and omissions committed by Defendants Dong Lee, Byrne, Whalen, and Lozada, as alleged herein, were actuated in part by a purpose to serve Bong Lee.

610.   Bong Lee received benefits from the wrongful acts and omissions committed by Defendants Dong Lee, Byrne, Whalen, and Lozada, in the form of money, valuable goods, time, and energy donated to World Mission New Jersey by Plaintiff, which was used to measure Bong Lee's job performance.

611.   Bong Lee intended for Defendants Dong Lee, Byrne, Whalen, and Lozada to commit the acts and omissions alleged herein.

612.   Bong Lee knew that many other people who had been members of World Mission had suffered the same or similar injuries as Plaintiff, as alleged herein, and she intended for Plaintiff to suffer those injuries.

613.   Bong Lee was reckless and failed to exercise reasonable care over Defendants Dong Lee, Byrne, Whalen, and Lozada.

614.   At all times relevant herein, Bong Lee retained control of the manner and means of the doing of the work that included the acts and omissions committed by Defendants Dong Lee, Byrne, Whalen, and Lozada, as alleged herein.

615.   At all times relevant herein, Bong Lee failed to inspect or exercise proper oversight over the work performed by Defendants Dong Lee, Byrne, Whalen, and Lozada.

616.   The acts and omissions of Defendants Dong Lee, Byrne, Whalen, and Lozada, as alleged herein, were especially egregious.

617.   Bong Lee authorized, participated in, and ratified the acts and omissions of Defendants Dong Lee, Byrne, Whalen, and Lozada, as alleged herein, or demonstrated willful indifference.

618.   Therefore, Bong Lee is vicariously liable for the actions and omissions of Defendants Dong Lee, Byrne, Whalen, and Lozada, by operation of law under the doctrine of respondeat superior, and is responsible for all of the damages attributed to Defendants Dong Lee, Byrne, Whalen, and Lozada, as alleged herein.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below, along with an Order declaring that Bong Lee is vicariously liable for all of the torts committed by Dong Lee, Byrne, Whalen, and Lozada.

## CAUSE OF ACTION #22

## DIRECT LIABILITY FOR ACTS OF EMPLOYEES OR AGENTS

**(Against World Mission South Korea for Acts and Omissions Committed by Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

619.   Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

620.   To the extent that Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada were acting outside the scope of their agency or employment with World Mission South Korea while committing the acts and omissions alleged herein, World Mission South Korea failed to exercise reasonable care to control Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, so as to prevent them from intentionally harming Plaintiff while they were on the premises of World Mission, even though World Mission South Korea knew or should have known of its ability to control Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, and of the necessity and opportunity for exercising such control.

621.   The acts and omissions of Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were especially egregious.

622.   The upper management of World Mission South Korea authorized, participated in, and ratified the acts and omissions of Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, or demonstrated willful indifference.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below, along with an Order declaring that World Mission South Korea is directly liable for all of the torts committed by Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

### CAUSE OF ACTION #23

### DIRECT LIABILITY FOR ACTS OF EMPLOYEES OR AGENTS

**(Against World Mission New Jersey for Acts and Omissions Committed by Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

623.   Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

624.   To the extent that Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada were acting outside the scope of their agency or employment with World Mission New Jersey while committing the acts and omissions alleged herein, World Mission New Jersey failed to exercise reasonable care to control Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, so as to prevent them from intentionally harming Plaintiff while they were on the premises of World Mission, even though World Mission New Jersey knew or should have known of its ability to control Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, and of the necessity and opportunity for exercising such control.

625.   The acts and omissions of Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were especially egregious.

626.     The upper management of World Mission New Jersey authorized, participated in, and ratified the acts and omissions of Defendants Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, or demonstrated willful indifference.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below, along with an Order declaring that World Mission New Jersey is directly liable for all of the torts committed by Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

## CAUSE OF ACTION #24

## DIRECT LIABILITY FOR ACTS OF EMPLOYEES OR AGENTS

**(Against Chang for Acts and Omissions Committed by
Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

627.     Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

628.     To the extent that Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada were acting outside the scope of their agency or employment with Chang while committing the acts and omissions alleged herein, Chang failed to exercise reasonable care to control Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, so as to prevent them from intentionally harming Plaintiff while they were on the premises of World Mission, even though Chang knew or should have known of her ability to control Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, and of the necessity and opportunity for exercising such control.

629.     The acts and omissions of Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were especially egregious.

630.    Chang authorized, participated in, and ratified the acts and omissions of Defendants Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, or demonstrated willful indifference.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below, along with an Order declaring that Chang is directly liable for all of the torts committed by Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

### CAUSE OF ACTION #25

### DIRECT LIABILITY FOR ACTS OF EMPLOYEES OR AGENTS

**(Against Kim for Acts and Omissions Committed by
Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada)**

631.    Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

632.    To the extent that Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada were acting outside the scope of their agency or employment with Kim while committing the acts and omissions alleged herein, Kim failed to exercise reasonable care to control Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, so as to prevent them from intentionally harming Plaintiff while they were on the premises of World Mission, even though Kim knew or should have known of his ability to control Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, and of the necessity and opportunity for exercising such control.

633.    The acts and omissions of Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were especially egregious.

634.   Kim authorized, participated in, and ratified the acts and omissions of Defendants Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, or demonstrated willful indifference.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below, along with an Order declaring that Kim is directly liable for all of the torts committed by Chang, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

## CAUSE OF ACTION #26

## DIRECT LIABILITY FOR ACTS OF EMPLOYEES OR AGENTS

### (Against Dong Lee for Acts and Omissions Committed by
### Bong Lee, Byrne, Whalen, and Lozada)

635.   Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

636.   To the extent that Defendants Bong Lee, Byrne, Whalen, and Lozada were acting outside the scope of their agency or employment with Dong Lee while committing the acts and omissions alleged herein, Dong Lee failed to exercise reasonable care to control Defendants Bong Lee, Byrne, Whalen, and Lozada, so as to prevent them from intentionally harming Plaintiff while they were on the premises of World Mission, even though Dong Lee knew or should have known of his ability to control Defendants Bong Lee, Byrne, Whalen, and Lozada, and of the necessity and opportunity for exercising such control.

637.   The acts and omissions of Defendants Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, were especially egregious.

638.   Dong Lee authorized, participated in, and ratified the acts and omissions of Defendants Bong Lee, Byrne, Whalen, and Lozada, as alleged herein, or demonstrated willful indifference.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below, along with an Order declaring that Dong Lee is directly liable for all of the torts committed by Bong Lee, Byrne, Whalen, and Lozada.

## CAUSE OF ACTION #27

## DIRECT LIABILITY FOR ACTS OF EMPLOYEES OR AGENTS

### (Against Bong Lee for Acts and Omissions Committed by Dong Lee, Byrne, Whalen, and Lozada)

639.   Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

640.   To the extent that Defendants Dong Lee, Byrne, Whalen, and Lozada were acting outside the scope of their agency or employment with Bong Lee while committing the acts and omissions alleged herein, Bong Lee failed to exercise reasonable care to control Defendants Dong Lee, Byrne, Whalen, and Lozada, so as to prevent them from intentionally harming Plaintiff while they were on the premises of World Mission, even though Bong Lee knew or should have known of her ability to control Defendants Dong Lee, Byrne, Whalen, and Lozada, and of the necessity and opportunity for exercising such control.

641.   The acts and omissions of Defendants Dong Lee, Byrne, Whalen, and Lozada, as alleged herein, were especially egregious.

642.    Bong Lee authorized, participated in, and ratified the acts and omissions of Defendants Dong Lee, Byrne, Whalen, and Lozada, as alleged herein, or demonstrated willful indifference.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below, along with an Order declaring that Bong Lee is directly liable for all of the torts committed by Dong Lee, Byrne, Whalen, and Lozada.

### CAUSE OF ACTION #28

### JOINT ENTERPRISE LIABILITY

**(Against World Mission South Korea and World Mission New Jersey for
Acts and Omissions Committed by Each Other and by Each Other's Employees or Agents)**

643.    Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if the same were set forth herein verbatim.

644.    World Mission South Korea and World Mission New Jersey are both members of the World Mission Enterprise.

645.    As members of the World Mission Enterprise, World Mission South Korea and World Mission New Jersey have purposefully agreed to share profits and losses.

646.    As a member of the World Mission Enterprise, World Mission South Korea has purposefully agreed to act as the "Head Office" and the "center" for World Mission New Jersey, and to provide World Mission New Jersey with administrative and management support, and other resources as needed.

647.    As a member of the World Mission Enterprise, World Mission New Jersey has purposefully agreed to send all or most of its profits to World Mission South Korea.

648.   As members of the World Mission Enterprise, World Mission South Korea and World Mission New Jersey jointly seek profits, without any actual partnership or corporate designation joining the corporations.

649.   As members of the World Mission Enterprise, World Mission South Korea and World Mission New Jersey are each the agent and servant of the other.

650.   All of the acts and omissions alleged herein were committed within the scope of the World Mission Enterprise.

651.   Therefore, World Mission South Korea and World Mission New Jersey are each vicariously liable for the acts and omissions committed by each other, and by each other's employees or agents, as alleged herein.

WHEREFORE, Plaintiff demands the relief described in the Prayer for Relief below, along with an Order declaring that World Mission South Korea and World Mission New Jersey are each vicariously liable for all of the torts committed by each other and by Chang, Kim, Dong Lee, Bong Lee, Byrne, Whalen, and Lozada.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment be entered for the following relief:

1)   compensatory damages in an amount to be determined at trial;

2)   equitable restitution of all money donated to World Mission New Jersey by Plaintiff;

3)   equitable restitution of all money spent for the benefit of World Mission New Jersey by Plaintiff;

4)   compensation for all of the time and energy spent by Plaintiff working for and recruiting for World Mission New Jersey;

5)   commission-based compensation for all of the money donated to World Mission New Jersey or World Mission South Korea by other members whose membership or donations resulted from the efforts of Plaintiff;

6)   treble damages pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-19;

7)   punitive damages in an amount to be determined at trial;

8)   filing fees;

9)   reasonable costs of suit;

10)  reasonable attorney's fees;

11)  reasonable pre-and post-judgment interest on all monetary awards;

12)  equitable relief, including:

a.   an order requiring World Mission New Jersey to immediately provide to all of its current members a full accounting of how all donations are used, and to the extent that any donations are transferred to World Mission South Korea or any other World Mission entity, a full accounting of how those other entities use the donations;

b.   an order requiring that, for a period of not less than ten years, World Mission New Jersey provide to all prospective members at the time of first contact, or as soon thereafter as is practicable, a full accounting of how all donations are used, and to the extent that any donations are transferred to World Mission South Korea or any other World Mission entity, a full accounting of how those other entities use the donations;

c.      an order prohibiting World Mission New Jersey or any related entity, for a period of not less than ten years, from interfering with any attempts by World Mission New Jersey members and their family members to communicate with each other; and

d.      an order retaining jurisdiction over this matter for a period of not less than ten years so that the equitable relief requested may be enforced; and

13)     such other and further relief which this Court may determine to be just and equitable.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.


Dated:  May 9, 2014                    By:     s/ Paul S. Grosswald_____
                                               **PAUL S. GROSSWALD**
                                               Attorney for Plaintiff,
                                               **Michelle Ramirez**