**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHELLE RAMIREZ, a New Jersey resident; | DOCKET NO. 2:14-cv-01708 (ES)(MAH) |
| Plaintiff, | |
| - against – | Civil Action |
| WORLD MISSION SOCIETY, CHURCH OF GOD, A NJ NONPROFIT CORPORATION, a New Jersey nonprofit corporation; WORLD MISSION SOCIETY CHURCH OF GOD, a.k.a. General Assembly, a South Korean corporation; GIL JAH CHANG, a.k.a. Gil Jah Zhang, a South Korean resident; JOO CHEOL KIM, a South Korean resident; DONG IL LEE, a.k.a. Daniel Lee, a New Jersey resident; BONG HEE LEE a.k.a. Bong Hee Kim, a.k.a. Betty Lee, a.k.a. Betty Kim, a New Jersey resident; TARA BYRNE, a.k.a. Tara Whalen, a New Jersey resident, RICHARD WHALEN, a New Jersey resident, VICTOR LOZADA, a New Jersey resident, BIG SHINE WORLDWIDE, INC., a New Jersey corporation; ALBRIGHT ELECTRIC LLC, a New Jersey limited liability company; and LINCOLN GRILL & CAFÉ LIMITED LIABILITY COMPANY, a New Jersey limited liability company, | **SECOND AMENDED COMPLAINT** **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Michelle Ramirez (the "Plaintiff"), by and through her attorney, Paul S. Grosswald, by way of Second Amended Complaint against the above-named Defendants, hereby alleges the following:

<u>**LOCAL RULE 10.1 STATEMENT**</u>

1.    The mailing addresses of the parties in this case are as follows:

<u>**Plaintiff**</u>

MICHELLE RAMIREZ
195 Sunnyside Avenue
Brooklyn, NY 11207

<u>**Defendants**</u>

WORLD MISSION SOCIETY, CHURCH OF GOD, A NJ NONPROFIT
CORPORATION
305 Godwin Avenue
Ridgewood, NJ 07450

WORLD MISSION SOCIETY CHURCH OF GOD, a.k.a. General Assembly
5-1 Sunae 1(il)-dong
Bundang-gu, Seongnamsi
Gyeonggi-do, South Korea
c/o
305 Godwin Avenue
Ridgewood, NJ  07450

GIL JAH CHANG, a.k.a. Gil Jah Zhang
5-1 Sunae 1(il)-dong
Bundang-gu, Seongnamsi
Gyeonggi-do, South Korea
c/o
305 Godwin Avenue
Ridgewood, NJ  07450

JOO CHEOL KIM
5-1 Sunae 1(il)-dong
Bundang-gu, Seongnamsi
Gyeonggi-do, South Korea
c/o
305 Godwin Avenue
Ridgewood, NJ  07450

DONG IL LEE, a.k.a. Daniel Lee
160 Palisade Avenue
Bogota, NJ  07603

BONG HEE LEE a.k.a. Bong Hee Kim, a.k.a. Betty Lee, a.k.a. Betty Kim
160 Palisade Avenue
Bogota, NJ  07603

TARA BYRNE, a.k.a. Tara Whalen
56 Rea Avenue
Hawthorne, NJ  07506

RICHARD WHALEN
56 Rea Avenue
Hawthorne, NJ  07506

VICTOR LOZADA
45 Outlook Ave
Hawthorne, NJ  07506

BIG SHINE WORLDWIDE, INC.
11 Harristown Road
Glen Rock, NJ 07452

ALBRIGHT ELECTRIC LLC
11 Harristown Road
Glen Rock, NJ 07452

LINCOLN GRILL & CAFÉ LIMITED LIABILITY COMPANY
115 Lincoln Avenue
Fair Lawn, NJ 07410

## INTRODUCTION

2.   The Defendants in this case are members of or corporations related to the World Mission

Society Church of God, which purports to be a non-profit charitable church, but is

actually a profit-making global enterprise (the "World Mission Enterprise" or "World

Mission").

3.   World Mission recruited Plaintiff to become a member of the global enterprise without

her knowledge or informed consent, in order to subject her to World Mission's program

of isolation and indoctrination.

4.     World Mission fraudulently extracted donations of money, valuable goods, time, and energy from Plaintiff under the pretense that such donations were being made for nonprofit, charitable, or tax-exempt purposes, when in fact such donations were used for profit-driven, non-charitable, non-tax exempt purposes.

5.     Plaintiff is seeking damages for fraud and intentional infliction of emotional distress gn .

## PARTIES

### Plaintiff

6.     Plaintiff is Michelle Ramirez, an individual residing in New York.

### Corporate Defendants

7.     Defendant World Mission Society Church of God, a NJ Nonprofit Corporation ("World Mission New Jersey") is a nonprofit corporation with its registered office and principal place of business in Bergen County, New Jersey.

8.     Defendant World Mission Society Church of God, a.k.a. General Assembly, a South Korean corporation ("World Mission South Korea") is a corporation with its principal place of business in South Korea.

9.     Defendant Big Shine Worldwide, Inc. ("Big Shine") is a corporation which sells electronic goods and services, with its principal place of business in Bergen County, New Jersey.

10.    Defendant Albright Electric, LLC ("Albright") is a limited liability company which provides contractors to perform electrical work, with its principal place of business in Bergen County, New Jersey.

11.     Lincoln Grill & Café Limited Liability Company ("Lincoln Grill") is a limited liability company which operates a restaurant, with its principal place of business in Bergen County, New Jersey.

**Natural Person Defendants**

12.     Defendant Gil Jah Chang, a.k.a. "Gil Jah Zhang" ("Chang") is one of two leaders of World Mission South Korea and all of World Mission.  She is a resident of South Korea.

13.     Defendant Joo Cheol Kim ("Kim") is one of two leaders of World Mission South Korea and all of World Mission.  He is the General Pastor for World Mission South Korea, the President of World Mission New Jersey, a trustee for World Mission New Jersey, and a resident of South Korea.

14.     Defendant Dong Il Lee, a.k.a. "Daniel Lee" ("Pastor Lee") is the Pastor of World Mission New Jersey, the Vice-President of World Mission New Jersey, a trustee of World Mission New Jersey, the husband of Defendant Bong Lee, and a resident of Bergen County, New Jersey.  Pastor Lee is the owner of Big Shine.

15.     Defendant Bong Hee Lee, a.k.a. "Bong Hee Kim" ("Bong Lee") is the secretary for World Mission New Jersey, the accountant for World Mission New Jersey, a trustee of World Mission New Jersey, the wife of Defendant Pastor Lee, and a resident of Bergen County, New Jersey.  Bong Lee is the owner of Lincoln Grill.

16.     Defendant Tara Byrne, a.k.a. "Tara Whalen" ("Byrne") is a Missionary for World Mission New Jersey, the wife of Defendant Richard Whalen, and a resident of Passaic County, New Jersey.  Byrne is an owner, either formally or informally, of Albright.

17.     Defendant Richard Whalen ("Whalen") is a Missionary for World Mission New Jersey, the husband of Byrne, and a resident of Passaic County, New Jersey.  Whalen is an owner of Albright.

18.     Defendant Victor Lozada ("Lozada") is a Missionary for World Mission New Jersey, and a resident of Passaic County, New Jersey.

<strong><u>JURISDICTION AND VENUE</u></strong>

**Subject Matter Jurisdiction**

19.     Plaintiff is a citizen of New York.

20.     None of the Defendants are citizens of New York.

21.     There is complete diversity of citizenship between Plaintiff and Defendants.

22.     The amount in controversy exceeds $75,000.

23.     Therefore, this Court has jurisdiction over all of Plaintiff's claims pursuant to 28 U.S.C. § 1332.

**Personal jurisdiction / Corporate Defendants**

24.     This Court has personal jurisdiction over World Mission New Jersey because World Mission New Jersey has its principal place of business in New Jersey.

25.     This Court has personal jurisdiction over World Mission South Korea because World Mission South Korea directed tortious conduct into New Jersey, caused Plaintiff's injuries within New Jersey, is the alter ego of World Mission New Jersey, and otherwise directed and/or maintained contact with the State of New Jersey.

26.     This Court has personal jurisdiction over Big Shine because Big Shine has its principal place of business in New Jersey.

27.   This Court has personal jurisdiction over Albright because Albright has its principal place of business in New Jersey.

28.   This Court has personal jurisdiction over Lincoln Grill because Lincoln Grill has its principal place of business in New Jersey.

**Personal jurisdiction / Natural Person Defendants**

29.   This Court has personal jurisdiction over Chang because she directed tortious conduct into New Jersey, caused Plaintiff's injuries within New Jersey, is the alter ego of World Mission South Korea and World Mission New Jersey, and otherwise directed and/or maintained contact with the State of New Jersey.

30.   This Court has personal jurisdiction over Kim because he directed tortious conduct into New Jersey, caused Plaintiff's injuries within New Jersey, is the President of World Mission New Jersey, is a trustee of World Mission New Jersey, is the alter ego of World Mission South Korea and World Mission New Jersey, and otherwise directed and/or maintained contact with the State of New Jersey.

31.   This Court has personal jurisdiction over Pastor Lee because he is a resident of New Jersey.

32.   This Court has personal jurisdiction over Bong Lee because she is a resident of New Jersey.

33.   This Court has personal jurisdiction over Byrne because she is a resident of New Jersey.

34.   This Court has personal jurisdiction over Whalen because he is a resident of New Jersey.

35.   This Court has personal jurisdiction over Lozada because he is a resident of New Jersey.

**Venue**

36.   A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in

the District of New Jersey.

37. Moreover, the following Defendants reside in the District of New Jersey: World Mission New Jersey, Big Shine, Albright, Lincoln Grill, Pastor Lee, Bong Lee, Byrne, Whalen, and Lozada.

38. The remaining Defendants - World Mission South Korea, Chang, and Kim - reside outside the United States and may be sued in any judicial district within the United States, pursuant to 28 U.S.C. § 1391(c)(3).

39. Therefore, venue is proper in this Court under 28 U.S.C. § 1391.

## STATUS OF THE WORLD MISSION ENTERPRISE AS A "RELIGION"

40. World Mission South Korea claims to be a "church."

41. World Mission New Jersey claims to be a "church."

42. Defendants try to avoid being held accountable for their actions by portraying their secular crimes and torts as "religious" so that they can take advantage of laws that give special protections to religions. World Mission is not actually a religion, but a for-profit enterprise posing as a religion.

43. World Mission New Jersey has obtained religious tax exemption from the IRS.

44. World Mission South Korea has not obtained tax exemption from the IRS.

45. World Mission New Jersey, as a tax-exempt organization, is not permitted to share its revenues with non-exempt organizations like World Mission South Korea.

46. Nevertheless, World Mission New Jersey gives most of its revenues to World Mission South Korea.

47. World Mission New Jersey obtained its tax exemption by concealing from the IRS the fact that it shares its revenues with a non-exempt organization.

48.     Therefore, World Mission New Jersey is not entitled to maintain its religious tax exemption, and is not entitled to use its current tax-exempt status as evidence of its religious nature.

49.     Moreover, the Defendants are not entitled to raise any defense that is based on "religious freedom," the "free exercise of religion," or the status of World Mission South Korea or World Mission New Jersey as a "religion" or "church."

50.     Even if World Mission South Korea or World Mission New Jersey are deemed to be a "religion" or a "church," the conduct alleged herein does not constitute religious expression, in that the goal of the Defendants' conduct was not to advance their religion, but rather to advance the business interests of the World Mission Enterprise and to defraud and injure the Plaintiff.

51.     Even if the conduct alleged herein constitutes religious expression, the Defendants may be held liable because their fraudulent conduct causes serious economic harm to those who are induced by false representations to make donations to World Mission.

52.     Moreover, the Defendants' conduct tends to inflict serious, life-threatening emotional harm on their victims.  Victims of the Defendants often become suicidal, depressed, anxious, psychotic, or alienated from their families as a result of the Defendants' conduct.

53.     Therefore, the State of New Jersey has a compelling interest in stopping such conduct by allowing the Plaintiff to hold the Defendants liable.

54.     Allowing the Plaintiff to hold the Defendants liable is the least restrictive means for the State of New Jersey to satisfy its compelling interest.

## **ALLEGATIONS APPLICABLE TO ALL COUNTS**

55.     Plaintiff was recruited into World Mission New Jersey in the fall of 2006.

56.   Plaintiff left World Mission New Jersey in the spring of 2012.

57.   Plaintiff did not discover the torts committed against her until she recovered from the trauma that World Mission inflicted, which did not occur until the end of 2012 and beginning of 2013.

58.   With respect to each cause of action, Plaintiff's damages resulted from actions by Chang, Kim, Pastor Lee, Bong Lee, Byrne, Whalen, and Lozada which evidence a reckless disregard for the duties imposed by their respective positions with World Mission South Korea or World Mission New Jersey.

59.   World Mission South Korea is not a nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes; and even if it is, it was not engaged in the performance of the charitable objectives it was organized to advance at any time relevant to the allegations herein.

60.   World Mission New Jersey is not a nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes; and even if it is, it was not engaged in the performance of the charitable objectives it was organized to advance at any time relevant to the allegations herein.

61.   Except where otherwise stated in this Complaint, all of Plaintiff's damages, as alleged herein, resulted from actions and omissions by Chang, Kim, Pastor Lee, Bong Lee, Byrne, Whalen, and Lozada which evidence a reckless disregard for the duties imposed by their respective positions.

62.   Except where otherwise stated in this Complaint, all of the acts and omissions of the Defendants, as alleged herein, were willful or wanton.

63.     Except where otherwise stated in this Complaint, all of the acts and omissions of the Defendants, as alleged herein, were actuated by actual malice.

64.     Except where otherwise stated in this Complaint, all of the acts and omissions of the Defendants, as alleged herein, were accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

**ALLEGATIONS RELATING TO COERCIVE PERSUASION**

65.     In or around October 2006, Plaintiff accepted an invitation from World Mission New Jersey member Yvanne Rivera ("Yvanne Rivera" or "Rivera") to come to World Mission New Jersey's complex maintained by Defendants Chang, Kim, and World Mission South Korea at 305 Godwin Avenue, Ridgewood, New Jersey, for purposes of isolating and indoctrinating recruits.

66.     At the time Plaintiff accepted the invitation, she was unaware of the connection between World Mission New Jersey on the one hand, and Chang, Kim, and World Mission South Korea on the other hand.

67.     Said connection was not revealed to Plaintiff until Defendants' program of isolation and indoctrination had been effectively instituted.

68.     As a result of the aforementioned deceptive acts of the Defendants, Plaintiff was induced to and did join World Mission New Jersey.

69.     Defendants subsequently placed Plaintiff in great fear with constant threats of harm to Plaintiff and her family members if she left, deprived her of sleep and forced or coerced her to work or engage in other activities for extremely long hours for no compensation, and alienated her from her family and friends, all for the purpose of insidiously and progressively brainwashing, coercing, and controlling Plaintiff and

destroying Plaintiff's cognitive and independent will.

70.   As a direct and proximate result of the coercive persuasion alleged herein, Plaintiff was damaged, in that she experienced severe emotional pain and mental anguish, including depression, nervousness, grief, anxiety, worry, shock, humiliation, indignity, fright, mortification, embarrassment, apprehension, terror, and suicidal ideation, leading to a suicide attempt.

## ALLEGATIONS RELATING TO COERCED ABORTION

71.   World Mission New Jersey instructed its members that they were not supposed to have children.

72.   World Mission New Jersey disciplined members who violated this rule and had children anyway.

73.   Defendant Byrne and other World Mission New Jersey members repeatedly instructed Plaintiff that Plaintiff was not to have children as a member of World Mission.

74.   When World Mission members became pregnant, Defendant Byrne and other World Mission members would instruct the pregnant member to get an abortion.

75.   Plaintiff got pregnant in or around 2010.

76.   As a direct and proximate result of the Defendants' conduct, Plaintiff became fearful that she would be unable to remain a member of World Mission in good standing if it was discovered that she was pregnant.

77.   As a direct and proximate result of the Defendants' conduct, Plaintiff was compelled to obtain an abortion, which in turn caused Plaintiff to experience severe emotional pain and mental anguish, including depression, nervousness, grief, anxiety, worry, shock,

humiliation, indignity, fright, mortification, embarrassment, apprehension, terror, and suicidal ideation, leading to a suicide attempt.

**CLAIMS FOR RELIEF**[1]

**CAUSE OF ACTION #1**

**INTENTIONAL FRAUD BASED ON FALSE REPRESENTATIONS**

**(Arising out of False Representations That Donations Would Be Used for Charitable Purposes When In Fact They Were Misappropriated for Use by Private Individuals and Private Entities)**

**(Against World Mission South Korea, World Mission New Jersey, Chang, Kim, Pastor Lee, Bong Lee, and Lincoln Grill)**

78.    Plaintiff repeats and incorporates by reference each prior allegation.

79.    In or around January 2007, after being a member of World Mission New Jersey for about three months, Plaintiff attended the "Tithes and Offerings Study" at World Mission New Jersey.

80.    The study was held in a study room at World Mission New Jersey's location at 305 Godwin Avenue in Ridgewood.

81.    At that study, Plaintiff learned for the first time that she was expected to start donating ten percent of her income to World Mission New Jersey.

82.    A World Mission member spoke to the group and made a number of false representations about how the money is used in order to induce the newer members, including Plaintiff, into agreeing to donate ten percent of their income.

83.    The World Mission member stated that no one gets paid from the donations that are made by members of World Mission New Jersey.  She stated that everyone who works for

---

[1] To the extent that the causes of action in this Complaint are contradictory, they are pled in the alternative.

World Mission is a volunteer.  She stated that each volunteer has a regular job outside of World Mission.  She stated that each volunteer is expected to donate ten percent of their income to World Mission New Jersey.

84.    In reliance on those representations, Plaintiff began to donate money to World Mission New Jersey.

85.    Throughout the duration of Plaintiff's time in World Mission, Pastor Lee repeated those representations.

86.    During sermons and other World Mission gatherings, Pastor Lee would frequently remind the World Mission members, including Plaintiff, that no one gets paid from the donations that are made by members of World Mission New Jersey.  He frequently stated that everyone who works for World Mission is a volunteer, and that each volunteer has a regular job outside of World Mission.  He stated that each volunteer is expected to donate ten percent of their income to World Mission New Jersey.  Pastor Lee also stated that he, too, has a job outside of World Mission and that he also gives ten percent of his income to World Mission New Jersey.  Pastor Lee stated that all of the money raised is used to support the church, and not to pay compensation to anyone.

87.    Again, in reliance on those representations, Plaintiff continued to donate money to World Mission New Jersey.

88.    Those representations were materially false.

89.    The money raised by World Mission New Jersey is transferred to World Mission South Korea.  Unlike World Mission New Jersey, the IRS does not recognize World Mission South Korea as a tax-exempt entity.  When World Mission South Korea raises American dollars in the United States, through World Mission New Jersey, World Mission South

Korea is not required by the IRS to use that money for charitable, religious, or tax-exempt purposes.

90.   World Mission South Korea uses the money to compensate Chang and Kim.  In fact, Chang and Kim are both compensated by World Mission South Korea to the point where each of them lives off of the donations that World Mission South Korea receives, including those it receives from World Mission New Jersey, which includes the money donated by Plaintiff.  On information and belief, neither Chang nor Kim have any source of income outside of the World Mission Enterprise.

91.   Plaintiff would not have donated to World Mission New Jersey if she understood that the money was being transferred to a non-tax exempt entity that would use the money for Chang's and Kim's private benefit.

92.   Furthermore, at least some of World Mission New Jersey's missionaries are paid compensation for full-time work that they do for World Mission New Jersey.

93.   Plaintiff would not have donated to World Mission New Jersey if she understood that some of the "volunteers" were actually not volunteers and were getting paid.

94.   Moreover, Pastor Lee and Bong Lee have received compensation from at least one of World Mission New Jersey's donated assets, such as Lincoln Grill.  The Lincoln Grill restaurant was owned by a World Mission member who donated it to World Mission New Jersey a few years ago.  Bong Lee subsequently stole the restaurant from the church, by setting up an LLC in her own name and transferring title in the restaurant from World Mission New Jersey to the LLC.  Thereafter, cash earned by Lincoln Grill was not deposited into a bank account.  Rather, it was transported to Pastor Lee in a shoebox.  Thus, even though Lincoln Grill was an asset donated to the tax-exempt "church,"

Lincoln Grill's profits inured to the private benefit of Pastor Lee and Bong Lee.  In effect, Pastor Lee and Bong Lee stole income from World Mission New Jersey.  This necessarily undermined the value of Plaintiff's donations, which could not be stretched as far since they had to be used to offset the stolen income.

95.   Plaintiff would not have donated to World Mission New Jersey if she understood that charitable donations to World Mission New Jersey could be transferred into the name of the Pastor's wife, that income generated from charitable donations would inure to the benefit of the Pastor and his wife, and that Plaintiff's own donations would be devalued because of the need to offset income that was stolen by the Pastor and his wife.

96.   The following Defendants played the following roles in this fraud:

1)   Pastor Lee made the false representations described herein.

2)   Bong Lee, as the accountant of World Mission New Jersey, was responsible for transferring charitable donations, including those received from Plaintiff, to World Mission South Korea, where they inured to the private benefit of Chang and Kim. Bong Lee was also responsible for paying compensation to some of World Mission New Jersey's "volunteers."

3)   World Mission New Jersey made the fraudulent representations described herein, by speaking through its agent, Pastor Lee, who at all times was acting within the scope of his agency as World Mission New Jersey's pastor.  Moreover, World Mission New Jersey fraudulently allowed charitable donations to inure to the private benefit of Chang and Kim and other World Mission New Jersey "volunteers" who were paid compensation, by acting through its agent, Bong Lee,

who at all times was acting within the scope of her agency as World Mission New Jersey's accountant.

4)   World Mission South Korea, Chang and Kim, were all recipients of and private beneficiaries of Plaintiff's charitable donations.

5)   Lincoln Grill allowed itself to be stolen from World Mission New Jersey, thereby reducing the size of World Mission New Jersey's treasury and de-valuing Plaintiff's donations.  Bong Lee is the one who stole the restaurant by transferring it into her own name, and Pastor Lee is the one who took in the cash generated by the restaurant, which reduces the size of World Mission New Jersey's treasury and de-values Plaintiff's donations.

97.   The false representations alleged herein are material, in that if the false representations had not been made, Plaintiff would not have joined World Mission New Jersey, continued as a member of World Mission New Jersey, or donated money, time and energy to World Mission New Jersey, or for the benefit of World Mission New Jersey.

98.   At all times when material false representations were made, Pastor Lee knew such representations were false or dishonest, deceptive and misleading.

99.   Pastor Lee made material false representations with the intent to defraud and deceive Plaintiff into donating money, time and energy to World Mission New Jersey, or for the benefit of World Mission New Jersey, that she would not have otherwise donated, and which Pastor Lee knew she would not have otherwise donated.

100.   Pastor Lee made material false representations with the intent that Plaintiff would rely on such false representations when deciding to join World Mission New Jersey, remain a

member of World Mission New Jersey, and donate money, time and energy to World Mission New Jersey, and for the benefit of World Mission New Jersey.

101.   Plaintiff justifiably relied on the Defendants' false representations when deciding to join World Mission New Jersey, remain a member of World Mission New Jersey, and donate money, time and energy to World Mission New Jersey, and for the benefit of World Mission New Jersey.

102.   As a direct and proximate result of Plaintiff's reliance on the false representations alleged herein, Plaintiff was damaged, in that she donated money, time and energy to World Mission New Jersey, and for the benefit of World Mission New Jersey, that she would not have otherwise donated.

103.   As a direct and proximate result of Plaintiff's reliance on the false representations alleged herein, Plaintiff was damaged, in that she experienced severe emotional pain and mental anguish, including depression, nervousness, grief, anxiety, worry, shock, humiliation, indignity, fright, mortification, embarrassment, apprehension, terror, and suicidal ideation, leading to a suicide attempt.

104.   As a direct and proximate result of Plaintiff's reliance on the false representations alleged herein, Plaintiff was damaged, in that she has incurred, and will incur, medical and incidental expenses for the care and treatment of these injuries.

## CAUSE OF ACTION #2

### INTENTIONAL FRAUD BASED ON NONDISCLOSURES

**(Arising out of Failure to Disclose Identity of
World Mission's Leadership and Beneficiaries of Charitable Donations)**

**(Against World Mission South Korea, World Mission New Jersey,
Chang, Kim, Pastor Lee, and Byrne)**

105.   Plaintiff repeats and incorporates by reference each prior allegation.

106.   At the time Plaintiff was recruited into World Mission New Jersey, it kept its true identity hidden from Plaintiff.

107.   Plaintiff was approached by recruiters for World Mission New Jersey in the summer of 2006, inside Jersey Gardens Mall in Elizabeth, New Jersey.

108.   One of those recruiters was Pastor Lee.

109.   The other recruiter was Yvanne Rivera.

110.   Pastor Lee and Rivera tried to persuade Plaintiff to attend their "church."

111.   Pastor Lee and Rivera did not disclose to Plaintiff, and they actively concealed from Plaintiff, the identity of the church's leader.

112.   Plaintiff initially declined to attend World Mission New Jersey.

113.   Rivera kept in touch with Plaintiff over the next few months.

114.   Plaintiff was having troubles in her life, and Rivera was very comforting.

115.   Rivera repeatedly tried to persuade Plaintiff to attend World Mission New Jersey.

116.   Plaintiff repeatedly refused.

117.   Plaintiff subsequently experienced a personal trauma when she was sexually assaulted by someone unrelated to World Mission.

118.   Plaintiff became emotionally vulnerable as a result of the trauma she experienced.

119.   Rivera continued to contact Plaintiff while Plaintiff was emotionally vulnerable.

120.   For three months, Rivera continued pressuring Plaintiff to attend World Mission New Jersey.

121.   At no time during those three months did Rivera, Pastor Lee, or anyone else disclose to Plaintiff the identity of the church's leader.

122.   As it turned out, the "church" was World Mission New Jersey, and the leader was Defendant Chang.

123.   Chang is regarded as a Messianic figure within World Mission, and she refers to herself as "Mother God."

124.   Although the name "World Mission Society Church of God" was disclosed to Plaintiff, that name was not widely known at the time as being associated with Chang, or with the belief that Chang is the "Mother God."  Thus, the disclosure of World Mission's name, without more, was insufficient to inform Plaintiff of the identity of the group she was joining.

125.   Had Plaintiff known Chang's identity at the time she was recruited she would not have joined World Mission New Jersey.

126.   In October 2006, in reliance on Pastor Lee's and Rivera's concealment of Chang's identity, Plaintiff agreed to attend World Mission New Jersey.

127.   On her first day attending World Mission New Jersey, Plaintiff was not permitted to drive there herself.

128.   Rather, Rivera picked up Plaintiff and drove her there.

129.   This caused Plaintiff to end up at the church without access to her own vehicle.

130.   Inside World Mission New Jersey, Plaintiff was subjected to a tightly controlled, highly structured environment.

131.   Plaintiff was signed up for a series of "study lessons."

132.   The purpose of the study lessons was to isolate and indoctrinate new recruits.  At the time Plaintiff signed up for the study lessons, she was unaware of World Mission New Jersey's connection to Chang, Kim, and World Mission South Korea.

133.   During the first few study lessons, Plaintiff was kept separated from more experienced members.  This prevented Plaintiff from obtaining information about Chang, among other things, that Pastor Lee did not want Plaintiff to have.  Pastor Lee did not want Plaintiff to have information about Chang because he feared that Plaintiff would not want to return to World Mission New Jersey if she were told that World Mission New Jersey worships a living person, and that the charitable donations given to World Mission New Jersey inure to Chang's benefit, and to Kim's benefit, rather than to a charitable benefit.

134.   Plaintiff donated money to World Mission New Jersey in reliance on the nondisclosure that Chang was World Mission's leader and "Mother God," and in reliance on the nondisclosure that charitable donations to World Mission New Jersey inure to the private benefit of Chang and Kim.

135.   Plaintiff was a member of World Mission New Jersey for about five months before she finally learned that Chang is World Mission New Jersey's leader.

136.   By that time, the Defendants' program of isolation and indoctrination had been effectively instituted.

137.   Pastor Lee actively worked to conceal Chang's identity from Plaintiff for the first five months of her involvement.  He also actively worked to conceal the fact that Chang and Kim were the beneficiaries of Plaintiff's donations.   Pastor Lee engaged in such concealment because of a belief in "Righteous Lies," a doctrine that says it is acceptable to lie to new members in order to give them the opportunity to hear Chang's teachings.

138.   Plaintiff would not have joined World Mission New Jersey or made any donations to World Mission New Jersey if Chang's identity, her status as the "Mother God," or her role as the recipient of World Mission's charitable donations, or Kim's role as the

recipient of World Mission's charitable donations, had been disclosed at the time Plaintiff was first recruited.

139.  Plaintiff would not have remained in World Mission New Jersey long enough for its program of isolation and indoctrination to be effectively instituted if Chang's identity, her status as the "Mother God," or her role as the recipient of World Mission's charitable donations, or Kim's role as the recipient of World Mission's charitable donations, had been disclosed at the time Plaintiff was first recruited.

140.  As a direct and proximate result of Defendants' fraud and deceit Plaintiff was induced to join World Mission New Jersey, to donate money to it, and for its benefit, and to work long hours to further its purpose.

141.  As a direct and proximate result of Defendants' fraud and deceit Plaintiff was subjected to World Mission New Jersey's program of isolation and indoctrination.

142.  At all times, Pastor Lee and Byrne knew that their concealment of Chang's identity was false and dishonest, deceptive and misleading.  This concealment and nondisclosure was made by Pastor Lee and Byrne with the intent to defraud and deceive Plaintiff and with the intent to induce Plaintiff into joining World Mission New Jersey, donating money to and for the benefit of World Mission New Jersey, and luring Plaintiff into World Mission New Jersey's tightly controlled, highly structured environment of coercive persuasion.

143.  As a result of these deceptive acts, Plaintiff was induced to and did join World Mission New Jersey.

144.  As a result of these deceptive acts, Plaintiff was induced to and did make what she thought were charitable donations to World Mission New Jersey, and for the benefit of World Mission New Jersey.

145. As a result of these deceptive acts, Plaintiff was induced to enter into World Mission New Jersey's tightly controlled, highly structured environment of coercive persuasion.

146. Plaintiff is not seeking to litigate the authenticity or the force of World Mission's teachings. The challenge here is not to World Mission's teachings, or to the belief that Chang is the "Mother God," or to the validity of a religious conversion. The challenge is to World Mission's practice of misrepresenting or concealing its identity in order to bring an unsuspecting outsider, Plaintiff, into its highly structured environment of coercive persuasion. That practice is not itself belief -- it is conduct "subject to regulation for the protection of society." See Molko v. Holy Spirit Assn., 46 Cal. 3d 1092, 1117 (1988) (quoting Cantwell v. Connecticut, 310 U.S. 296, 304 (1940)) (holding that plaintiffs' actions for fraud did not implicate religious beliefs, but religiously motivated conduct, and that under governing constitutional analysis a religious organization can be held liable on a cause of action in fraud for deceiving members into joining without knowledge of the group's or its leaders' identity).

147. The following Defendants played the following roles in this fraud:

1) Pastor Lee, as the Pastor of World Mission New Jersey, and as an agent of Chang, Kim, and World Mission South Korea, had a duty to disclose Chang's role as the leader of the World Mission Enterprise when Plaintiff first joined. Instead, Pastor Lee actively enforced the Righteous Lie Doctrine and concealed Chang's identity from Plaintiff. Pastor Lee also concealed from Plaintiff the fact that Chang and Kim were the intended beneficiaries of charitable donations made to World Mission New Jersey. Pastor Lee used his position as pastor to teach World Mission New Jersey members to conceal such information when recruiting new members.

Pastor Lee deployed Byrne to enforce the Righteous Lie Doctrine in female members, ensuring that the women within World Mission New Jersey whom Plaintiff interacted with would be actively concealing Chang's identity from her, and the fact that Chang and Kim were the intended beneficiaries of charitable donations made to World Mission New Jersey.

2)   World Mission New Jersey, by acting through its agent, Pastor Lee, who at all times was acting within the scope of his agency as World Mission New Jersey's pastor, established the Righteous Lie Doctrine, the policy of not disclosing Chang's identity to new members, and the policy of not disclosing to new members the fact that Chang and Kim were the intended beneficiaries of charitable donations made to World Mission New Jersey.

3)   Byrne, as a high-ranking Missionary, had a duty to disclose Chang's identity and the fact that Chang and Kim were the intended beneficiaries of charitable donations made to World Mission New Jersey.  Byrne was responsible for enforcing the Righteous Lie Doctrine with respect to female members and making sure that World Mission's female members interacting with Plaintiff were concealing Chang's identity, and concealing the fact that Chang and Kim were the intended beneficiaries of charitable donations made to World Mission New Jersey.

4)   World Mission South Korea, Chang and Kim, were all the recipients and beneficiaries of Plaintiff's charitable donations, which were donated as a direct and proximate result of the fraud.  Thus, World Mission South Korea, Chang and Kim each had a duty to disclose Chang's identity and the fact that they were all

recipients and beneficiaries of Plaintiff's charitable donations.  Yet, they all failed to make those disclosures.

148.   The nondisclosures alleged herein are material, in that if the nondisclosed information had been disclosed, Plaintiff would not have joined World Mission New Jersey, continued as a member of World Mission New Jersey, or donated money, time and energy to World Mission New Jersey, or for the benefit of World Mission New Jersey, and would not have remained in World Mission New Jersey's tightly controlled, highly structured environment of coercive persuasion long enough for World Mission New Jersey's program of isolation and indoctrination to be effectively instituted.

149.   Pastor Lee and Byrne each failed to make the disclosures because it was their intent to defraud and deceive Plaintiff into donating money, time and energy to World Mission New Jersey, or for the benefit of World Mission New Jersey, that she would not have otherwise donated, and which Pastor Lee and Byrne each knew she would not have otherwise donated, and because it was their intent to lure Plaintiff into World Mission New Jersey's tightly controlled highly structured environment of coercive persuasion, which they each knew Plaintiff would not have otherwise entered into.

150.   Pastor Lee and Byrne each failed to make the disclosures because it was their intent that Plaintiff would rely on such nondisclosures when deciding to join World Mission New Jersey, remain a member of World Mission New Jersey, and donate money, time and energy to World Mission New Jersey, or for the benefit of World Mission New Jersey, and because it was their intent that Plaintiff would rely on such nondisclosures when entering into World Mission New Jersey's tightly controlled, highly structured

environment of coercive persuasion, which they each knew Plaintiff would not have otherwise entered into.

151.   Plaintiff justifiably relied on the nondisclosures when deciding to join World Mission New Jersey, remain a member of World Mission New Jersey, and donate money, time and energy to World Mission New Jersey, and for the benefit of World Mission New Jersey, and when entering into World Mission New Jersey's tightly controlled, highly structured environment of coercive persuasion.

152.   As a direct and proximate result of Plaintiff's reliance on the nondisclosures alleged herein, Plaintiff was damaged, in that she donated money, time and energy to World Mission New Jersey, or for the benefit of World Mission New Jersey, that she would not have otherwise donated.

153.   As a direct and proximate result of Plaintiff's reliance on the nondisclosures alleged herein, Plaintiff was damaged, in that she was subjected to World Mission New Jersey's program of isolation and indoctrination, which cased her to experience severe emotional pain and mental anguish, including depression, nervousness, grief, anxiety, worry, shock, humiliation, indignity, fright, mortification, embarrassment, apprehension, terror, and suicidal ideation, leading to a suicide attempt.

154.   As a direct and proximate result of Plaintiff's reliance on the nondisclosures alleged herein, Plaintiff was damaged, in that she has incurred, and will incur, medical and incidental expenses for the care and treatment of these injuries.

## CAUSE OF ACTION #3

### INTENTIONAL FRAUD BASED ON NONDISCLOSURES

**(Arising out of Failure to Disclose That Charitable Donations
Were Used to Create, Train, and Maintain Slave Labor)**

**(Against All Defendants)**

155.    Plaintiff repeats and incorporates by reference each prior allegation.

156.    Some of the cash donated to World Mission New Jersey, including donations made by
Plaintiff, was used to create, train, and maintain a slave labor force.

157.    Specifically, some of the cash donated to World Mission New Jersey was used to
indoctrinate World Mission members into believing that they should commit to a life of
poverty, that they should be willing to sacrifice their personal possessions to Chang, and
that they should commit to working long hours in service to Chang.

158.    However, instead of the workers being put to work in the church, they were frequently
put to work in profit-making companies, such as Big Shine, Albright, and Lincoln Grill
(the "Profit-Making Companies").

159.    World Mission members who worked for the Profit-Making Companies generally were
paid less than a living wage.

160.    The workers were often paid off the books, so payroll taxes were avoided.  As a result,
the workers did not get social security credit.

161.    The Profit-Making Companies generally provided no health or retirement benefits.

162.    The Profit-Making Companies generally worked the employees long hours, every day,
without days off, without personal days, vacation days, or sick days, except on Saturdays
and other holidays when the employees were required to spend all day at World Mission
New Jersey.

163.   The Profit-Making Companies generally did not pay overtime rates for hours worked beyond 40 hours a week.

164.   The Profit-Making Companies, in conjunction with World Mission New Jersey, used and threatened to use discipline and intimidation on any worker who complained or who threatened to report these abuses to the authorities.

165.   As a result, the Profit-Making Companies were able to earn higher profits then they would otherwise have been entitled to, because they were benefitting from the free or low-cost labor that World Mission New Jersey was providing.

166.   The fact that World Mission New Jersey used its charitable donations to create, train, and maintain a slave labor force was never disclosed to Plaintiff.

167.   Plaintiff donated to World Mission New Jersey in reliance on that nondisclosure, in that if World Mission New Jersey had disclosed that it used its charitable donations to create, train, and maintain a slave labor force, Plaintiff would not have donated to World Mission New Jersey.

168.   Plaintiff is not seeking to litigate the merits of the religious themes contained within World Mission's indoctrination program.  Plaintiff is only seeking to litigate the secular issue of whether Plaintiff's charitable donations were diverted to private inurement in the form of a labor force that was created with funding from Plaintiff's charitable donations and then put to work in the Profit-Making Companies.

169.   The following Defendants played the following roles in this fraud:

1)   Pastor Lee, as World Mission New Jersey's pastor, and as the person who repeatedly made representations about how World Mission New Jersey uses the money that it receives through charitable donations, had a duty to disclose to

Plaintiff that some of the money raised by World Mission New Jersey would be used to create, train, and maintain a slave labor force that would be put to work for profit-making companies, but he failed to make that disclosure. Furthermore, Pastor Lee oversaw all aspects of the indoctrination of World Mission New Jersey members, and specifically and repeatedly implored World Mission New Jersey members to commit to a life of poverty, to sacrifice their personal possessions to Chang, and to work long hours in service to Chang. Pastor Lee deployed Lozada to enforce the indoctrination in male members, and Byrne to enforce the indoctrination in female members.

2) World Mission New Jersey, by speaking through its agent, Pastor Lee, who at all times was acting within the scope of his agency as World Mission New Jersey's pastor, also had a duty to disclose that some of the money raised by World Mission New Jersey would be used to create, train, and maintain a slave labor force that would be put to work for profit-making companies, and it failed to make that disclosure.

3) Lozada, as a high-ranking Deacon, was responsible for the indoctrination of male members. It was his job to implore World Mission New Jersey members to commit to a life of poverty, to sacrifice their personal possessions to Chang, and to work long hours in service to Chang, and to enforce those commitments through strict discipline. Thus, Lozada had a duty to disclose to Plaintiff that some of the money raised by World Mission New Jersey would be used to create, train, and maintain a slave labor force that would be put to work for profit-making companies, but he failed to make that disclosure.

4)   Byrne, as a high-ranking Missionary, was responsible for the indoctrination of female members.  It was her job to implore World Mission New Jersey members to commit to a life of poverty, to sacrifice their personal possessions to Chang, and to work long hours in service to Chang, and to enforce those commitments through strict discipline.  Thus, Byrne had a duty to disclose to Plaintiff that some of the money raised by World Mission New Jersey would be used to create, train, and maintain a slave labor force that would be put to work for profit-making companies, but she failed to make that disclosure.

5)   Big Shine, Lincoln Grill, and Albright were the recipients of and beneficiaries of the slave labor force.

6)   Pastor Lee, as the owner of Big Shine, was a recipient of and beneficiary of the slave labor force.

7)   Bong Lee, as the owner of Lincoln Grill, was a recipient of and beneficiary of the slave labor force.

8)   Byrne, as an owner of Albright, was a recipient of and beneficiary of the slave labor force.

9)   Whalen, as an owner of Albright, was a recipient of and beneficiary of the slave labor force.

170.   The nondisclosures alleged herein are material, in that if the nondisclosed information had been disclosed, Plaintiff would not have joined World Mission New Jersey, continued as a member of World Mission New Jersey, or donated money, time and energy to World Mission New Jersey, or for the benefit of World Mission New Jersey.

171.   At all times when material information was not disclosed, Pastor Lee, Byrne, and Lozada each knew such nondisclosures were false or dishonest, deceptive and misleading.

172.   Pastor Lee, Byrne and Lozada each failed to make the disclosures because it was their intent to defraud and deceive Plaintiff into donating money, time and energy to World Mission New Jersey, and for the benefit of World Mission New Jersey, that she would not have otherwise donated, and which Pastor Lee, Byrne and Lozada each knew she would not have otherwise donated.

173.   Pastor Lee, Byrne and Lozada each failed to make the disclosures because it was their intent that Plaintiff would rely on such nondisclosures when deciding to join World Mission New Jersey, remain a member of World Mission New Jersey, and donate money, time and energy to World Mission New Jersey, or for the benefit of World Mission New Jersey.

174.   Plaintiff justifiably relied on the nondisclosures when deciding to join World Mission New Jersey, remain a member of World Mission New Jersey, and donate money, time and energy to World Mission New Jersey, or for the benefit of World Mission New Jersey.

175.   As a direct and proximate result of Plaintiff's reliance on the nondisclosures alleged herein, Plaintiff was damaged, in that she donated money, time and energy to World Mission New Jersey, and for the benefit of World Mission New Jersey, that she would not have otherwise donated.

176.   As a direct and proximate result of Plaintiff's reliance on the nondisclosures alleged herein, Plaintiff was damaged, in that she experienced severe emotional pain and mental anguish, including depression, nervousness, grief, anxiety, worry, shock, humiliation,

indignity, fright, mortification, embarrassment, apprehension, terror, and suicidal ideation, leading to a suicide attempt.

177.   As a direct and proximate result of Plaintiff's reliance on the nondisclosures alleged herein, Plaintiff was damaged, in that she has incurred, and will incur, medical and incidental expenses for the care and treatment of these injuries.

## CAUSE OF ACTION #4

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Against World Mission South Korea, Chang, Kim, World Mission New Jersey, Pastor Lee, Bong Lee, Byrne and Lozada)**

178.   Plaintiff repeats and incorporates by reference each prior allegation.

179.   Taken together, the actions and omissions of the Defendants, as alleged throughout this Complaint, constitute extreme and outrageous conduct, in that their actions are so extreme so as to exceed all bounds of conduct usually tolerated in a civilized community.

180.   Specifically, the Defendants engaged in the following extreme and outrageous conduct:

1)   knowingly taking advantage of the emotional vulnerability displayed by Plaintiff after she was traumatized by a sexual assault, and repeatedly and continuously pressuring Plaintiff to enter into the Defendants' tightly controlled, highly structured environment of coercive persuasion while she was still suffering from that trauma;

2)   concealing the identity of World Mission's leadership at the time of recruitment, and for five months thereafter, in order to lure Plaintiff into the Defendants' tightly controlled, highly structured environment of coercive persuasion, and only disclosing the leadership's identity after the Defendants' program of isolation and indoctrination had been effectively instituted;

3)    not permitting Plaintiff to drive herself to World Mission New Jersey on her first day there, so that she would be stranded there without transportation while the Defendants subjected her to their tightly controlled, highly structured environment of coercive persuasion;

4)    subjecting Plaintiff to coercive persuasion without her informed consent;

5)    proceeding to indoctrinate Plaintiff so that she would donate almost all of her money and assets either to World Mission New Jersey or for the benefit of World Mission New Jersey, after she was fraudulently induced into entering World Mission's tightly controlled, highly structured environment of coercive persuasion;

6)    coercing Plaintiff into getting an abortion by indoctrinating her to believe that she would be unable to remain a World Mission member in good standing if she had a child; and

7)    any other actions and omissions that caused emotional distress for Plaintiff but which she has yet to discover were caused by the Defendants.

181.    The Defendants engaged in this extreme and outrageous conduct with the intention of causing, or with reckless disregard of the probability of causing, emotional distress in Plaintiff.

182.    The Defendants' extreme and outrageous conduct was neither justified nor privileged.

183.    Plaintiff did not knowingly consent to the Defendants' extreme and outrageous conduct.

184.    Again, Plaintiff is not seeking to litigate the authenticity or the force of World Mission's teachings.  The challenge is to World Mission's practice of using extreme and outrageous conduct in order to bring an unsuspecting outsider, Plaintiff, into its highly structured environment, without her informed consent, where she was subjected to coercive

persuasion, coerced into making donations, and coerced into having an abortion.  These practices are not themselves belief – they are conduct "subject to regulation for the protection of society."  See Molko v. Holy Spirit Assn., 46 Cal. 3d 1092, 1117 (1988).

185.   As a direct and proximate result of the willful, wrongful, intentional and reckless extreme and outrageous acts of the Defendants, Plaintiff was caused to suffer severe emotional distress, which was so extreme that no reasonable person could be expected to endure it.

186.   As a direct and proximate result of the willful, wrongful, intentional and reckless extreme and outrageous acts of the Defendants, Plaintiff was damaged, in that she experienced severe emotional pain and mental anguish, including depression, nervousness, grief, anxiety, worry, shock, humiliation, indignity, fright, mortification, embarrassment, apprehension, terror, and suicidal ideation, leading to a suicide attempt.

187.   As a direct and proximate result of the willful, wrongful, intentional and reckless extreme and outrageous acts of the Defendants, Plaintiff was damaged, in that she has incurred, and will incur, medical and incidental expenses for the care and treatment of these injuries.

## CAUSE OF ACTION #5

### NEGLIGENCE

**(Against World Mission South Korea, Chang, Kim, World Mission New Jersey, Pastor Lee, Bong Lee, Byrne and Lozada)**

188.   Plaintiff repeats and incorporates by reference each prior allegation.

189.   Each of the Defendants owed a duty of care to Plaintiffs while on the premises of World Mission New Jersey.

190.   Each of the Defendants breached their respective duties to Plaintiffs by allowing Plaintiff to be financially defrauded, by allowing Plaintiff to be fraudulently induced into entering

into World Mission New Jersey's tightly controlled, highly structured environment of coercive persuasion, and by allowing Plaintiff to be subjected to World Mission New Jersey's program of isolation and indoctrination without Plaintiff's informed consent.

191.   As a direct and proximate result of the negligent acts of the Defendants, Plaintiff was damaged, in that she donated money, time and energy to World Mission New Jersey, or for the benefit of World Mission New Jersey, that she would not have otherwise donated.

192.   As a direct and proximate result of the negligent acts of the Defendants, Plaintiff was damaged, in that she experienced severe emotional pain and mental anguish, including depression, nervousness, grief, anxiety, worry, shock, humiliation, indignity, fright, mortification, embarrassment, apprehension, terror, and suicidal ideation, leading to a suicide attempt.

193.   As a direct and proximate result of the negligent acts of the Defendants, Plaintiff was damaged, in that she has incurred, and will incur, medical and incidental expenses for the care and treatment of these injuries.

## CAUSE OF ACTION #6

## VICARIOUS LIABILITY

**(Against World Mission South Korea, Chang, Kim, World Mission New Jersey, Pastor Lee, Bong Lee, Byrne and Lozada)**

194.   Plaintiff repeats and incorporates by reference each prior allegation.

195.   To the extent the torts alleged herein were committed by employees or agents of World Mission South Korea or World Mission New Jersey, who were under the employ, supervision, or control of Chang, Kim, Pastor Lee, Bong Lee, Byrne, or Lozada, said employees or agents were acting at all times within the scope of their employment or agency, and said Defendants were aware or should have been aware that said torts were

being committed, and that said damage was occurring or was reasonably likely to occur, such that said Defendants are vicariously liable for all damages arising out of said torts.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands judgment be entered for the following relief:

1) compensatory damages in an amount to be determined at trial;

2) punitive damages in an amount to be determined at trial;

3) nominal damages to the extent permitted by the facts and the law;

4) filing fees;

5) reasonable costs of suit;

6) reasonable attorney's fees; and

7) reasonable pre-and post-judgment interest on all monetary awards;

8) such other and further relief as this Court deems equitable and just.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated:  April 24, 2015                          By:      s/ Paul S. Grosswald
                                                                   **PAUL S. GROSSWALD**
                                                                   Attorney for Plaintiff,
                                                                             **Michelle Ramirez**