UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHELLE RAMIREZ,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**WORLD MISSION SOCIETY CHURCH OF GOD, A NJ NONPROFIT CORPORATION, et al.,**<br><br>    **Defendants.** | Civil Action No. 14-1708 (JMV)<br><br>**OPINION AND ORDER** |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Plaintiff Michelle Ramirez ("Plaintiff") for leave to file a Third Amended Complaint [Dkt. No. 171]. Defendants World Mission Society Church of God, A NJ Nonprofit Corporation, Tara Whalen, Richard Whalen, Victor Lozada, Albright Electric, LLC, Lincoln Grill and Café, Dong Il Lee, Bong Hee Lee and Big Shine Worldwide oppose Plaintiff's motion [Dkt. Nos. 173, 174]. For the reasons set forth below, Plaintiff's motion to amend [Dkt. No. 171] is **DENIED**.

**I.    BACKGROUND**

As the parties are intimately familiar with the facts of this case, the Court will only address those relevant to the present motion. Plaintiff's allegations in this matter arise out of her involvement as a member of World Mission Society Church of God New Jersey ("World Mission New Jersey"), a not-for-profit corporation with its principal place of business in New Jersey. *See* Dkt. No. 49, Second Amended Complaint ("SAC"). According to Plaintiff, she was coerced into joining, and donating to, World Mission New Jersey based on several false representations and

nondisclosures. World Mission Society Church of God South Korea ("World Mission South Korea") is a for-profit corporation based in South Korea. Plaintiff brings this action against World Mission New Jersey, World Mission South Korea, and several other individuals and corporations who were allegedly involved in the wrongful conduct of World Mission New Jersey and World Mission South Korea.

According to Plaintiff, after facing significant pressure from World Mission New Jersey's recruiters, she decided to join the organization in the fall of 2006. Plaintiff claims that after joining:

> Defendants placed Plaintiff in great fear with constant threats of harm to Plaintiff and her family members if she left, deprived her of sleep and forced or coerced her to work or engage in other activities for extremely long hours for no compensation, and alienated her from her family and friends, all for the purpose of insidiously and progressively brainwashing, coercing, and controlling Plaintiff and destroying Plaintiff's cognitive and independent will.

SAC at ¶ 69. Plaintiff also claims that members of World Mission New Jersey were told they were not allowed to have children, and if they became pregnant, they were instructed to get an abortion. Based on this policy, when Plaintiff got pregnant around 2010, she claims to have gotten an abortion in fear that she would no longer be in good standing with World Mission New Jersey. As a result of Defendants' "brainwashing," Plaintiff claims that she experienced "severe emotional pain and mental anguish." *Id.* at ¶ 70.

Additionally, Plaintiff alleges that Defendants coerced her into donating ten percent of her income to the church based upon misrepresentations that the money would be used for charitable purposes and that none of the money would be used to fund salaries. Plaintiff contends, however, that her donations were not used for charitable purposes, but rather, the money she donated to World Mission New Jersey, which is a tax-exempt corporation, was transferred to World Mission

South Korea which is a non-tax-exempt corporation, and then used to compensate members of World Mission New Jersey. *Id.* at ¶¶ 89-94.

Plaintiff's Second Amended Complaint, which is presently her operative pleading, sets forth six causes of action against Defendants. Count I is for fraud based on false representations regarding the donations being used for charitable purposes. Counts II and III are for fraud based on nondisclosures related to World Mission South Korea's leadership and its use of the donation money to "create, train, and maintain a slave labor force." Count IV is for intentional infliction of emotional distress. Count V is for negligence. Count IV is for vicarious liability.

Plaintiff's proposed Third Amended Complaint includes two additional causes of action. *See* Dkt. No. 171-4, Proposed Third Amended Complaint ("PTAC"). The first additional claim is for "undue influence" and alleges that Defendants intentionally used techniques of "coercive persuasion to get Plaintiff to do things that she would not have otherwise done." *Id.* at ¶ 187. The second additional claim is for breach of fiduciary duty against Defendant Dong Il Lee ("Pastor Lee"). The proposed Third Amended Complaint also includes new factual allegations in support of Plaintiff's existing claims.

**II.     DISCUSSION**

"The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure." *Karlo v. Pittsburgh Glass Works, LLC,* 2011 WL 5170445, at *2 (W.D.Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." *Karlo,* 2011 WL 5170445, at *2 (citing Fed. R. Civ. P.

16(b)(4)). In situations such as the present, where a party seeks to amend "after the deadline for doing so set by the Court, the movant must satisfy the [good cause standard] of Rule 16 before the Court will turn to Rule 15." *Id.* at *2; *see also Dimensional Commc'n, Inc. v. OZ Optics, Ltd.,* 148 F. App'x 82, 85 (3d Cir. 2005) (instructing that the Third Circuit has adopted a good cause standard when determining the propriety of a motion to amend after the deadline has elapsed).

The initial Pretrial Scheduling Order in this matter was entered on April 1, 2016. *See* Dkt. No. 68. Pursuant to the Pretrial Scheduling Order, any motions for leave to amend the pleadings were to be filed by June 10, 2016. *Id.* at ¶¶ 15-16. The Court entered an amended Pretrial Scheduling Order on May 7, 2018, which set a new deadline of July 27, 2018 for motions to amend the pleadings. Dkt. No. 112 at ¶¶ 15-16. Despite submitting seemingly countless requests for judicial intervention in discovery disputes and discovery extensions, neither party requested an extension of the July 27, 2018 deadline for the amendment of pleadings. Plaintiff's present motion to amend was filed on October 31, 2019, approximately fifteen months after the expiration of the July 27, 2018 deadline. Accordingly, Plaintiff's motion is governed by Rule 16.

Rule 16 of the Federal Rules of Civil Procedure authorizes courts to enter schedules of proceedings. The pretrial scheduling order allows a court to take "judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps." *Harrison Beverage Co. v. Dribeck Imps., Inc.,* 133 F.R.D. 463, 469 (D.N.J. Oct. 19, 1990) (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 Amendment)); *see also Newton v. A.C. & S., Inc.,* 918 F.2d 1121, 1126 (3d Cir. 1990) (stating the purpose of Rule 16 is to provide for judicial control over cases, streamline proceedings, maximize efficiency of the court system, and actively manage the timetable of case preparation to expedite speedy and efficient disposition of cases).

A scheduling order must, among other things, "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). The requirement of a deadline for amending pleadings in the pretrial scheduling order "assures that at some point . . . the pleadings will be fixed." Fed. R. Civ. P. 16(b) advisory committee's note (1983 Amendment); *see also Harrison,* 133 F.R.D. at 469 ("The careful scheme of reasonable framing and enforcement of scheduling orders for case management would thus be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling deadlines have expired."). The burden is on the moving party to show "good cause" for its failure to comply with the applicable scheduling order, and accordingly, for the Court to allow its proposed amended pleading. *Prince v. Aiellos,* No. 09–5429, 2012 WL 1883812, at *6 (D.N.J. May 22, 2012) (quoting *Graham,* 271 F.R.D. at 118); *see also Race Tires Am., Inc. v. Hoosier Racing Tire Corp.,* 614 F.3d 57, 84 (3d Cir. 2010) (affirming the trial court's holding that "Rule 16(b)(4) focuses on the moving party's burden to show due diligence").

Whether "good cause" exists under Rule 16 hinges to a large extent on the diligence, or lack thereof, of the moving party. *GlobespanVirata, Inc. v. Texas Instruments, Inc.,* 2005 WL 1638136, at *3 (D.N.J. July 12, 2005) (quoting *Rent–A–Ctr. v. Mamaroneck Ave. Corp.,* 215 F.R.D. 100, 104 (S.D.N.Y. Apr. 9, 2003)). Put succinctly, "[a]bsent diligence, there is no 'good cause.'" *Chancellor v. Pottsgrove Sch. Dist.,* 501 F.Supp.2d 695, 702 (E.D.Pa. Aug.8, 2007); *see also* Fed. R. Civ. P. 16(b), advisory committee's note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

When examining a party's diligence and whether "good cause" exists for granting an otherwise untimely motion to amend pleadings, courts typically ascertain whether the movant

5

possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired. *See Stallings ex rel. Estate of Stallings v. IBM Corp.,* Civ. No. 08–3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying plaintiffs' motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline"); *Kennedy v. City of Newark,*, 2011 WL 2669601, at *2 (D.N.J. July 7, 2011) ("The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed."). If a movant had the knowledge necessary to file a motion to amend prior to the expiration of the Court's deadline set forth in the scheduling order, and if the movant can provide no satisfactory explanation for the delay, the Court may, in its discretion, deny the motion. *See Dimensional Commc'n.,* 148 F. App'x at 85 (upholding trial court's finding that the movant could not show "good cause" because it was in possession of the facts underlying its proposed counterclaim well before the deadline for amendment).

Although Plaintiff does not address Rule 16 or its requirements, she claims that the presently sought amendments arise from a set of documents obtained by Defendants from an individual identified as Raymond Gonzalez, a former high-ranking member of World Mission New Jersey, and produced to Plaintiff for the first time in August 2019 (the "Documents"). According to Plaintiff, the Documents "contain two startling sets of information that Plaintiff did not previously have access to" and prove that Defendants were aware of the harmful nature of their conduct. Dkt. No. 171 at p. 2. Plaintiff contends that each of these two sets of documents give rise to a new cause of action.

The first set of information, referred to by Plaintiff as the "Coercive Persuasion Documents," contains documents which discuss certain recruitment and indoctrination techniques

utilized by cults. *See* Dkt. No. 171-6. Plaintiff claims that these documents "give rise to the inference that Defendants were aware of the techniques that they could use to get Plaintiff to be 'brainwashed' or indoctrinated to the point where she could be made to do whatever [Defendants] desired." Dkt. No. 171 at p. 4. According to Plaintiff, these documents "cast[] this case in an entirely new light" because while it was previously "unclear whether Defendants had intentionally 'brainwashed' Plaintiff, or whether she had simply experience a 'brainwashing-like' effect," these documents "show that Defendants understood how the techniques of coercive persuasion actually work" and therefore confirm that Defendants intentionally subjected Plaintiff to coercive persuasion. *Id.* at p. 5.

Based upon this purportedly revelatory information regarding Defendants' awareness of coercive techniques, Plaintiff seeks to add a cause of action for "undue influence over donor." PTAC at ¶¶ 181-215. "Undue influence generally has been defined as mental, moral or physical exertion which has destroyed the free agency of a testator or settlor by preventing the testator or settlor from following the dictates of his own mind and will and accepting instead the domination and influence of another." *In re Niles*, 176 N.J. 282, 299, 823 A.2d 1, 10 (2003) (citations omitted). Plaintiff claims that she is entitled to pursue a cause of action for undue influence because she was "induced" to donate money to World Mission New Jersey "while being subjected to the techniques of coercive persuasion." Dkt. No. 171 at p. 16.

The second set of information contained in the Documents, which Plaintiff refers to as the "Emotional Distress Documents," is comprised of "a series of emails Mr. Gonzalez received from World Mission Critics, by posing as a critic himself." *Id.* at p. 5. These emails contain messages sent by current and former World Mission New Jersey members and their families and purportedly "describe in horrifying detail how their loved ones have been adversely affected by World

7

Mission's abusive tactics." *Id.* at p. 6. Plaintiff claims that these emails, which were forwarded to Pastor Lee, "show that Pastor Lee knew he was causing these harms to World Mission members . . . [which] necessarily means that he knew he was causing those harms to Plaintiff." *Id.* at p. 7.

Plaintiff contends that this allegedly newly apparent awareness on behalf of Pastor Lee as to the harmful nature of his actions "gives rise to a claim that Pastor Lee breached his fiduciary duties that he owed to Plaintiff as a result of their priest-parishioner relationship." *Id.* Accordingly, Plaintiff seeks to add a cause of action against Pastor Lee for breach of fiduciary duty. PTAC at ¶¶ 216-238. To state a claim for breach of fiduciary duty, a party must show (1) a fiduciary duty existed between Plaintiff and Defendant, (2) the defendant breached that duty, and (3) damages resulted from the breach. *F.G. v. MacDonell,* 150 N.J. 550, 563–64, 696 A.2d 697 (1997).

Defendants argue that Plaintiff's proposed additional claims are futile. In opposition to Plaintiff's undue influence claim, Defendants contend that "undue influence is a theory to undo the execution of a will or gift in a probate proceeding [and] the case law regarding undue influence typically involves the estate of a deceased individual contesting the contents of a will or *inter vivos* gift." Dkt. No. 173 at p. 24. Plaintiff appears to acknowledge the limited circumstances from which a cause of action for "undue influence" can arise but, without any supporting law, requests that "a 'donor' also be put on the list of people who can be victimized by undue influence." Dkt. No. 171 at p. 15. As to Plaintiff's breach of fiduciary duty claim, Defendants correctly assert that under New Jersey law, "a complaint asserting a claim by a parishioner for breach of fiduciary duty by a clergyman" is subject to a two-year statute of limitations. *Balliet v. Fennell*, 368 N.J. Super. 15, 19, 845 A.2d 168, 170 (App. Div. 2004).

While the viability of the proposed additional claims is problematic at best, the Court need not determine whether Plaintiff's additional claims are futile because they are simply not based on

new facts or allegations and thus could have been asserted much earlier in this case. Plaintiff's argument that the Documents, while not giving to any new factual revelations, nonetheless show "that Defendants had a level of awareness regarding [their conduct] that was previously unknown" is wholly unavailing. Dkt. No. 175 at p. 6. Plaintiff's Second Amended Complaint plainly alleges that Defendants' acted with the "purpose of insidiously and progressively brainwashing, coercing, and controlling Plaintiff and destroying Plaintiff's cognitive and independent will." SAC at ¶ 69. These allegations directly contradict Plaintiff's present assertion that the proposed amendments are justified because she was previously unsure if Defendants' alleged conduct towards her was intentional or aimed at inflicting harm. Although Plaintiff may use the Documents to support her existing claims regarding Defendants' conduct, the Documents do not contain revelatory information sufficient to justify the assertion of novel claims at this late juncture.

Even assuming, *arguendo*, that the Court were to find a newly demonstrated level of "awareness" on behalf of Defendants as to their purported "brainwashing" of Plaintiff, Plaintiff's contention that her belated assertion of additional claims is justified because the Documents contain information previously unknown to Plaintiff cannot be reconciled with Plaintiff's repeated acknowledgment that the proposed amendment "simply re-casts" Plaintiff's previous allegations into new and separate causes of action. Dkt. No. 175 at p. 6. While Plaintiff may be correct that the "mere re-framing of a claim, arising out of the same facts already litigated, does not constitute bad faith," the desire to repackage already known facts to create new claims does not constitute good cause under Rule 16. *Id.*

The same rationale disposes of the additional factual allegations Plaintiff attempts to incorporate into her existing claims. In addition to the newly asserted claims, Plaintiff has amended her existing claim for intentional infliction of emotional distress to include allegations that

9

Defendants "indoctrinate[ed] her to believe that her special needs child was possessed by demons and was unworthy of being born" and attempted to coerce her into entering an arranged marriage. PTAC at ¶ 241. It is not clear when the events giving rise to these additional allegations occurred and there is no explanation by Plaintiff as to why these additional facts were not, or could not have been, included in her prior pleadings. Additionally, there is no explanation by Plaintiff as to how these additional allegations are related to the newly received evidence.

Instead, Plaintiff argues that these new facts "have been litigated throughout this case, even if they were not specifically delineated in the [Second Amended Complaint]." Dkt. No. 175 at p. 2. This argument by Plaintiff acknowledges that although she has been aware of these allegations throughout the lengthy pendency of this case, she did not seek to formally add them to her pleading until the deadline for doing so had long passed. Accordingly, because Plaintiff has admittedly possessed the information necessary to assert these additional allegations for some time and has failed to explain why they could not have been included in her prior pleadings or raised prior to the expiration of the July 2018 deadline, the Court finds that Plaintiff has failed to establish good cause.

Based on the foregoing, the Court finds that Plaintiff has failed to demonstrate good cause for failing to move to assert the presently sought amendments within the deadline set forth in the Court's Amended Pretrial Scheduling Order. Therefore, the Court, in its discretion, denies Plaintiff's motion for leave to file a Third Amended Complaint pursuant to Rule 16.

### III.    CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 30th day of June, 2020,

**ORDERED** that Plaintiff's motion for leave to amend [Dkt. No. 171] is **DENIED.**


                                                s/ James B. Clark, III
                                                **JAMES B. CLARK, III**
                                                **United States Magistrate Judge**