NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MICHELLE RAMIREZ,

        Plaintiff,

        v.

WORLD MISSION SOCIETY, CHURCH OF
GOD, A NJ NONPROFIT CORPORATION, et
al.,

        Defendants.

Civil Action No. 14-01708

**OPINION**

April 1, 2024

**SEMPER**, District Judge.

The current matter comes before the Court on Defendants World Mission Society Church of God New Jersey ("World Mission New Jersey"), Tara Whalen ("Byrne"), Richard Whalen ("Whalen"), Dong Il Lee ("Pastor Lee"), Bong He Lee ("Bong Lee"), Victor Lozada ("Lozada"), Albright Electric LLC, Lincoln Grill and & Café LLC, and Big Shine Worldwide, Inc.'s Motion for Summary Judgment. (ECF 271, "MSJ.") Plaintiff Michelle Ramirez opposed the motion. (ECF 277, "Opp.") Defendants filed a reply. (ECF 278, "Reply.")  The Court has decided this motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 78.1. For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

In 2014, Plaintiff Michelle Ramirez filed a complaint against World Mission New Jersey, World Mission Society Church of God South Korea ("World Mission South Korea"), Gil Jah Chang ("Chang"), Joo Cheol Kim ("Kim"), Pastor Lee, Bong Lee, Byrne, Whalen, Lozada, Big Shine Worldwide, Inc., Albright Electric LLC, and Lincoln Grill & Café LLC. Plaintiff alleges that World Mission New Jersey, a not-for-profit corporation with its principal place of business in New Jersey, coerced her into joining the organization based on several false representations and nondisclosures. (ECF 49, SAC ¶¶ 3-4, 7.) World Mission South Korea is a for-profit corporation based in South Korea. (*Id.* ¶ 8.) Plaintiff brings this action against World Mission New Jersey, World Mission South Korea, as well as several individuals and corporations that were allegedly involved in the wrongful conduct of World Mission New Jersey and World Mission South Korea. (*Id.* ¶¶ 7-18.)

After facing significant pressure from World Mission New Jersey's recruiters, Plaintiff eventually decided to join in the fall of 2006. (*Id.* ¶¶ 55, 120.) During the recruitment process, the World Mission recruiters "actively concealed . . . the identity of the church's leader[;]" had Plaintiff known the identity of the leader, she would not have joined World Mission. (*Id.* ¶¶ 111, 125.) According to Plaintiff, Defendants coerced her into donating ten percent of her income to the church based on misrepresentations that the money would be used for charitable purposes and that none of the money would be used to fund salaries. (*Id.* ¶¶ 81-88.) Plaintiff alleges that the money donated to World Mission New Jersey was transferred to World Mission South Korea and was then used to compensate members of World Mission New Jersey. (*Id.* ¶¶ 89-94;)

---

[1] The facts and procedural history are drawn from the Second Amended Complaint (ECF 49, "SAC"), Defendants' Motion for Summary Judgment (ECF 271, MSJ), Plaintiff's Opposition (ECF 277, Opp.), both parties' submissions regarding material facts (ECF 271-2; ECF 277-1; ECF 278-7), and documents integral to or relied upon by the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Plaintiff further alleges that the donations were "used to create, train, and maintain a slave labor force." (*Id.* ¶ 156.) Plaintiff claims that World Mission New Jersey "indoctrinate[d]" its members to believe that they had to live a life of poverty, and they "should commit to working long hours in service to [Defendant] Chang." (*Id.* ¶ 157.) Rather than being assigned work with the church, Plaintiff alleges that World Mission New Jersey put its members to work in for-profit companies where they made less than minimum wage. (*Id.* ¶ 158.) Plaintiff also alleges that members of the church constantly threatened her, "coerced her to work" long hours with no pay, and "alienated her from her family and friends" in a concerted effort to brainwash her. (*Id.* ¶ 69.) Plaintiff also claims that World Mission New Jersey told its members that they were not allowed to have children. (*Id.* ¶ 71.) If members of World Mission New Jersey became pregnant, the leaders of the organization would allegedly instruct the members to get abortions. (*Id.* ¶ 74.) When Plaintiff became pregnant around 2010, she claimed to have gotten an abortion in fear that she would no longer be in good standing with World Mission New Jersey. (*Id.* ¶¶ 75-76.) Plaintiff alleges that this caused her to "experience severe emotional pain and mental anguish [which led] to a suicide attempt." (*Id.* ¶ 77.)

Plaintiff brought several claims against Defendants. Count I is for fraud based on false representations regarding the donations being used for charitable purposes. (*Id.* ¶¶ 78-104.) Counts II and III are for fraud based on nondisclosures related to World Mission South Korea's leadership and its use of the donated funds to maintain "slave labor[ers]." (*Id.* ¶¶ 105-77.) Count IV is for intentional infliction of emotional distress. (*Id.* ¶¶ 178-87.) Count V is for negligence. (*Id.* ¶¶ 188-93.) Count VI is for vicarious liability against Defendants Chang, Kim, Pastor Lee, Lee, Byrne, and Lozada. (*Id.* ¶¶ 194-95.)

Plaintiff filed her initial Complaint on March 18, 2014. (ECF 1.) She filed an Amended Complaint on May 9, 2014. (ECF 7.) Defendants filed a motion to dismiss on June 20, 2014, that was terminated by the Court on July 2, 2014. (ECF 11, 17.) Defendants re-filed their motion to dismiss on July 11, 2014. (ECF 20.) The motion was dismissed as moot, and the Court granted Plaintiff leave to file a Second Amended Complaint on March 23, 2015. Defendants re-filed their motion to dismiss on May 18, 2015. (ECF 50.) Plaintiff filed the Second Amended Complaint on April 24, 2015. (ECF 49.) The Court terminated Defendants' motion to dismiss the Second Amended Complaint on November 13, 2015. (ECF 56.) Defendants filed their Answer to the Second Amended Complaint on January 22, 2016. (ECF 59.) Defendants filed a new motion to dismiss on April 25, 2017. (ECF 99.) The Court denied Defendants' motion to dismiss on April 5, 2018. (ECF 107.) Defendants filed the instant motion for summary judgment on October 27, 2023. (ECF 271, MSJ.) Plaintiff filed her opposition on December 18, 2023. (ECF 277, Opp.) Defendants filed a reply brief on January 2, 2024. (ECF 283, Reply.)

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on

which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

III.    <u>**ANALYSIS**</u>

**A. Intentional Fraud Based on False Representations (Count I)**

Count I alleges intentional fraud arising out of false representations that donations would be used for charitable purposes when in fact they were misappropriated for use by private individuals and private entities. (ECF 49, SAC at 13.) Plaintiff brought Count I against World Mission South Korea, World Mission New Jersey, Chang, Kim, Pastor Lee, Bong Lee, and Lincoln Grill. (*Id.*)

**1. Dismissal of Unserved Defendants**

As a preliminary matter, Defendants Chang, Kim, and World Mission South Korea were never served, they never appeared on the docket or in Court, and Plaintiff has never contested their lack of appearance throughout the decade of litigation in this case. (ECF 277-1 ¶ 5.) A plaintiff in a civil action in federal court must complete service of their complaint within 90 days of filing or within a period prescribed by the District Court. Fed. R. Civ. P. 4(m); *Mathies v. Silver*, 450 F. App'x 219, 221 (3d Cir. 2011) (affirming district court's dismissal of action in which plaintiff failed to effect service). If the plaintiff fails to complete service within the specified time, Rule 4(m) requires the Court to determine whether the plaintiff has shown good cause for the failure. *See Mathies*, 450 F. App'x at 221. Plaintiff does not contest that Defendants Chang, Kim, and World Mission South Korea were never served. (ECF 277-1.) Over the course of this litigation, Plaintiff has not shown proof of service or updated the Court on the status of service. Defendants Chang, Kim, and World Mission South Korea have never appeared in this matter and have not

otherwise litigated their defense. Accordingly, dismissal of these Defendants is warranted under Rule 4(m) and Local Civil Rule 41.1(a).

### 2. *Sua Sponte* Dismissal of Bong Lee and Lincoln Grill for Failure to State a Claim Pursuant to Rule 12(b)(6)

Further, although Defendants have not filed a motion to dismiss for failure to state a claim, the Court will assess the sufficiency of the operative Second Amended Complaint to determine if the claims must be dismissed *sua sponte* pursuant to Rule 12(b)(6). A district court may on its own initiative enter an order dismissing an action provided that the complaint affords a sufficient basis for the court's action. *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980); *see also Michaels v. State of N.J.*, 955 F. Supp. 315, 331 (D.N.J. 1996) ("It is well established that, even if a party does not make a formal motion to dismiss, the court may, *sua sponte*, dismiss the complaint where the inadequacy of the complaint is clear.") The prior motion to dismiss in this case did not raise 12(b)(6) pleading deficiencies. (ECF 99.) Accordingly, the Court did not previously assess the sufficiency of the claims in its Opinion. (ECF 107.) As such, the Court will contemporaneously assess the sufficiency of the claims as they were pled in the SAC. Importantly, mere "conclusory allegations against defendants as a group" that "fail[] to allege the personal involvement of any defendant" are insufficient to survive a motion to dismiss. *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015). A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id*. When several defendants are named in a complaint, plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct." *Falat v. Cnty. of Hunterdon*, No. 12-6804, 2013

WL 1163751, at *3 (D.N.J. Mar. 19, 2013). A complaint that contains "impermissibly vague group pleading" will be dismissed. *Id*.

Additionally, "[w]hen a complaint involves allegations of fraud, a plaintiff must meet the heightened pleading requirements of Rule 9(b) to state a claim under Rule 12(b)(6)." *Franchitti v. Cognizant Tech. Sols. Corp.*, 555 F. Supp. 3d 63, 68 (D.N.J. 2021) (*citing Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155 (3d Cir. 2014)); *see also* Fed. R. Civ. P. 9(b) (stating that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud," though conditions of the mind such as knowledge may be pled generally). "In order to satisfy Rule 9(b), a complaint must provide 'all of the essential factual background that would accompany the first paragraph of any newspaper story'— that is, the 'who, what, when, where and how' of the events at issue.'" *United States v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). This standard has been relaxed slightly for fraudulent omission claims where pleading specific times and places may not be practicable, and instead, Rule 9(b) may be satisfied by "alleg[ing] what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud." *See Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 264 (D.N.J. 2011) (quoting *Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2010 WL 3258259, at *7 (D.N.J. Aug. 16, 2010)).

In assessing Count I, the Court will consider the elements of intentional fraud in conjunction with each remaining defendant. The remaining Defendants are World Mission New Jersey, Pastor Lee, Bong Lee, and Lincoln Grill. The elements of intentional fraud are "(1) a material misrepresentation of presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance

thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005). Here, the SAC alleges that Bong Lee transferred funds from World Mission New Jersey to World Mission South Korea and that Bong Lee was responsible for "paying compensation to some of the World Mission New Jersey[] 'volunteers.'" (ECF 49, SAC ¶ 96.) However, the SAC makes no allegations capturing the elements of intentional fraud as it relates to Bong Lee. The SAC does not make any allegation that Bong Lee herself made a material misrepresentation of a presently existing or past fact, nor does the SAC allege that Bong Lee intended that Plaintiff rely on a misrepresentation that Lee made to her. Further, Count I (and Count III, discussed in Section III.B *infra*) against Lincoln Grill fails for the same reason. The SAC makes no affirmative allegations as to Lincoln Grill at all. (*See generally* ECF 49, SAC.) Due to the absence of allegations regarding Lincoln Grill, the SAC fails to state a claim against Lincoln Grill entirely. As such, the Court dismisses Lincoln Grill from this action.

### 3. Surviving Claims

Turning to the final two Defendants in Count I, the Court will address Pastor Lee and World Mission New Jersey in turn.

### a) Pastor Lee

The SAC sufficiently alleges intentional fraud against Pastor Lee. Each of the five elements of intentional fraud are sufficiently alleged: (1) Pastor Lee is alleged to make a material misrepresentation that no one is paid from donations to World Mission New Jersey, (ECF 49, SAC ¶ 86); (2) Pastor Lee knew that these representations were false or dishonest, (*id*. ¶ 98); (3) Pastor Lee made false representations with the intent to defraud and deceive Plaintiff into donating to World Mission New Jersey, (*id.* ¶¶ 99-100); (4) Plaintiff justifiably relied on the false

representations, (*id.* ¶ 101); and (5) Plaintiff suffered damages in lost money and time. (*Id.* ¶ 102.) The Court now turns to the motion for summary judgment inquiry.

In assessing Count I against Pastor Lee on a motion for summary judgment inquiry, the Court determines that genuine issues of material fact exist as to whether Pastor Lee made a material misrepresentation that no one got paid from donations to World Mission New Jersey, whether Pastor Lee knew that these representations were false or dishonest, and whether Pastor Lee made those representations with the intent to defraud and deceive Plaintiff into donating. (ECF 278-7 ¶¶ 408, 420, 444, 446, 450-51.)   Accordingly, the Court denies Defendants' Motion for Summary Judgment as to Count I against Pastor Lee. *See Kreschollek*, 223 F.3d at 204.

### b)  World Mission New Jersey

Regarding Count I against World Mission New Jersey, the SAC sufficiently states a claim for intentional fraud against World Mission New Jersey under a vicarious liability theory. To state a claim for vicarious liability, a plaintiff must adequately allege "(1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." *Haviland v. Lourdes Med. Ctr. of Burlington Cnty., Inc.*, 272 A.3d 912, 918 (N.J. 2022) (quoting *Carter v. Reynolds*, 815 A.2d 460, 463 (N.J. 2003)). Pastor Lee is alleged to be the agent of World Mission New Jersey and his alleged misrepresentation occurred in the scope of his employment as pastor for World Mission New Jersey. (ECF 49, SAC ¶ 147.) Because Plaintiff establishes a master-servant relationship between World Mission New Jersey and Pastor Lee, Count I against World Mission New Jersey survives under the theory that World Mission New Jersey is vicariously liable for intentional fraud based on Pastor Lee's alleged misrepresentations.

In assessing Count I against World Mission New Jersey at a motion for summary judgment inquiry, the Court notes that there are no allegations as to World Mission New Jersey

independently making material misrepresentations of fact. However, the Court determines that there are genuine issues of material fact as to several elements for intentional fraud for Pastor Lee that attach to World Mission New Jersey under a theory of vicarious liability. *See* Section III.A.3.a, *supra*. In addition, the parties have submitted evidence that Pastor Lee has a formalized relationship with the World Mission entities. (ECF 278-7 ¶¶ 339-40, 342.) As such, the genuine issues of material fact that exist for Count I against Pastor Lee also exist for Count I against World Mission New Jersey. *See Kreschollek*, 223 F.3d at 204. Accordingly, the Court denies Defendants' Motion for Summary Judgment as to Count I against World Mission New Jersey.

**B.  Intentional Fraud Based on Nondisclosures (Count II)**

Count II alleges intentional fraud arising out of failure to disclose identity of World Mission's leadership and beneficiaries of charitable donations. (ECF 49, SAC at 18.) Plaintiff brought Count II against World Mission South Korea, World Mission New Jersey, Chang, Kim, Pastor Lee, and Byrne. (*Id.*) As discussed in Section III.A.1 *supra*, Defendants World Mission South Korea, Chang, and Kim are dismissed from this action. Therefore, the Court will assess this claim as it relates to World Mission New Jersey, Pastor Lee, and Byrne.

**1.  Duty to Disclose**

In New Jersey, fraudulent omission claims require the defendant to have a duty to disclose the omitted information. *Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 491 (D.N.J. 2018); *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013) ("Silence can be fraudulent under common law in circumstances where there is a duty to disclose."). Three general classes of transactions give rise to a duty to disclose: (1) fiduciary relationships such as attorney and client; (2) where, because of the nature of the transaction or the parties' position toward each other, "trust and confidence . . . is necessarily implied[;]" and (3)

where contracts or transactions are "intrinsically fiduciary" because of their "essential nature" and thus "necessarily call [] for perfect good faith and full disclosure, without regard to any particular intention of the parties." *Citizens United Reciprocal Exch.*, 321 F. Supp. 3d at 491 (citing *United Jersey Bank v. Kensey*, 704 A.2d 38, 43-44 (N.J. Super. Ct. App. Div. 1997)).

The relationship between Plaintiff and World Mission New Jersey, Pastor Lee, and Byrne is not a traditional fiduciary relationship such as attorney and client, nor is it a contractual or transactional relationship that is intrinsically fiduciary because of its "essential nature" that calls for full faith and disclosure. *See Citizens United Reciprocal Exch.*, 321 F. Supp. 3d at 491. As such, the Court assesses whether the relationship between Plaintiff and the remaining Defendants necessarily implies trust and confidence to impose a legal duty to disclose the identity of the church leadership and the beneficiaries of the charitable donations.

Plaintiff cites *F.G. v. MacDonell* as a case where a court imposed a fiduciary duty in a clergy-parishioner relationship. 696 A.2d 697, 701 (N.J. 1997). However, this Court finds *F.G.* unavailing as applied to this case. In *F.G.*, the New Jersey Supreme Court explicitly states that "[t]he free exercise of religion does not permit members of the clergy to engage in inappropriate sexual conduct with parishioners who seek pastoral counseling." *Id.* The court's discussion hinged upon the sexual nature of the transgression from the clergyman—an issue that is not at play in this case. Plaintiff argues that World Mission New Jersey, Pastor Lee, and Byrne had a duty to disclose the beneficiaries of the donations and the identities of the church's leadership. Plaintiff does not argue that Defendants had a duty to not engage in inappropriate sexual conduct in the context of pastoral counseling. As such, this Court refuses to impose a duty to disclose upon World Mission New Jersey, Pastor Lee, and Byrne. Therefore, the Court dismisses Count II on the basis that

Defendants World Mission New Jersey, Pastor Lee, and Byrne did not have a duty to disclose; Plaintiff subsequently fails to state a claim for intentional fraud based on nondisclosures.[2]

## 2. Fraudulent Concealment

In her opposition brief, Plaintiff concedes that the Second Amended Complaint is "inartfully [sic] drafted making it unclear whether Cause of Action #2 is intended to be based on nondisclosure or concealment." (ECF 277, Opp. at 15.) Plaintiff argues that Count II "should be read as an allegation of fraudulent concealment, which does not require that a duty to disclose be established." (*Id.*) At the motion for summary judgment stage, this Court refuses to read Count II as an allegation of fraudulent concealment when the SAC explicitly pleads the cause of action as intentional fraud based on nondisclosure. (ECF 49, SAC at 18.) Even if the Court opted to read Count II as a fraudulent concealment claim, this count would still fail. Plaintiff cites the Second Restatement of Torts to argue that a fraudulent concealment claim does not impose a duty to disclose. However, the elements of a fraudulent concealment claim in New Jersey are (1) a duty on behalf of the defendant to disclose to the plaintiff a material fact; (2) the failure to disclose that fact; (3) an intention to defraud or deceive the plaintiff; (4) action taken by the plaintiff in justifiable reliance on the concealment; and (5) damages as a result of the defendant's concealment. *In re Johnson & Johnson Talcum Powder*, 553 F. Supp. 3d 211, 230-31 (D.N.J. 2021); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 305 (D.N.J. 2009); *United Cap. Funding Grp. LLC v. Remarkable Foods, LLC*, No. 21-3291, 2023 WL 5722910, at *4 (D.N.J. Sept. 5, 2023) ("To state

---

[2] The Court bases its dismissal of Count II on the lack of duty issue and therefore does not engage in the analysis for the First Amendment defense offered by Defendants. (ECF 271, MSJ at 11-15.) The Court notes that for the surviving counts, Plaintiff's case must be constrained to the causes of action specified in this Opinion and accompanying Order. To the extent that Count II seeks to assert liability for intentional fraud arising out of failure to disclose the identity of church leadership—in particular, that church members believed that Zhang was "Mother God," —this Court refuses to "encroach on the autonomy of religious institutions when they inquire into ecclesiastical law and governance." *Askew v. Trs. of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith Inc.*, 684 F.3d 413, 418 (3d Cir. 2012). As this case proceeds, this Court will continue to apply neutral principals of law to decide issues that do not implicate religious doctrine. *See Jones v. Wolf*, 443 U.S. 595, 602 (1979).

a claim for fraudulent concealment, a plaintiff must plead, among other things, 'a legal obligation to disclose.'"). Here again, there are three specific types of relationships that create a duty to disclose when alleging fraudulent concealment, including: (1) fiduciary relationships, such as principal and agent, client and attorney, or beneficiary and trustee; (2) relationships where one party expressly reposits trust in another party, or else from the circumstances, such trust necessarily is implied; and (3) relationships involving transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993) (*citing Berman v. Gurwicz*, 458 A.2d 1311, 1313 (N.J. Super. Ct. Ch. Div. 1981)); *Vandergroef v. Atl. Aviation Corp.*, No. 22-05920, 2023 WL 3173678, at *4 (D.N.J. May 1, 2023).

For the reasons discussed in Section III.B.2 *supra*, Count II fails for lack of an operative duty to disclose whether the claim was for fraudulent omission or fraudulent concealment. Accordingly, Count II of the SAC is dismissed.

### C.  Intentional Fraud Based on Nondisclosures (Count III)

Count III alleges intentional fraud arising out of failure to disclose that charitable donations were used to create, train, and maintain slave labor. (ECF 49, SAC at 27.) Plaintiff brings Count III against all Defendants. (*Id.*) All Defendants listed in the complaint are: World Mission New Jersey, World Mission South Korea, Chang, Kim, Pastor Lee, Bong Lee, Byrne, Whalen, Lozada, Big Shine Worldwide, Inc., Albright Electric LLC, Lincoln Grill & Café LLC. As discussed in

Section III.A.1 *supra*, Defendants World Mission South Korea, Chang, and Kim are dismissed from this action.

      1. ***Sua Sponte* Dismissal of Victor Lozada, Richard Whalen, Big Shine Worldwide, and Albright Electric for Failure to State a Claim Pursuant to Rule 12(b)(6)**

As discussed in Section III.A.2 *supra*, the SAC fails to make any allegations that sufficiently state a claim for intentional fraud—based on either misrepresentation or nondisclosure—against defendant Bong Lee. The SAC fails to make any legally relevant allegations as to Lincoln Grill. Similarly, the SAC fails to state a claim against Victor Lozada, Richard Whalen, Big Shine Worldwide, and Albright Electric.

Before reaching the duty requirement issue, the SAC does not state a claim against Lozada in the first instance. Nowhere in the SAC does Plaintiff allege that Lozada made any material misrepresentation of a presently existing or past fact, nor does she allege that Lozada intended that Plaintiff rely on a misrepresentation he made to her. (*See generally* ECF 49, SAC.) Rather, the SAC states that Lozada was "responsible for the indoctrination of male members" of World Mission New Jersey and asserts a legal conclusion that Lozada owed Plaintiff a duty to disclose that the "money raised by World Mission New Jersey would be used to create, train, and maintain a slave labor force . . . ." (ECF 49, SAC ¶ 169.) As such, Plaintiff fails to state a claim for intentional fraud against Lozada. Count III against Lozada is accordingly dismissed.

Further, in the same way Count I against Lincoln Grill fails as discussed in Section III.A.2 *supra*, Count III against Richard Whalen, Big Shine Worldwide, and Albright Electric fails for total absence of specific factual allegations. The SAC makes no affirmative allegations as to Richard Whalen, Big Shine Worldwide, and Albright Electric whatsoever and relies instead on

impermissible group pleading throughout the complaint. *See Galicki*, 2015 WL 3970297, at *2; *Falat*, 2013 WL 1163751, at *3. Due to the absence of allegations capturing Richard Whalen, Big Shine Worldwide, and Albright Electric, the SAC fails to state a claim against each of these Defendants. As such, the Court dismisses Richard Whalen, Big Shine Worldwide, and Albright Electric from this action.[3] *See Bryson*, 621 F.2d at 559; *Michaels*, 955 F. Supp. at 331.

### 2.  Duty to Disclose

Additionally, Count III also fails for lack of a duty to disclose. Both Counts II and III were pled as intentional fraud arising out of failures to disclose. As discussed in Section III.B.1 *supra*, intentional fraud for failure to disclose requires that the defendant had a duty to disclose the omitted information. *Citizens United Reciprocal Exch.*, 321 F. Supp. 3d at 491; *Stockroom, Inc.*, 941 F. Supp. 2d at 546. Here again, three general transactions give rise to a duty to disclose: (1) fiduciary relationships such as attorney and client; (2) where, because of the nature of the transaction or the parties' position toward each other, "trust and confidence . . . is necessarily implied[;]" and (3) where contracts or transactions are "intrinsically fiduciary" because of their "essential nature" and thus "necessarily call[] for perfect good faith and full disclosure, without regard to any particular intention of the parties." *Citizens United Reciprocal Exch.*, 321 F. Supp. 3d at 491 (citations omitted).

The remaining Defendants for Count III are World Mission New Jersey, Pastor Lee, Bong Lee, and Tara Byrne. As stated before, the relationships between Plaintiff and World Mission New Jersey, Pastor Lee, Bong Lee, and Byrne are not traditional fiduciary relationships such as attorney and client, and they are not contractual or transactional relationships that are intrinsically fiduciary

---

[3] Count III is the only cause of action brought against "all defendants." (ECF 49, SAC at 27.) Dismissing Count III against Richard Whalen, Big Shine Worldwide, and Albright Electric therefore dismisses them from the entire action.

because of their "essential nature" that calls for full faith and disclosure. *See id.* As such, the Court assesses whether the relationships between Plaintiff and the remaining Defendants necessarily imply trust and confidence to impose a legal duty to disclose "that charitable donations were used to create, train, and maintain slave labor." (ECF 49, SAC at 27.) Here again, this Court refuses to impose this duty to disclose upon the remaining Defendants. Therefore, the Court dismisses Count III for failure to state a claim for intentional fraud based on nondisclosures.

### D.  Intentional Infliction of Emotional Distress (Count IV)

Count IV alleges intentional infliction of emotional distress against World Mission South Korea, Chang, Kim, World Mission New Jersey, Pastor Lee, Bong Lee, Byrne and Lozada. (ECF 49, SAC at 32.) As discussed in Section III.A.1 *supra*, Defendants World Mission South Korea, Chang, and Kim are dismissed from this action. The Court will assess this claim as it relates to World Mission New Jersey, Pastor Lee, Bong Lee, Byrne, and Lozada.

### 1.  *Sua Sponte* Dismissal of World Mission New Jersey, Bong Lee, and Victor Lozada, for Failure to State a Claim Pursuant to Rule 12(b)(6)

The SAC fails to make any allegations that sufficiently state a claim for intentional infliction of emotional distress against Defendants World Mission New Jersey, Bong Lee, and Victor Lozada. To make a *prima facie* case for intentional infliction of emotional distress in New Jersey, a plaintiff must show:

> (1) the defendant acted intentionally [or recklessly]; (2) the defendant's conduct was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community; (3) that the conduct proximately caused the plaintiff

emotional distress; and (4) the emotional distress was so severe that no reasonable person could be expected to endure it.

*Cagno v. Ivery*, No. 19-20384, 2022 WL 17887231, at *8 (D.N.J. Dec. 23, 2022) (*citing Segal v. Lynch*, 993 A.2d 1229, 1239 (N.J. Super. Ct. App. Div. 2010). The SAC does not make any specific allegations that state a claim for intentional infliction of emotional distress against World Mission New Jersey, Bong Lee, or Victor Lozada. (*See generally* ECF 49, SAC.) The SAC is devoid of any facts of specific acts that World Mission New Jersey, Bong Lee, or Victor Lozada individually perpetrated against Plaintiff. There are no allegations of specific conduct that would put Defendants on notice of the conduct for which Plaintiff brings a claim. Instead, the SAC makes multiple legally conclusory statements that are insufficient to state a claim for intentional infliction of emotional distress as to these Defendants. The Court therefore dismisses Count IV against World Mission New Jersey, Bong Lee, and Victor Lozada. *See Bryson*, 621 F.2d at 559; *Michaels*, 955 F. Supp. at 331.

### 2.   SAC States a Claim of IIED Against Pastor Lee and Byrne

The SAC does, however, sufficiently state a claim for intentional infliction of emotional distress against Byrne and Pastor Lee. The Court addresses the claim against each defendant in turn.

The SAC sufficiently states a claim against Byrne for intentional infliction of emotional distress. As discussed in Section III.D.1 *supra*, to establish a *prima facie* case for intentional infliction of emotional distress in New Jersey, a plaintiff must show:

> (1) the defendant acted intentionally [or recklessly]; (2) the defendant's conduct was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community; (3) that the conduct proximately caused the plaintiff emotional distress; and (4) the emotional distress was so severe that no reasonable person could be expected to endure it.

*Cagno*, 2022 WL 17887231, at *8 (D.N.J. Dec. 23, 2022) (citations omitted). In this instance, each element of intentional infliction of emotional distress is sufficiently alleged: (1) Byrne intentionally or recklessly directed Plaintiff not to have children and coerced her to have an abortion, (ECF 49, SAC ¶¶ 73-74, 77, 181); (2) Byrne's conduct was extreme and outrageous, (*id.* ¶¶ 73-74, 77, 180-6); (3) Byrne's actions were the cause of Plaintiff's distress, (*id.* ¶¶ 77); and (4) Plaintiff's emotional distress was severe. (*Id.* ¶ 77.)

With respect to Pastor Lee, the SAC sufficiently states a claim for intentional infliction of emotional distress against Pastor Lee under a vicarious liability theory. To state a claim for vicarious liability, a plaintiff must adequately allege "(1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." *Haviland v. Lourdes Med. Ctr. Of Burlington Cnty., Inc.*, 272 A.3d 912, 918 (N.J. 2022) (quoting *Carter v. Reynolds*, 815 A.2d 460, 463 (N.J. 2003)). Byrne is alleged to be the agent of Pastor Lee, and she allegedly forced Plaintiff to have an abortion at Pastor Lee's direction within the scope of enforcement of World Mission policy. (ECF 49, SAC ¶ 169.) Thus, the SAC states a claim against Pastor Lee for intentional infliction of emotional distress. Liability may vicariously attach to Pastor Lee to the extent that Pastor Lee directed Byrne to enforce World Mission policy. The Court now turns to the motion for summary judgment inquiry.

### 3. No Genuine Issues of Material Fact as to IIED Against Pastor Lee and Byrne

In assessing the motion for summary judgment, the Court determines that there are no genuine issues of material fact regarding Byrne. Plaintiff failed to present evidence concerning an essential element of her case, thereby necessarily rendering all other facts immaterial. *See Katz*, 972 F.2d at 55 (citations omitted). Plaintiff's Statement of Disputed Material Facts admits that

19

Plaintiff never spoke to Byrne or any other World Mission member about her decision to have an abortion. (ECF 278-7 ¶¶ 99, 273.) As such, Plaintiff fails to provide the Court with evidence as to a material element of the IIED claim. Further, because there are no genuine issues of material fact as to the IIED claim against Byrne, the IIED claim against Pastor Lee based on a vicarious liability theory also fails at the motion for summary judgment stage. The Court recognizes that there are genuine issues of fact as to other individuals who may have contributed to Plaintiff's emotional distress; however, those claims were either never alleged or failed to be sufficiently alleged pursuant to Rule 12(b)(6). As such, because there exists no genuine issue of material fact regarding intentional infliction of emotional distress, the Court grants Defendants' Motion for Summary Judgment as to Count IV.

### E.  Negligence (Count V)

Count V alleges negligence against World Mission South Korea, Chang, Kim, World Mission New Jersey, Pastor Lee, Bong Lee, Byrne, and Lozada. (ECF 49, SAC at 34.) As discussed in Section III.A.1 *supra*, Defendants World Mission South Korea, Chang, and Kim are dismissed from this action. The Court will assess this claim as it relates to World Mission New Jersey, Pastor Lee, Bong Lee, Byrne, and Lozada.

### 1.  *Sua Sponte* Dismissal of Pastor Lee, Bong Lee, Byrne, and Lozada for Failure to State a Claim Pursuant to Rule 12(b)(6)

The SAC fails to make any allegations that sufficiently state a claim of negligence against Defendants Pastor Lee, Bong Lee, Byrne and Victor Lozada. Under New Jersey law, to sustain a common law cause of action in negligence, a plaintiff must show four core elements: "(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages." *Weinberg v.*

*Dinger*, 524 A.2d 366, 373 (N.J. 1987) (citing W. Keeton et al., *Prosser and Keeton on the Law of Torts*, § 30 at 164-65 (5th ed. 1984)). The SAC does not make any specific allegations that state a claim against Pastor Lee, Bong Lee, Byrne, or Victor Lozada. (*See generally* ECF 49, SAC.) Beyond group pleading issues that permeate the SAC, the SAC also cabins its negligence count by claiming that Defendants owed a duty of care to Plaintiff while on the premises of World Mission New Jersey. (ECF 49, SAC at ¶ 189.) The SAC alleges that each Defendant breached their duty by allowing financial fraud, coercive persuasion, and indoctrination via impermissible group pleading. (*Id.* ¶ 190.) As such, the SAC only substantiates a negligence claim against World Mission New Jersey; the SAC alleges a duty (*id*. ¶ 189), breach of that duty (*id*. ¶ 190), proximate cause (*id*. ¶¶ 191-92), and actual damages (*id.*) regarding World Mission New Jersey. The SAC is otherwise void of allegations of a specific duties of care, breach of specific duties, and proximate cause. *See Weinberg*, 524 A.2d at 373. There are no allegations of specific conduct that would put Pastor Lee, Bong Lee, Byrne, and Victor Lozada on notice of the conduct for which Plaintiff brings a claim. Instead, the SAC makes multiple legally conclusory statements that are insufficient to state a claim for negligence as to these Defendants. The Court therefore dismisses Count V against Pastor Lee, Bong Lee, Byrne, and Lozada. *See Bryson*, 621 F.2d at 559; *Michaels*, 955 F. Supp. at 331.

## 2.   Statute of Limitations

Defendants assert a statute of limitations defense against Plaintiff's negligence claim, arguing that her first two complaints do not allege negligence. (ECF 271, MSJ at 33-34.) Plaintiff argues that her negligence claim is timely pursuant to the relation back doctrine. (ECF 277, Opp. at 47-49.) The Court deems Plaintiff's negligence claim to be timely under New Jersey law and the Federal Rules of Civil Procedure. Under New Jersey law, negligence claims are subject to a two-year statute of

limitations. *Reeves v. Cnty. Of Bergen*, No. 18-cv-14061, 2023 WL 8520742, at *5 (D.N.J. Dec. 8, 2023). In deciding whether the amendment in this case relates back to the date of the original pleading, the Court first considers whether New Jersey law—which is the law that provides the applicable statute of limitations as discussed above—would allow relation back. Fed. R. Civ. P. 15(c)(1)(A). The New Jersey Court Rules contain a general relation back rule, which provides that "[a]n amendment changing the party against whom a claim is asserted relates back if" the claim asserted in the amended complaint arose out of the conduct set forth in the original pleading, and if within the statute of limitations period the new party

> 1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party to be brought in by amendment.

N.J. Ct. R. 4:9-3. Federal Rule 15(c) provides that an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

### a) Timeliness of Initial Pleading

First, for the negligence claim against World Mission New Jersey to be timely, the pleading that the Second Amended Complaint relates back to must have been timely. Plaintiff's initial Complaint was filed on March 18, 2014. (ECF 1.) Plaintiff's final date of association with World

Mission New Jersey was December 2012. (ECF 278-7 ¶¶ 810, 816-17.) Accordingly, Plaintiff's filing of her initial Complaint was within the two-year statute of limitations.

### b) Conduct, Transaction, or Occurrence

Second, Plaintiff's negligence claim must arise out of the same transaction or occurrence. Plaintiff argues that the language in the SAC's negligence count alleges the same conduct described in the original complaint. (ECF 277, Opp. at 49.) In the initial complaint, Plaintiff alleges that World Mission New Jersey indoctrinated Plaintiff with irrational fears, exploited her to do the bidding of World Mission, forced her to suppress doubts she had about World Mission, and made her lose the ability to extricate herself from World Mission. (ECF 1 ¶¶ 329, 337-40.) These allegations include similar details and are about the same conduct and occurrences alleged in the Second Amended Complaint.

### c) Notice

Defendants do not contest that they had sufficient notice to satisfy Rule 15(c)(1)(C)(i).

### d) Knew or Should Have Known

Defendants also do not contest that they knew an action had been brought against them, satisfying Rule 15(c)(1)(C)(ii).

As such, the Court determines that the relation-back doctrine applies and the statute of limitations defense fails.

### 3. New Jersey Charitable Immunity Act Defense

Defendants argue they are immune from the negligence suit pursuant to the New Jersey Charitable Immunity Act ("NJCIA"). N.J. Stat. Ann. § 2A:53A–7(a). The NJCIA provides immunity from tort liability where the entity being sued: (1) is a non-profit corporation; (2) is organized exclusively for religious, charitable, or educational purposes; and (3) was advancing

those purposes "at the time of the injury to plaintiff who was then a beneficiary of the charitable works." *Bieker v. Cmty. House of Moorestown*, 777 A.2d 37, 42 (N.J. 2001). The law is "deemed to be remedial and shall be liberally construed." N.J. Stat. Ann. § 2A:53A–10. Plaintiff acknowledges World Mission New Jersey's non-profit status. (ECF 49, SAC ¶ 7.) However, there remain genuine issues of material fact as to whether World Mission New Jersey is (1) organized exclusively for religious, charitable, or educational purposes and (2) whether World Mission New Jersey was advancing those purposes at the time of Plaintiff's claims. (ECF 278-7 ¶¶ 406, 408, 441-53, 473-74.) The Court therefore does not reach the issue of whether World Mission New Jersey qualifies for the Charitable Immunity Act defense at this juncture.

### 4. Genuine Issues of Material Fact Regarding Negligence

For the motion for summary judgment inquiry, there exist genuine issues of material fact as to whether World Mission New Jersey owed a duty of care to Plaintiff, breached that duty, was the proximate cause, and caused damages to Plaintiff. (ECF 278-7 at 15-78.) Plaintiff's Statement of Disputed Material Facts presents the Court with sufficient evidence to deny Defendants' Motion for Summary Judgment for Count V.

### F. Vicarious Liability (Count VI)

Count VI alleges "[vicarious liability a]gainst World Mission South Korea, Chang, Kim, World Mission New Jersey, Pastor Lee, Bong Lee, Byrne[,] and Lozada." (ECF 49, SAC at 35.) As discussed in Section III.A.1 *supra*, Defendants World Mission South Korea, Chang, and Kim are dismissed from this action. The Court has discussed the extent to which theories of vicarious liability attach to World Mission New Jersey and Pastor Lee in Section III.A.3.a and Section

III.D.2, *supra*, respectively. The Court will assess the remainder of this claim as it relates to Bong Lee, Byrne, and Lozada.

To state a claim for vicarious liability, a plaintiff must adequately allege "(1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." *Haviland*, 272 A.3d at 918 (citations omitted). Plaintiff failed to plead sufficient facts to demonstrate how her claims impose vicarious liability upon Bong Lee, Byrne, or Lozada. The SAC does not specify or identify any employees of Bong Lee, Byrne, or Lozada. (*See generally* ECF 49, SAC.) As such, a claim for vicarious liability fails against Bong Lee, Byrne, and Lozada. Therefore, the Court dismisses Count VI against Bong Lee, Byrne, and Lozada for failure to state a claim. *See Bryson*, 621 F.2d at 559; *Michaels*, 955 F. Supp. at 331.

**IV.    Conclusion**

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. Count I for intentional fraud based on false representations survives against World Mission New Jersey and Pastor Lee; Count V for negligence survives against World Mission New Jersey. An appropriate order follows.

*/s/ Jamel K. Semper*
HON. JAMEL K. SEMPER
**United States District Judge**

Orig:   Clerk
cc:    James B. Clark, U.S.M.J.
       Parties